**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>NDG Financial Corp., Northway Financial Corp., Ltd., Northway Broker, Ltd., E-Care Contact Centers, Ltd., Blizzard Interactive Corp., New World Consolidated Lending Corp., New World Lenders Corp., Payroll Loans First Lenders Corp., New World RRSP Lenders Corp., Peter Ash, Sagewood Holdings, Ltd., Kimberly DeThomas, Jeremy Sabourin, William Wrixon,<br><br>Defendants,<br><br>Peter Ash, Sagewood Holdings, Ltd., Paul Ash, Knightsbridge Holdings Ltd., Paul Grehan, 0562752 B.C., Ltd., Kimberly DeThomas, Emerald Willow Holdings, Ltd., Jeremy Sabourin, Red River Holdings Company Ltd., William Wrixon, Twillingate Holdings Ltd.,<br><br>Relief Defendants. | : | 15-cv-5211 (CM) |

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS BY SAGEWOOD HOLDINGS, LTD.,**
**KNIGHTSBRIDGE HOLDINGS, LTD., PETER ASH AND PAUL ASH**

Richard F. Hans
richard.hans@dlapiper.com
Constance C. Tse
connie.tse@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel. (212) 335-4500
Fax (212) 335-4501

Benjamin S. Boyd, *of counsel*
benjamin.boyd@dlapiper.com
DLA PIPER LLP (US)
500 8th Street, NW
Washington, DC 20004
Tel. (202) 799-4000
Fax (202) 799-5000

Dated: March 16, 2016

*Attorneys for Sagewood Holdings, Ltd., Knightsbridge Holdings Ltd., Peter Ash and Paul Ash.*

# TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 3

ARGUMENT ..... 5

I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ..... 5

A. The Bureau Alleges No Purposeful Contacts Between New York And The Sagewood/Knightsbridge Defendants ..... 5

B. Personal Jurisdiction Over The Sagewood/Knightsbridge Defendants Does Not Otherwise Exist Based On Their Alleged Relationships With Their Co-Defendants ..... 7

1. The Bureau Fails To Assert Personal Jurisdiction Over Peter And Paul Ash Under An Agency Theory ..... 7

2. The Alleged Conduct or Contacts of The NDG Defendants Cannot Be Imputed to Sagewood or Knightsbridge Under An Agency Or Mere Department Theory ..... 9

3. The "Common Enterprise" Allegation Does Not Cure These Defects ..... 11

II. THE AMENDED COMPLAINT SHOULD BE DISMISSED AS TIME-BARRED OR PRECLUDED BY RETROACTIVITY, OR BOTH ..... 12

III. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ..... 15

A. The Sagewood/Knightsbridge Defendants Are Not "Covered Persons" ..... 15

1. Sagewood Is Not A "Covered Person" ..... 16

2. Peter Ash Is Not A "Covered Person" ..... 19

3. Knightsbridge And Paul Ash Are Not "Covered Persons" ..... 20

B. The Amended Complaint Fails to State a Claim Because It Lacks Any Factual Allegations Regarding Specific Loans Made or Any Consumer Injury ..... 21

C. The Amended Complaint Fails to State a Claim Against The Sagewood Defendants Under A "Common Enterprise" Theory ..... 22

D. The Bureau Cannot Exceed The Authority Conferred in the CFPA by Enforcing State Law or Establishing a *De Facto* Federal Usury Law ..... 22

E. The Amended Complaint Fails to State a Claim Regarding Irrevocable Wage Assignments Against The Sagewood Defendants ..... 23

**TABLE OF CONTENTS**
(continued)

**Page**

F. The Amended Complaint Fails to State a Claim Against Any Relief Defendant ........ 23

IV. THE BUREAU VIOLATES THE SEPARATION OF POWERS ........ 25

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*380544 Can., Inc. v. Aspen Tech., Inc.*,
544 F. Supp. 2d 199 (S.D.N.Y. 2008)....................13

*Arma v. Buyseasons, Inc.*,
591 F. Supp. 2d 637 (S.D.N.Y. 2008)....................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................15, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................15

*Bond v. United States*,
134 S. Ct. 2077 (2014)....................23

*Burger King Corp. v. Rudzerwicz*,
471 U.S. 462 (1985)....................12

*Commonwealth of Pa v. Think Fin.*,
No. 14-CV-7139, 2016 WL 161597 (E.D. Pa. Jan. 14, 2016)....................22

*Daimler AG. v. Bauman*,
134 S. Ct. 746 (2014)....................5, 9

*Desyatnikov v. Credit Suisse Group, Inc.*,
No. 10-CV-1870, 2012 WL 1019990 (E.D.N.Y. Mar. 26, 2012)....................19

*Gerstle v. Nat'l Credit Adjusters, LLC,*
76 F. Supp.3d 503 (S.D.N.Y. 2015)....................8

*Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd.*,
2014 WL 4175914 (E.D.N.Y. Aug. 20, 2014)....................18

*Holmes v. Grubman*,
538 F.3d 329 (2d Cir. 2009)....................15

*Illinois v. CMK Invs., Inc.*,
No. 14 C 2783, 2014 WL 6910519 (N.D. Ill. Dec. 9, 2014) ....................23

*In re Aluminum Warehousing Antitrust Litig.*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015)....................11, 12

*In re Arcapita Bank B.S.C.(c)*,
529 B.R. 57 (S.D.N.Y. Bankr. 2015)....................6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Digital Music Antitrust Litig.*,
812 F. Supp.2d 390 (S.D.N.Y. 2011)....................18

*In re Levant Line, S.A.*,
166 B.R. 211 (Bankr. S.D.N.Y. 1994)....................10

*In re Terrorist Attacks*,
718 F. Supp. 2d....................12

*In re Terrorist Attacks on Sept. 11, 2011*,
714 F.3d 659 (2d Cir. 2013)....................7

*J. McIntyre Mach., Ltd. v. Nicastro*,
131 S. Ct. 2780 (2011)....................5

*Jazini v. Nissan Motor Co., Ltd.*,
148 F.3d 181 (2d Cir. 1998)....................9, 11

*Kinetic Instruments v. Lares*,
802 F. Supp. 976 (S.D.N.Y. 1992)....................9

*Kiobel v. Royal Dutch Petrol. Co.*,
621 F.3d 111 (2d Cir. 2010)....................18, 19

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994)....................14

*Licci v. Lebanese Canadian Bank, SAL*,
20 N.Y.3d 327 (2012)....................7

*Molosky v. Washington Mut., Inc.*
664 F.3d 109 (6th Cir. 2011)....................14

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012)....................3

*Newmarket Partners LLC v. Oppenheim*,
638 F. Supp. 2d 394 (S.D.N.Y. 2009)....................11

*NovelAire Techs., L.L.C. v. Munters AB*,
No. 13 Civ. 472(CM), 2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013) (McMahon, J.) .......9, 11

*OneBeacon America Ins. Co. v. Newmont Mining Corp.*,
82 A.D.3d 554, 918 N.Y.S.2d 470 (1st Dep't 2011)....................10

*Ontel Prods., Inc. v. Project Strategies Corp.*,
899 F. Supp. 1144 (S.D.N.Y. 1995)....................8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Premium Plus Partners, L.P. v. Goldman Sachs & Co.*,
648 F.3d 533 (7th Cir. 2011) ....................13

*SEC v. Fisher*,
No. 07 C 4483, 2008 WL 2062699 (N.D. Ill. May 13, 2008) ....................13

*Shostack v. Diller*,
No. 15–CV–2255 (GBD)(JLC), 2015 WL 5535808 (S.D.N.Y. Sept. 16, 2015)....................8

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014)....................9

*Tamam v. Fransabank SAL*,
677 F. Supp.2d 720 (S.D.N.Y. 2010)....................7

*Tymoshenko v. Firtash*,
No. 11–CV–2794 (KMW), 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013)....................6

*United States v. Best Foods*,
524 U.S. 51 (1998)....................18

*Universal Trading & Inv. Co., Inc. v. Tymoshenko*,
No. 11 Civ. 7877(PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ....................6

*Vartelas v. Holder*,
132 S. Ct. 1479 (2012)....................14

*Vista Food Exch., Inc. v. Champion Foodserv., LLC*,
No. 14 Civ. 804, 2015 WL 5000863 (S.D.N.Y. Aug. 18, 2015) ....................8

*Volkswagonwerk Aktiengessellschaft v. Beech Aircraft*,
751 F.2d 117 (2d Cir. 1984)....................10

*Walden v. Fiore*,
134 S. Ct. 1115 (2014)....................5, 7

*Washington v. Westchester Cty. Dep't of Corr.*,
No. 13 Civ. 5322 (KPF), 2015 WL 408941 (S.D.N.Y. Jan. 15, 2015)....................19

**STATUTES**

12 U.S.C. § 5481(5) ....................15

12 U.S.C. § 5481(6) ....................15

12 U.S.C. § 5481(9) ....................14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

12 U.S.C. § 5481(15) ....................15

12 U.S.C. § 5481(25) ....................16, 17

12 U.S.C. § 5481(25)(C)(i) ....................20

12 U.S.C. § 5481(26) ....................15

12 U.S.C. § 5511(a) ....................22

12 U.S.C. § 5517(o) ....................23

12 U.S.C. § 5531(a) ....................15, 18, 20

12 U.S.C. § 5536(a)(1) ....................18

12 U.S.C. § 5536(a)(1)(B) ....................14

12 U.S.C. § 5563 ....................22

12 U.S.C. § 5564(g)(1) ....................12

12 U.S.C. § 5565 ....................14

12 U.S.C. § 5581(b)(6)(B)(ii) ....................15

12 U.S.C. § 5582 ....................14

**REGULATIONS**

16 C.F.R. § 441.2 ....................23

Bureau of Consumer Financial Protection, 75 Fed. Reg. 57252 (Sept. 20, 2010) ....................14

**RULES**

Fed. R. Civ. P. 4(k)(2) ....................11

Fed. R. Civ. P. 8 ....................24

Fed. R. Civ. P. 12(b)(2) ....................1, 8, 12, 25

Fed. R. Civ. P. 12(b)(6) ....................1, 3, 15, 25

Defendants and Relief Defendants Sagewood Holdings, Ltd. ("Sagewood") and Peter Ash, and Relief Defendants Knightsbridge Holdings Ltd. ("Knightsbridge") and Paul Ash (collectively, the "Sagewood/Knightsbridge Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss with prejudice the Amended Complaint of Plaintiff Consumer Financial Protection Bureau ("Bureau"), pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Bureau's Amended Complaint fares no better than its predecessor in offering a demonstrable basis to exercise personal jurisdiction over the Sagewood/Knightsbridge Defendants. The Bureau's allegations persist in their failure to plead the requisite minimum contacts with New York (indeed, the United States generally) to allow the exercise of either specific or general personal jurisdiction under the New York Long Arm Statute. Nor does the revised pleading cure its even more basic deficiency: that a finding of personal jurisdiction would (still) offend traditional notions of fair play and substantial justice, and violate due process.

The Amended Complaint contains no allegation that the Sagewood/Knightsbridge Defendants—who reside over 2,000 miles from New York—engaged in any conduct in this state that relates to consumer lending or the repayments of debts that form the subject of the Bureau's lawsuit. In fact, there is no allegation that the Sagewood/Knightsbridge Defendants ever worked or operated in, traveled to, or opened bank accounts or conducted business in New York for any reason—let alone to participate in activity involving consumer finance transactions. The Bureau grasps at a straw when it points to real estate transactions in Washington that involved a dollar-clearing transaction processed by a New York correspondent bank, but concedes these ventures

were "unrelated" to the misconduct alleged. Such attenuated and irrelevant facts do not offer a sufficient basis to bring foreign corporations and individuals into this Court.

Elsewhere, the Amended Complaint implies that Peter Ash and Paul Ash are subject to jurisdiction because of their relationships to others. This effort is also misplaced. The Bureau tries to connect the Ashes to a purported "common enterprise" through a very thin reed—their indirect ownership interests, through separate entities, in NDG Financial Corp. ("NDG"). At bottom, the Bureau seeks to have this Court exercise jurisdiction over the Ashes based on the allegation that they were previously owners of companies, which at one time were owners of other companies, whose affiliated companies engaged in payday lending and related services. There is no case law or other authority to support exercising jurisdiction through such an attenuated relationship.

The lack of personal jurisdiction notwithstanding, Counts I to V and VII to IX fail to state a claim for which relief can be granted.[1] As to Peter and Paul Ash, the full weight of the Amended Complaint—when boiled down to its core—reflects nothing more than stale assertions of conduct long past. The revised pleading offers only time-barred and threadbare assertions of corporate relationships, irrelevant offering memoranda, and long ago check-signing authority. Whether one considers the three-year statute of limitations or the absence of statutory retroactivity, it is beyond cavil that the Bureau may now pursue claims for that alleged conduct which the Bureau concedes ended in 2009.

What's more, even had the Bureau filed its claims in time, which it did not, its claims rest on legal conclusions masquerading as facts and a concomitant deficiency of actual relevant facts which might otherwise support such legal conclusions. Simply claiming that the defendants

[1] The Bureau does not assert Count VI against the Sagewood/Knightsbridge Defendants.

ran afoul of state lending laws without showing more cannot sustain an unfair, deceptive, or abusive acts and practices ("UDAAP") claim. Also problematic for the Bureau is that the allegations are, at bottom, a *de facto* attempt to enforce state law; this effort runs afoul of the principle of federalism as well as the Bureau's own authorizing statute, which forbids the establishment by the Bureau of federal interest rate caps on consumer loans.

Even assuming these obstacles could somehow be overcome, the Amended Complaint fails to withstand Rule 12(b)(6) scrutiny for yet another reason: The Bureau fails to properly plead that each of the Sagewood/Knightsbridge Defendants is a "covered person" or its equivalent, a foundational prerequisite to the Bureau's ability to assert any lawsuit. Finally, the Amended Complaint fails to state a plausible claim against any Relief Defendant. Accordingly, the Amended Complaint should be dismissed for a lack of personal jurisdiction and for failure to state a claim upon which relief could be granted.

## FACTUAL BACKGROUND[2]

Sagewood and Knightsbridge are each a private company organized under Canadian law with a principal place of business and sole location in Canada. (FAC ¶¶ 58, 90-91.) They are not alleged to have any offices, employees, property, bank accounts, or operation in New York or—for that matter—anywhere in the United States. Nor are they alleged to be licensed or registered to do business in New York or the United States. Until September 2013, Sagewood is alleged to have owned a 50.1% interest in NDG, and Knightsbridge is alleged to have owned a 39.8% interest in NDG. (*Id.* ¶¶ 61, 92.)

[2] The well-pleaded allegations of the Amended Complaint are assumed to be true solely for purposes of this motion and only to the extent they are not contradicted by other allegations, documents incorporated in the Amended Complaint by reference, or documents of which the Court can take judicial notice. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 n.1 (2d Cir. 2012).

Peter Ash and Paul Ash are Canadian citizens with domiciles in Canada. Peter Ash is alleged to be the owner and director of Sagewood. (*Id.* ¶ 59.) Paul Ash is alleged to be the owner and director of Knightsbridge. (*Id.* ¶ 93.) Neither of these defendants is alleged to have taken any actions that would violate federal law or subject him to jurisdiction in New York.

On July 2, 2015, the Bureau filed suit against ten defendants, including Sagewood, asserting violations of the Consumer Financial Protection Act ("CFPA") and the Credit Practices Rule ("CPR") based on the alleged conduct of Sagewood's co-defendants. On November 17, 2015, Sagewood moved to dismiss the Complaint for lack of personal jurisdiction. In response, the Bureau filed an Amended Complaint on December 11, 2015.

While the Amended Complaint is considerably longer than the original pleading, it offers little new information regarding the Sagewood/Knightsbridge Defendants. The only activities in which the Bureau alleges Sagewood and Knightsbridge engaged, in New York, are: (1) that loan repayments were wired by "NDG Enterprise personnel" from Northway Financial Corp., Ltd. ("Northway")'s US accounts through two New York correspondent accounts to Northway's Canadian accounts and thereafter those funds were "funneled" to Sagewood, Knightsbridge, and others (*id.* ¶¶ 147-148), and (2) Sagewood acquired unrelated real estate in Seattle and that the purchase price may have cleared incidentally through a New York bank (*id.* ¶¶ 242-252).

While Peter and Paul Ash are alleged to have been officers, shareholders, and "Original Owners" of certain of the entities which comprise the alleged "NDG Enterprise" (*id.* ¶¶ 210-224), the Bureau concedes that they transferred the "day-to-day management" of the purported enterprise in 2009 (*id.* ¶ 230), two full years before the CFPA's effective date and approximately six years before the First Amended Complaint was filed.

## ARGUMENT

### I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

Where, as here, a defendant is not domiciled or otherwise "at home" in the forum, *Daimler AG. v. Bauman*, 134 S. Ct. 746, 760 (2014), general jurisdiction does not exist over the defendant, requiring the plaintiff to show that grounds otherwise exist to exercise "specific" jurisdiction. The exercise of specific jurisdiction, however, must both satisfy New York's long-arm statute and comport with due process. For a court to exercise specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). For the requisite connection to exist, the defendant's relationship with the forum "must arise out of contacts that the defendant himself creates with the forum State." *Id.* at 1122 (quotations omitted). The defendant must have, in a literal sense, "purposefully directed" conduct toward the forum state such that he personally "targeted the forum" and "invok[ed] the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011).

As with its Original Complaint, the Bureau has again failed to allege the necessary purposeful availment by the Sagewood/Knightsbridge Defendants. The reason is simple: the Sagewood/Knightsbridge Defendants do not maintain, and never have maintained, the requisite ties with New York that are necessary to justify the exercise of personal jurisdiction.

#### A. The Bureau Alleges No Purposeful Contacts Between New York and The Sagewood/Knightsbridge Defendants.

Nowhere does the Bureau allege that the Sagewood/Knightsbridge Defendants did anything *in New York* related to consumer financial transactions. The Bureau does not allege that Sagewood, Knightsbridge, Peter Ash, or Paul Ash took any actions, or otherwise engaged in

any conduct in New York, in relation to the matters at the heart of the Amended Complaint. Period. Without any such allegation, there is no basis to assert specific jurisdiction.

The only connection alleged between the Sagewood/Knightsbridge Defendants and New York concerns the purported use of New York correspondent bank accounts by the so-called "NDG Enterprise" to indirectly disperse loan repayments to the defendants. (FAC ¶¶ 145-148.) But this is inapposite, since the passive receipt of funds through a correspondent account is insufficient to establish personal jurisdiction. *See, e.g., In re Arcapita Bank B.S.C.(c)*, 529 B.R. 57, 68 (S.D.N.Y. Bankr. 2015) (defendants' mere receipt of funds through a correspondent account held by a third party "are the type of 'attenuated' acts that do not qualify as the basis for specific jurisdiction"); *Tymoshenko v. Firtash*, No. 11–CV–2794 (KMW), 2013 WL 1234943 at *4 (S.D.N.Y. Mar. 27, 2013) ("simply receiving money from a foreign entity's United States account" is insufficient to constitute purposeful availment); *Universal Trading & Inv. Co., Inc. v. Tymoshenko*, No. 11 Civ. 7877(PAC), 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) (no support exists for "argument that the passage of money 'through' New York banks is sufficient to confer jurisdiction over" foreign defendant).

Here, the Bureau alleges that funds in a third party's bank accounts, the precise origins of which are unknown, passed from Malta through correspondent banks in New York to the third party's Canadian accounts, where they were only then "funneled" to Sagewood and Knightsbridge. (FAC ¶ 147.) But Sagewood and Knightsbridge are not alleged to have held or maintained these New York correspondent accounts or even the accounts in Canada that received

and later transferred the funds.[3] The alleged contact is therefore utterly insufficient; Sagewood and Knightsbridge's indirect receipt of funds through correspondent bank accounts in New York does not confer personal jurisdiction.

The Bureau elsewhere alleges that funds used by Sagewood to purchase real estate in the State of Washington passed through a New York correspondent account in a dollar-clearing transaction, but then admits that this transaction was "unrelated to the Payday Lending Enterprise." (FAC ¶¶ 224-245.) Given that admission, this allegation has no "articulable nexus" to the asserted legal claims against Defendants. *Walden*, 134 S. Ct. at 1121.

**B. Personal Jurisdiction Over The Sagewood/Knightsbridge Defendants Does Not Otherwise Exist Based On Their Alleged Relationships With Their Co-Defendants.**

The Bureau has failed to make a *prima facie* showing of personal jurisdiction over any of the Sagewood/Knightsbridge Defendants based on their own conduct or activity. To the extent the Bureau seeks to impose jurisdiction on the basis of the alleged conduct and forum contacts of the NDG Defendants,[4] that effort must fail as well because the Bureau has not alleged the NDG Defendants are subject to long-arm jurisdiction.[5] Even assuming *arguendo* that the NDG Defendants have the requisite contacts with New York (which they do not), the Bureau has failed to show that they are agents of the Sagewood/Knightsbridge Defendants for jurisdictional purposes.

---

[3] Even if they had held the New York accounts (and they did not), this, too, would not create a basis for personal jurisdiction under New York or federal law. *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 336-38 (2012); *In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 659, 680 (2d Cir. 2013) (affirming that "'mere maintenance of a correspondent account in New York' is insufficient to establish 'minimum contacts with the United States.'") (*quoting Tamam v. Fransabank SAL*, 677 F. Supp.2d 720, 731-32 (S.D.N.Y. 2010)).

[4] As defined in the NDG Defendants' Memorandum of Law (filed concurrently herewith).

[5] Any agency-based theory of jurisdiction must be predicated on this Court having personal jurisdiction over the NDG Defendants, which the Bureau has failed to demonstrate. *See* NDG Defs.' Memo of Law, Section I.

### 1. The Bureau Fails to Assert Personal Jurisdiction Over Peter and Paul Ash Under An Agency Theory.

The Bureau may not rely on Peter and Paul Ash's purported roles as officers and shareholders of various entity defendants to establish personal jurisdiction. The mere assertion that an individual is an owner or officer of a company cannot serve as a basis for jurisdiction over the individual; rather, allegations that the individual personally engaged in the offending conduct are required. *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 647-48 (S.D.N.Y. 2008) ("Plaintiffs cannot base jurisdiction on 'conclusory allegations that the defendant controls the corporation.'"); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) (to establish personal jurisdiction over a corporate officer, plaintiff "must show that [defendant] personally took part in the activities giving rise to the action at issue"). Here, the Bureau has not alleged any facts to show that Peter or Paul Ash personally engaged in the offending conduct. *See Shostack v. Diller*, No. 15–CV–2255 (GBD)(JLC), 2015 WL 5535808, at *4-5 (S.D.N.Y. Sept. 16, 2015) (granting 12(b)(2) motion where plaintiff "asserts no facts alleging that the individual defendants had any direct involvement in the allegedly illegal acts").

The Amended Complaint attempts to paint an image of how Peter and Paul Ash "devised" the "strategy and practice" of the purported lending enterprise. No matter. Such "broadly worded and vague" allegations cannot withstand a Rule 12(b)(2) motion. *See Gerstle v. Nat'l Credit Adjusters, LLC,* 76 F. Supp.3d 503, 510 (S.D.N.Y. 2015) (no personal jurisdiction existed over individuals who "oversaw" or "authorized" illegal debt collection practices, including company president and shareholder who "personally implemented" the illegal policies); *Vista Food Exch., Inc. v. Champion Foodserv., LLC*, No. 14 Civ. 804, 2015 WL 5000863, at *5 (S.D.N.Y. Aug. 18, 2015) (allegations that corporation's president was the "'architect' of the alleged misconduct and that he 'used false pretenses to obtain an extension of

credit'" are "too vague to be credited for the purposes of establishing personal jurisdiction"); *Kinetic Instruments v. Lares*, 802 F. Supp. 976, 984-85 (S.D.N.Y. 1992) ("[t]he fact that [the defendant] is the President and majority shareholder of [the corporation] does not necessarily mean that the corporation will be considered his agent").

**2. The Alleged Conduct or Contacts of The NDG Defendants Cannot Be Imputed to Sagewood or Knightsbridge Under An Agency or Mere Department Theory.**

The Bureau may not find jurisdictional solace in the mere allegation of ownership or parent-subsidiary relationships. When assessing whether jurisdiction exists, courts look to whether the subsidiary is acting as an "agent" for the parent, or whether the parent's control is so complete that the subsidiary is a "mere department" of the parent. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998); *NovelAire Techs., L.L.C. v. Munters AB*, No. 13 Civ. 472(CM), 2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013) (McMahon, J.)

The Bureau may not rely on an agency theory to establish general or specific jurisdiction over Sagewood and Knightsbridge. After *Daimler*, courts have called into question the continued vitality of the agency theory in the context of general jurisdiction. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). Even assuming the agency theory retains vitality, it only supports the exercise of jurisdiction over a foreign corporation when the agency subsidiary "render[s] services in New York *on behalf* of the foreign corporation" and is "a *substantial participant* in the [foreign corporation's] actual business and ha[s] the *discretion and authority to bind* the [foreign corporation]." *NovelAire*, 2013 WL 6182938, at *5 (citation and quotation marks omitted) (emphasis in original). The Bureau does not, and cannot, allege any such facts whatsoever as to Sagewood or Knightsbridge vis-à-vis NDG.

The Bureau similarly fails to allege that the control is so substantial that NDG (or, for that matter, any of the corporate entities among the NDG Defendants) is a "mere department" of Sagewood and Knightsbridge. In determining whether personal jurisdiction exists under the mere department theory, courts consider the following factors: (1) proof of nearly identical ownership interests; (2) financial dependency of the subsidiary on the parent corporation; (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (4) parent's control of subsidiary's marketing and operational policy. *Volkswagonwerk Aktiengessellschaft v. Beech Aircraft*, 751 F.2d 117, 120-22 (2d Cir. 1984).

All four factors identified above are demonstrably absent. Here, the Bureau's allegations that Knightsbridge owned 39.8% of NDG and Sagewood owned 50.1% of NDG are insufficient to satisfy the requirement that they have "nearly identical" ownership interests. (FAC ¶¶ 9, 61, 92.) Without the essential element of common ownership, NDG cannot be found to be a "mere department" of Sagewood or Knightsbridge. *See In re Levant Line*, *S.A.*, 166 B.R. 211, 232 (Bankr. S.D.N.Y. 1994) (common ownership of 52% was not "nearly identical" and was therefore insufficient to establish personal jurisdiction); *OneBeacon America Ins. Co. v. Newmont Mining Corp.*, 82 A.D.3d 554, 918 N.Y.S.2d 470 (1st Dep't 2011) (common ownership of 51% was insufficient to confer mere department status).

Even assuming *arguendo* that Sagewood or Knightsbridge shared ownership interests with NDG, the remaining factors cannot be satisfied in this case. The Bureau has not even alleged they are present, and there is no reason to believe it could amend a second time to do so. There is no allegation of financial dependency or disregard of corporate formalities or control over NDG's day-to-day operations (or, for that matter, with regard to any of the corporate

entities among the NDG Defendants). Without more, those allegations are entirely insufficient to show that NDG (or any NDG Defendant) is a department of Sagewood or Knightsbridge to establish personal jurisdiction. *See Jazini*, 148 F.3d at 184 (no personal jurisdiction over parent where plaintiff failed to plead with factual specificity that subsidiary was a "mere department" of parent).

Accordingly, because Sagewood and Knightsbridge have no direct contacts with New York, and because the NDG Defendants' contacts cannot be imputed to Sagewood/Knightsbridge, either as their agent or mere department, Sagewood and Knightsbridge are not subject to personal jurisdiction. *NovelAire*, 2013 WL 6182938, at *10 (no personal jurisdiction where plaintiff did not allege control or any facts supporting parent company's participation in conduct at issue).

**3. The "Common Enterprise" Allegation Does Not Cure These Defects.**

The Bureau may not cure its jurisdictional failure by proffering vague allegations of some amorphous "common enterprise" in which all of the defendants supposedly participated. (*See* FAC ¶¶ 8, 104). This Court recently held that such bald and conclusory allegations do not provide a standalone basis for establishing personal jurisdiction. *In re Aluminum Warehousing Antitrust Litig*., 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015); *see also Newmarket Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 403 (S.D.N.Y. 2009) (declining to assert personal jurisdiction over parent company where there are no allegations that the parent committed any tortious acts within New York and plaintiffs have not alleged sufficient facts regarding a conspiracy).

The *Aluminum Warehousing* court's rejection of "conspiracy jurisdiction" as an extension of Federal Rule 4(k)(2) is instructive:

> Nor does the Court find that the assertion of a participation in a conspiracy generally can provide a standalone basis for jurisdiction subject only to the constraints of due process. If that were the case, then allegations that a foreign

> parent participated in a conspiracy would be sufficient for an assertion of jurisdiction over the parent. This could potentially extend jurisdiction beyond that which Congress intended.
>
> * * *
>
> The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous "conspiracy jurisdiction" doctrine.
>
> *Aluminum Warehousing*, 90 F. Supp. 3d at 227.

The Bureau's attempt to bootstrap personal jurisdiction onto the back of such thin allegations of a nebulous common enterprise or conspiracy is unavailing. The Bureau proffers nothing that the Sagewood/Knightsbridge Defendants have done to "purposefully avail[] [themselves] of the privilege of conducting activities within the forum state," to warrant subjecting them to jurisdiction in this Court. *See Burger King Corp. v. Rudzerwicz*, 471 U.S. 462, 475 (1985); *In re Terrorist Attacks*, 718 F. Supp. 2d at 478. Given the Bureau's failure again to explain a nexus between New York and the alleged claims—and the absence of significant or relevant contact between the forum and these defendants—the Amended Complaint should be dismissed.

## II. THE AMENDED COMPLAINT SHOULD BE DISMISSED AS TIME-BARRED OR PRECLUDED BY RETROACTIVITY, OR BOTH.[6]

The Bureau's claims are untimely as the violations alleged fall outside the applicable statute of limitations. Under Section 1054 of the CFPA, UDAAP claims must be brought within three years from the "date of discovery" of the UDAAP violation, 12 U.S.C. § 5564(g)(1). Cases construing the "discovery" rule in the federal securities or forfeiture contexts are instructive: the statute begins to run when the plaintiff knew or, in the exercise of reasonable diligence, should

6 Without waiving their objections to personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Sagewood/Knightsbridge Defendants present in these Sections II and III grounds on which this Court may dismiss the First Amended Complaint for failure to state a claim.

have known of the facts constituting the violation. *Premium Plus Partners, L.P. v. Goldman Sachs & Co.*, 648 F.3d 533, 537 (7th Cir. 2011) ([t]his focuses attention on what the plaintiff knows or could have found out, not on what the defendant admits or denies—or for that matter on what a federal agency such as the [agency] believes"); *380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 213-14 (S.D.N.Y. 2008) (statute began to run when plaintiffs were placed on notice about the misconduct); *SEC v. Fisher*, No. 07 C 4483, 2008 WL 2062699, at *5 (N.D. Ill. May 13, 2008) ("disclosures were sufficient to put the Commission on notice that a violation may have occurred," dismissing SEC's claims as time-barred).

The gravamen of the Bureau's UDAAP claims in Counts I to V is that the loans were "void" by virtue of non-compliance with state laws, making it unlawful for "covered persons" to represent—whether by implication or expressly—that the repayment of consumer debt was obligated or to collect funds under the "void" loan contracts. On the bare allegations of the Amended Complaint, the government must be deemed to have been on notice of the alleged misconduct at the very latest on the date on which the Bureau came into existence in 2011, if not the year earlier with the passage of the Dodd-Frank law and the CFPA. The information relating to the alleged underlying misconduct was a matter of public record as early as 2008. (*See* FAC ¶¶ 171-172).[7] Therefore, even considered in a light most favorable to the Bureau, the statute of limitations as against the Sagewood/Knightsbridge Defendants expired at the very latest in 2014, a full year before the Bureau brought this action.[8]

[7] The Bureau alleges that Northway's lending practices were known by the state authorities to have been allegedly non-compliant under state consumer lending laws as early as 2007, and subject to cease and desist orders issued as early as 2008 and running through 2012 (FAC ¶¶ 171-175, 180).

[8] Contending that the alleged misconduct extended into 2012 does not save the Bureau's claims as against the Sagewood/Knightsbridge Defendants, as the Bureau concedes in its complaint that the Defendants exited management no later than 2009. (FAC ¶ 230). But even if

The untimeliness of the Bureau's claims is further complicated by its effort to apply the CFPA to conduct occurring prior to the effective date of the law. The Bureau, however, does not have authority to sue defendants retroactively. The CFPA, passed in 2010, created a new cause of action for UDAAP to be enforced by the Bureau. The provision became effective on the "designated transfer date" of July 21, 2011, as set by the Secretary of the Treasury.[9] Courts have long presumed against the retroactive application of statutes, which presumption may only be overcome if the language of the statute shows Congress's "clear intent" that it has retroactive effect. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265-66 (1994); *see also Vartelas v. Holder*, 132 S. Ct. 1479, 1491 (2012) ("The operative presumption, after all, is that Congress intends its laws to govern prospectively only."). No such intent may be found here, whether express or implied. The Bureau may not enforce the CFPA as to Defendants' conduct that predated July 21, 2011, if such enforcement would have "retroactive effect." *See Landgraf*, 511 U.S. at 280. A statute has retroactive effect when it "attaches new legal consequences to events completed before its enactment," including increasing a party's liability for past conduct, or imposing new duties with respect to transactions already completed. *Id.* at 270, 280.

But that is precisely what the Bureau attempts to do here. It is seeking to enforce an entirely new legal and regulatory regime with accompanying remedies and penalties, and to do so against conduct long pre-dating the CFPA's passage. *See Molosky v. Washington Mut., Inc.* 664 F.3d 109, 113, n.1 (6th Cir. 2011) (concluding that the CFPA does not apply retroactively); 12 U.S.C. §§ 5536(a)(1)(B), 5565. Absent congressional intent to apply the CFPA retroactively, the Bureau may not bring any CFPA claims for conduct prior to July 21, 2011.

---

it were to support a claim, and it does not, the Bureau may not reach back to conduct prior to 2012, given the three-year limitation.

[9] 12 U.S.C. §§ 5481(9), 5582; Bureau of Consumer Financial Protection, Designated Transfer Date, 75 Fed. Reg. 57252, 57253 (Sept. 20, 2010).

## III. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The Bureau's claims fail to state a claim for which any relief may be granted and so must be dismissed. To withstand a Rule 12(b)(6) motion, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Holmes v. Grubman*, 538 F.3d 329, 335 (2d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully" (*id.*), and a complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). The Amended Complaint—the government's second bite at the apple—is, like its predecessor, devoid of facts supporting plausible claims against the Sagewood/Knightsbridge Defendants and so must be dismissed.

### A. The Sagewood/Knightsbridge Defendants Are Not "Covered Persons."

"Covered persons" and "service providers" are defined to provide precise products or services subject to the Bureau's authority.[10] The Bureau is not permitted to file an action for alleged UDAAP or a CPR violation unless the defendant is, again, either a "covered person" or a "service provider." 12 U.S.C. §§ 5531(a), 5581(b)(6)(B)(ii). The Amended Complaint does not allege that the Sagewood/Knightsbridge Defendants fall into either category on the basis of their

[10] 12 U.S.C. §§ 5481(6) (defining "covered person" and making it depend on "consumer financial product or service"), 5481(26) (defining "service provider"); 5481(5) (defining "consumer financial product or service" and making it depend on "financial product or service"), 5481(15) (defining "financial product or service").

own activities.[11] Instead, the Bureau argues that they are "related persons" to other "covered persons," rendering them "covered persons" by virtue of such relation. (FAC ¶¶ 65, 93, 94.) But this allegation is inconsistent with and wholly unsupported by the "related person" definition in the CFPA, which provides:

> The term "related person" . . . shall be deemed to mean a covered person for all purposes of any provision of Federal consumer financial law; and . . . .means
>
> (i) any director, officer, or employee charged with managerial responsibility for, ***or controlling shareholder of***, or agent for, ***such covered person***;
> (ii) any shareholder, consultant, joint venture partner, or other person, as determined by the Bureau (by rule or on a case-by-case basis) who materially participates in the conduct of the affairs of such covered person; and
> (iii) any independent contractor (including any attorney, appraiser, or accountant) who knowingly or recklessly participates in any (I) violation of any provision of law or regulation; or (II) breach of a fiduciary duty.
>
> 12 U.S.C. § 5481(25) (emphasis added).

The Bureau pleads no plausible basis for relief because the Sagewood/Knightsbridge Defendants are not properly "covered persons."

**1. Sagewood Is Not A "Covered Person"**

The Bureau's claims fail because Sagewood does not fall within the statutory definition of a "related person" subject to the CFPA. First, to the extent that the Bureau alleges that Sagewood is a "related person" as a controlling shareholder by virtue of its prior 50.1% interest in NDG (FAC ¶ 61), that claim fails because the Amended Complaint has not adequately pled that NDG is not a "covered person."[12] Nowhere does the Bureau allege that NDG itself ever provided or offered any "consumer financial product or service" or that it ever acted as a "service provider" to any one covered person. The Bureau's allegation that NDG provided "'material

[11] None of the Sagewood/Knightsbridge Defendants are alleged to be a "covered person" by providing or offering a "consumer financial product or service," nor are they alleged to be "service providers" by offering material services to others who are "covered persons."

[12] *See also* NDG Defs.' Memo of Law, Section II.B.

services' to its affiliates and subsidiaries in order to facilitate the NDG Enterprise's payday lending activities" (*id.* ¶ 25) is wholly conclusory. In short, because the Amended Complaint fails to show that NDG is a "covered person"—either because of its own business, or as a "service provider" to another "covered person"—Sagewood's interest as a "related person" in NDG is irrelevant and does not make Sagewood a "covered person."

The Bureau's claim that Sagewood is a "covered person" because of Sagewood's indirect interest in Northway and Northway Broker similarly fails. (*See id.* ¶¶ 62-64.) The Amended Complaint fails to allege that Sagewood is a related person of Northway and Northway Broker because, even as alleged, these defendants remained at least *three* layers removed from Sagewood at all times. (*See id.* ¶ 109, organizational chart for the NDG "European Group".) While Northway and Northway Broker are alleged to be covered persons that have provided "consumer financial products or services" (*see id.* ¶¶ 29, 34), the intermediate companies—New Northway and Cumberland—are not alleged to be "covered persons" themselves. The Bureau simply fails to explain how a holding company such as Sagewood, layers removed from any actual conduct, may be deemed a "covered person" by virtue of its indirect relationship to a subsidiary of a subsidiary, or explain the manner in which the collapse of separate corporate forms and entities is permitted under the plain language of the CFPA. The Bureau may not manufacture a telescoping feature in the "related person" provision where none exists. *See* 12 U.S.C. § 5481(25).

It is evident that the Bureau seeks to hold Sagewood liable based solely on the assertion that Sagewood was, at one point, a parent company of NDG and/or New Northway and an indirect parent of Northway and Northway Broker. (FAC ¶¶ 61-64.) However, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent

corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Best Foods*, 524 U.S. 51, 61 (1998) (internal quotations and citation omitted); *Kiobel v. Royal Dutch Petrol. Co.*, 621 F.3d 111, 194 (2d Cir. 2010); *In re Digital Music Antitrust Litig.*, 812 F. Supp.2d 390, 418 (S.D.N.Y. 2011) (granting motion to dismiss where "thrust of the complaint is to impute the actions of the Parent Companies' subsidiaries"); *accord Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd.*, 2014 WL 4175914, at *4 (E.D.N.Y. Aug. 20, 2014) (dismissing claims against parent corporation because "a corporate parent may not be held liable for the conduct of a subsidiary merely based upon ownership"). The Bureau has offered nothing to suggest that corporate formalities were not followed or that the corporate veil may be pierced.

Indeed, as countless courts have explained—including the Supreme Court in *Bestfoods*—the "corporate veil" generally will be pierced only when "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholders' behalf." 524 U.S. at 62. Here, the Bureau's suggestion that the "related person" theory offers grounds for the broadest liability under the statute, based solely upon a parent-subsidiary relationship, and not the commission of any violative act, supplants state corporate law and would contradict *Bestfoods*' rule dictating that courts may not assume that Congress silently overruled fundamental principles of state corporate law. Neither the text of the CFPA nor longstanding principles of corporate law support such a result.[13]

Because liability may not be predicated upon mere allegations of ownership, any

[13] Liability of a covered person arises under the CFPA if such covered person "commits any act or omission" in violation of federal consumer financial law or "engage[s] in any" UDAAP. *See* 12 U.S.C. § 5536(a)(1); *see also* 12 U.S.C. § 5531(a) (permitting Bureau to bring an action to prevent entity in question from "committing or engaging in" UDAAP relating to a consumer financial product or service).

assertion that Sagewood is liable by virtue of its ownership must fail. Significantly, the Amended Complaint does not allege that Northway or Northway Broker acted as Sagewood's agents in issuing loan agreements or collecting debt, or that Sagewood controlled those entities—or, for that matter, any of the NDG Defendants—in connection with those activities. *See Kiobel*, 621 F.3d at 195 ("[o]rdinarily, subsidiary corporations are not deemed to be the agents of their corporate parents"); *Desyatnikov v. Credit Suisse Grp., Inc.*, No. 10-CV-1870, 2012 WL 1019990, at *2 (E.D.N.Y. Mar. 26, 2012) (dismissing complaint because the "only link that the complaint assert[ed] [was] that Credit Suisse is the parent company to [subsidiary] Clariden Leu," which was held "insufficient to hold Credit Suisse liable"). As there is no pleaded basis on which to hold Sagewood liable for the alleged actions of the alleged subsidiaries of its alleged subsidiary, the Amended Complaint fails to state a claim against Sagewood and therefore must be dismissed as against it.

**2. Peter Ash Is Not A "Covered Person"**

The Amended Complaint does not allege any direct, personal involvement by Peter Ash in the alleged conduct and practices in the relevant period,[14] and so has failed to state any plausible claim against him. *See, e.g.*, *Washington v. Westchester Cty. Dep't of Corr.*, No. 13 Civ. 5322 (KPF), 2015 WL 408941, at *6 (S.D.N.Y. Jan. 15, 2015) (dismissing complaint because plaintiff "fails to allege any conduct on the part of the individual defendants"); *Desyatnikov*, 2012 WL 1019990, at *2 ("It is well settled that where the complaint . . . contains

[14] The Bureau implies that Peter Ash's pre-2011 involvement gives rise to consumer harms that are actionable in this suit. (FAC ¶¶ 210-224.) Such alleged misconduct, even if true, is not actionable in this lawsuit as it predates 2011, the effective date of the CFPA's UDAAP provision, and 2012, the soonest time after which the Bureau's claims cease to be barred by the statute of limitations. In any event, the Bureau concedes that Peter Ash ceded operational control and resigned his directorships in 2009 so he could not have and so cannot be held to have had "managerial responsibility" or "materially participated" in the affairs of any of the NDG Defendants. (*Id.* ¶¶ 230, 233.)

no allegations . . . indicating how the defendant violated the law . . . , a motion to dismiss the complaint in regard to that defendant should be granted.") (citation omitted).

The Bureau nevertheless contends that post-2012, as a director, officer and 100%-owner of Sagewood, Peter Ash is a "covered person" because, under subsection (C)(i) of the definition of "related person," he is a "related person."[15] However, a "related" officer can only be deemed a "covered person" if the company for which he serves as officer is also a "covered person" to begin with. But, as explained above, Sagewood is itself not a "covered person" on account of its own activities. Therefore, Peter Ash's relationship to Sagewood is ineffectual to "deem" Peter Ash a "covered person" under the CFPA. Even assuming Sagewood were a covered person (which it is not), Peter Ash would not be liable for the alleged UDAAP for other reasons. Once a "related person" is properly deemed a "covered person," even then, such related person can only be held liable for the acts of the primary "covered person" if he or she otherwise personally engaged or participated in the unlawful acts alleged. *See* 12 U.S.C. § 5531(a); 5536(a)(1). The Amended Complaint offers no plausible factual basis for Peter Ash's engagement or participation in the misconduct alleged in this suit.

### 3. Knightsbridge And Paul Ash Are Not "Covered Persons"

The Amended Complaint's failure is even more stark to the extent it alleges that Paul Ash is a covered person. (FAC ¶¶ 93-94.) As with its allegations regarding Peter Ash and Sagewood, the Bureau at first claims that they materially participated in the affairs of NDG, but fail to state what that material participation entailed, only to concede Paul Ash's withdrawal from operational control. For reasons explained above, however, NDG is not a "covered person" and nowhere is the NDG Enterprise alleged to be a "covered person." Accordingly, regardless of

[15] 12 U.S.C. § 5481(25)(C)(i).

Paul Ash's or Knightsbridge's participation in NDG, these allegations fail to demonstrate that Paul Ash and Knightsbridge are "covered persons" under the CFPA. Moreover, the Bureau fails to allege any actionable conduct by Paul Ash that is not time-barred. Either way, the Bureau has failed to adequately plead that Knightsbridge or Paul Ash are subject to its enforcement authority, and this action against them should be dismissed.

### B. The Amended Complaint Fails to State a Claim Because It Lacks Any Factual Allegations Regarding Specific Loans Made Or Any Consumer Injury.

To withstand a motion to dismiss, the Bureau must plead factual content that leads the court to draw a plausible inference that defendants are liable for deceptive, unfair, or abusive acts. The Bureau's claims, however, fail to plead requisite facts showing any unlawful acts were committed. While the Bureau references state usury and finance lending laws in support of its claims (FAC ¶¶ 253-273), it fails to identify a single loan, transaction, or event that gave rise to a "false representation," a "substantial injury" to a consumer, a case of "unreasonable advantage" vis-à-vis a consumer, or any of the other elements of a UDAAP claim. Similarly, the Bureau also fails to allege a factual basis for a deceptive statement concerning the application of federal or state law.

Equally improper, given these failures, is the Bureau's sole reliance on a recitation of state civil codes to then leap to the legal conclusion that all of Northway's loans were made "void" under Counts I through V—without pleading the terms of any single Northway loan, what harm such loan may have caused, or other aspects of Northway's lending or disclosure specifically injurious to consumers, or that a state body or other authority had actually ever declared void a single payday loan, let alone one of the out-of-state loans offered by Northway. The assertion that all of Northway's loans were void is a legal conclusion which finds no home in the facts alleged. Accordingly, Counts I through V must be dismissed.

To the extent applicable, the Sagewood/Knightsbridge Defendants adopt and incorporate by reference the arguments set forth by the NDG Defendants that Counts I-V and VII-VIII of the Amended Complaint should be dismissed because it lacks any factual allegations regarding any specific loans or any specific injuries suffered by any consumers. *See* NDG Defs.' Memo of Law, Section II.C.

### C. The Amended Complaint Fails to State a Claim Against The Sagewood Defendants Under A "Common Enterprise" Theory.

To the extent that the Bureau relies on a "common enterprise" theory to impose liability on Sagewood and Peter Ash (the "Sagewood Defendants"),[16] the alleged theory must fail because the CFPA does not incorporate any such "common enterprise" liability. *See generally* 12 U.S.C. § 5563, *et seq.* Instead, on its face, it applies only to the unfair, deceptive, or abusive acts of a specific "covered person or service provider." *See id.* Because the CFPA does not set forth any statutory basis permitting the Bureau to pursue actors under a "common enterprise" theory, the Bureau is prohibited from asserting it against the Sagewood Defendants. *See Commonwealth of Pa. v. Think Fin.*, No. 14-CV-7139, 2016 WL 161597, at *26 (E.D. Pa. Jan. 14, 2016) (holding that common enterprise theory of liability does not apply to UDAAP claims).

### D. The Bureau Cannot Exceed The Authority Conferred in The CFPA by Enforcing State Law or Establishing a *De Facto* Federal Usury Law.

The Amended Complaint fails to state a claim because the Bureau seeks to act outside of its authority by enforcing state-law licensing and usury violations. The Bureau's claims are rooted solely in violations of state laws, contrary to the express mandate by Congress limiting the Bureau to enforcing federal law. *See* 12 U.S.C. § 5511(a). A federal law incorporates state law only if Congress expressly stated such an intent on the face of the statute, which incorporation is

---

16 The Knightsbridge Defendants are named only as Relief Defendants and therefore are not subject to liability (nor are they alleged to be liable) under the CFPA.

absent from the provision regarding UDAAP, and the CFPA generally. *See Bond v. United States*, 134 S. Ct. 2077, 2089 (2014).

The Bureau's claims are also barred pursuant to 12 U.S.C. § 5517(o), which states that the Bureau has no authority "to establish a usury limit applicable to an extension of credit offered or made by a covered person to a consumer, unless explicitly authorized by law." The Bureau's claims constitute an improper attempt to regulate usury, directly or indirectly, in violation of Section 5517(o). *See Illinois v. CMK Invs., Inc.*, No. 14 C 2783, 2014 WL 6910519, at *7 n.5 (N.D. Ill. Dec. 9, 2014) (stating that the Bureau could not "challenge the account protection fee under the [CFPA] for being usurious, for the [Bureau] has no authority 'to establish a usury limit applicable to an extension of credit.'").

### E. The Amended Complaint Fails to State A Claim Regarding Irrevocable Wage Assignments Against The Sagewood Defendants.

The CPR applies solely to lenders or retail-installment lenders. 16 C.F.R. § 441.2. The Sagewood Defendants are not alleged to fall into either category. They are also not "covered persons" or "service providers." *See* Section III.A. Accordingly, the Bureau has failed to state a CPR violation or an unfairness claim against them, and Counts VII and VIII must be dismissed.

### F. The Amended Complaint Fails to State a Claim Against Any Relief Defendant.

Count IX identifies twelve "Relief Defendants" by name, including the Sagewood/Knightsbridge Defendants, but says nothing other than that all twelve allegedly were "signatories on bank accounts" and that they have no "legitimate claims to such funds" without identifying which funds that are allegedly at issue. (FAC ¶¶ 333-35.) The Bureau's claim against the Relief Defendants is defective as a matter of law and must be dismissed for three reasons.

First, the Bureau's claim against the Relief Defendants should be dismissed because there is no basis to exercise personal jurisdiction over them. *See* Section I. Second, as explained, the Amended Complaint does not plead adequately any alleged violations of the CFPA. *See* Section III.B. As such, the Amended Complaint necessarily fails to adequately allege that the Relief Defendants possess ill-gotten funds or funds that are "obtained . . . through unfair, deceptive, abusive, and unlawful acts or practices." (*Id.* ¶ 333.) In other words, because the Amended Complaint does not make out a tenable claim that the named Defendants are liable for the alleged underlying violations, the Bureau similarly cannot show that the Relief Defendants' property is ill-gotten and thus is subject to disgorgement.

The Amended Complaint also fails to plead any non-conclusory facts to show that the Relief Defendants have no legitimate interest in the property that the Bureau seeks to disgorge. The Bureau proffers only the legal conclusion that the Relief Defendants "have no legitimate claims to such funds" without identifying which funds that are allegedly at issue, other than simply alleging that all twelve Relief Defendants were signatories on certain bank accounts. (*Id.* ¶¶ 334-335.) Because the Amended Complaint merely offers "labels and conclusions" and a "formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, in its claim against the Relief Defendants, Count IX should be dismissed for lack of plausibility under Rule 8.

## IV. THE BUREAU VIOLATES THE SEPARATION OF POWERS.

In the interests of judicial efficiency, the Sagewood/Knightsbridge Defendants adopt and incorporate by reference the arguments set forth by the NDG Defendants that the Bureau itself violates the separation of powers and thus lacks the authority to bring this action. *See* NDG Defs.' Memo of Law, Section III.

## CONCLUSION

Because the Amended Complaint fails to comply with 12(b)(2) and 12(b)(6), the Sagewood/Knightsbridge Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

Dated: New York, New York
March 16, 2016

DLA PIPER LLP (US)

By: /s/ Richard F. Hans

Richard F. Hans
richard.hans@dlapiper.com
Constance C. Tse
connie.tse@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel. (212) 335-4500
Fax (212) 335-4501

Benjamin S. Boyd, *of counsel*
benjamin.boyd@dlapiper.com
DLA PIPER LLP (US)
500 8th Street, NW
Washington, DC 20004
Tel. (202) 799-4000
Fax (202) 799-5000

*Attorneys for Sagewood Holdings, Ltd., Knightsbridge Holdings, Ltd., Peter Ash and Paul Ash*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of March 2016, a copy of the foregoing memorandum of law was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Richard F. Hans
Richard F. Hans