UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

-against-

NDG FINANCIAL CORP., NORTHWAY FINANCIAL CORP., LTD., NORTHWAY BROKER, LTD., E-CARE CONTACT CENTERS, LTD., BLIZZARD INTERACTIVE CORP., NEW WORLD CONSOLIDATED LENDING CORP., NEW WORLD LENDERS CORP., PAYROLL LOANS FIRST LENDERS CORP., NEW WORLD RRSP LENDERS CORP., PETER ASH, SAGEWOOD HOLDINGS, LTD., KIMBERLY DETHOMAS, JEREMY SABOURIN, and WILLIAM WRIXON,

Defendants,

PETER ASH, SAGEWOOD HOLDINGS, LTD., PAUL ASH, KNIGHTSBRIDGE HOLDINGS LTD., PAUL GREHAN, 0562752 B.C. LTD., KIMBERLY DETHOMAS, EMERALD WILLOW HOLDINGS, LTD., JEREMY SABOURIN, RED RIVER HOLDINGS COMPANY LTD., WILLIAM WRIXON, and TWILLINGATE HOLDINGS LTD.,

Relief Defendants.

-------------------------------------- X

15-cv-5211 (CM)

**MEMORANDUM OF LAW IN SUPPORT**
**<u>OF NDG DEFENDANTS' MOTION TO DISMISS</u>**

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT. .......... 1

BACKGROUND. .......... 4

THE PARTIES .......... 5

THE CONCLUSORY LEGAL ALLEGATIONS .......... 7

ARGUMENT .......... 8

I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION. .......... 8

A. The CFPB Cannot Rely on a "Common Enterprise" Theory To Hale All 15 NDG Defendants into this Court .......... 10

B. The Court Lacks General Jurisdiction Over Any NDG Defendant. .......... 12

C. Likewise, The Court Lacks Specific Jurisdiction Over Any NDG Defendant. .......... 14

D. The Exercise Of Personal Jurisdiction Would Violate The NDG Defendants' Due Process Rights. .......... 15

II. THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6). .......... 17

A. The CFPB May Not Rely On Common Enterprise Liability To Evade *Iqbal* and *Twombly*. .......... 18

B. The CFPB Fails to Allege Conduct By NDG Financial, DeThomas, Sabourin, or Wrixon Covered By the CFPA. .......... 20

C. Lacking Any Factual Allegations Regarding Specific Loans Made Or Any Consumer Injury, The Amended Complaint Fails To State A Claim Against Any NDG Defendant. .......... 22

1. The Amended Complaint Lacks Allegations Demonstrating Substantial Injury, Rendering Its Claims For "Unfairness" Wholly Conclusory. .......... 23

2. The Amended Complaint Lacks Allegations As To Specific Consumers, Rendering Its Claims For "Abusiveness" Wholly Conclusory. .......... 24

3. The Amended Complaint Lacks Allegations Demonstrating Materiality, Rendering Its Claims for Deceptive Acts Wholly Conclusory. .......... 25

4. The Amended Complaint Only Speculates At A Violation of the Credit Practices Rule .......... 26

**TABLE OF CONTENTS**
(continued)

**Page**


D. The CFPB Lacks the Authority To Enforce the State Usury and Licensing Laws Upon Which Counts I, II and III Rely. 27

1. The CFPA Prohibits The CFPB From Enforcing State Usury Laws. 27

2. The CFPA Does Not Incorporate State Consumer Finance Law. 29

E. The CFPB Fails To State A Claim Against Any Relief Defendant. 31

III. THE STRUCTURE OF THE CFPB VIOLATES THE CONSTITUTIONAL SEPARATION OF POWERS. 32

CONCLUSION. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*,
828 F. Supp. 2d 557 (E.D.N.Y. 2011) ....................15

*Aquascutum of London, Inc. v. S. S. Am. Champion*,
426 F.2d 205 (2d Cir. 1970)....................13

*Aquiline Capital Partners LLC v. FinArch LLC*,
861 F. Supp. 2d 378 (S.D.N.Y. 2012)....................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................17, 19, 24

*Ashwander v. Tenn. Valley Auth.*,
297 U.S. 288 (1936)....................32

*Ballard v. Walker*,
No. 11 CIV. 5874, 2013 WL 6501234 (S.D.N.Y. Dec. 11, 2013)....................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................17

*Bildstein v. MasterCard Int'l Inc.*,
329 F. Supp. 2d 410 (S.D.N.Y. 2004)....................24, 26

*Blumenfield v. Advanced Call Ctr. Techs., LLC*,
No. 15-CV-4578, 2015 WL 6442621 (E.D.N.Y. Oct. 23, 2015)....................23

*Bond v. United States*,
_U.S._, 134 S. Ct. 2077 (2014)....................29

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................16

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342 (S.D.N.Y. 2014)....................13

*CFTC v. Walsh*,
618 F.3d 218 (2d Cir. 2010)....................31

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
90 F. Supp. 3d 97, 102-03 (S.D.N.Y. 2015) ....................9

*Chechele v. Morgan Stanley*,
896 F. Supp. 2d 297 (S.D.N.Y. 2012)....................27

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010)....................................................................................9

*Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*,
276 F.3d 187 (4th Cir. 2002) ..................................................................................31

*Commonwealth of Pa. v. Think Fin., Inc.*,
No. 14-CV-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016)..........................................18, 19

*Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.*,
No. 14-CV-00292, 2015 WL 1013508 (S.D. Ind. Mar. 6, 2015) ..............................23, 32, 33

*Consumer Fin. Prot. Bureau v. Morgan Drexen*,
60 F. Supp. 3d 1082 (C.D. Cal. 2014) .....................................................................33

*Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*,
No. 14-CV-01568, 2015 WL 5091170 (S.D.N.Y. Aug. 28, 2015)........................................13

*Daimler AG v. Bauman*,
_U.S_, 134 S. Ct. 746 (2014)...................................................................................12

*Dep't of Navy v. Fed. Labor Relations Auth.*,
665 F.3d 1339 (D.C. Cir. 2012)...............................................................................33

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
7 N.Y.3d 65 (2006) .................................................................................................14

*Eastboro Found. Charitable Trust v. Penzer*,
950 F. Supp. 2d 648 (S.D.N.Y. 2013).......................................................................15

*F.T.C. v. Tax Club, Inc.*,
994 F. Supp. 2d 461 (S.D.N.Y. 2014).......................................................................19

*F.T.C. v. Verity Int'l, Ltd.*,
443 F.3d 48 (2d Cir. 2006).......................................................................................25

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010)...........................................................................................32, 34, 35

*Gaymar Indus., Inc. v. FirstMerit Bank, N.A.*,
No. 06-CV-70S, 2007 WL 894217 (W.D.N.Y. Mar. 21, 2007) ..........................................15

*Giordano v. UBS, AG*,
No. 14 CIV. 8252, 2015 WL 5671970 (S.D.N.Y. Sept. 25, 2015)......................................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
_U.S._, 131 S. Ct. 2846 (2011).............................................................................15, 16

*Hinds Cty., Miss. v. Wachovia Bank N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009)....................20

*In re Aluminum Warehousing Antitrust Litig.*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015)....................10

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013)....................11

*Illinois v. Alta Colleges, Inc.*,
No. 14 C 3786, 2014 WL 4377579 (N.D. Ill. Sept. 4, 2014)....................25

*Illinois v. CMK Invs., Inc.*,
No. 14 C 2783, 2014 WL 6910519 (N.D. Ill. Dec. 9, 2014) ....................28

*Jazini v. Nissan Motor Co.*,
148 F.3d 181 (2d Cir. 1998)....................9, 10

*Jones v. United States*,
529 U.S. 848 (2000)....................29

*Karabu Corp. v. Gitner*,
16 F. Supp. 2d 319 (S.D.N.Y. 1998)....................11

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)....................10

*Kernan v. Kurz-Hastings, Inc.*,
175 F.3d 236 (2d Cir. 1999)....................16

*King Cty., Wash. v. IKB Deutsche Industriebank, AG*,
769 F. Supp. 2d 309 (S.D.N.Y. 2011)....................14

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
918 F.2d 1039 (2d Cir. 1990)....................13

*Levitin v. Sony Music Entm't*,
101 F. Supp. 3d 376, 388 (S.D.N.Y. 2015)....................12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
673 F.3d 50 (2d Cir. 2012)....................15

*Mabry v. Neighborhood Defender Serv.*,
769 F. Supp. 2d 381 (S.D.N.Y. 2011)....................17

*Nicholson v. Scoppetta*,
344 F.3d 154 (2d Cir. 2003)....................32

*Pearson Educ., Inc. v. Shi*,
525 F. Supp. 2d 551 (S.D.N.Y. 2007)....................15

*Pungitore v. Barbera*,
506 F. App'x 40 (2d Cir. 2012)....................23

*Realuyo v. Abrille*,
93 F. App'x 297 (2d Cir. 2004)....................9

*S.E.C. v. Wyly*,
860 F. Supp. 2d 275 (S.D.N.Y. 2012)....................31

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir.), *cert. denied*, _U.S._, 134 S. Ct. 2888 (2014)....................12

*SPV OSUS Ltd. v. UBS AG*,
No. 14-CV-9744, 2015 WL 4394955 (S.D.N.Y. July 20, 2015)....................13

*Steel Inst. of New York v. City of New York*,
No. 09 CIV 6539 CM, 2010 WL 5060682 (S.D.N.Y. Dec. 2, 2010)....................35

*Steinberg v. Bombardier Trust*,
No. 07 CIV. 1212, 2008 WL 2787720 (S.D.N.Y. July 9, 2008)....................16

*United States v. Bass*,
404 U.S. 336 (1971)....................29

*Vista Food Exch., Inc. v. Champion Foodservice, LLC*,
No. 14 CIV. 804, 2015 WL 5000863 (S.D.N.Y. Aug. 18, 2015)....................10

*Williamson ex rel. At Home Bondholders' Liquidating Trust v. Verizon Commc'ns Inc.*,
No. 11 CIV. 4948, 2013 WL 227691 (S.D.N.Y. Jan. 22, 2013)....................11

*Whitaker v. Am. Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001)....................9

*WorldHomeCenter.com, Inc. v. Franke Consumer Prods., Inc.*,
No. 10 CIV. 3205, 2011 WL 2565284 (S.D.N.Y. June 22, 2011)....................24

*Wyeth v. Levine*,
555 U.S. 555 (2009)....................29

**U.S. Constitution**

U.S. CONST. ART. I, § 9....................33

U.S. CONST. ART. II, § 3....................34

**Statutes/Rules**

12 U.S.C. § 243....34

12 U.S.C. § 244....34

12 U.S.C. § 5481....21, 22, 33

12 U.S.C. § 5491....33, 34

12 U.S.C. § 5497....33, 34

12 U.S.C. § 5511....27, 30

12 U.S.C. § 5517....28

12 U.S.C. § 5531....23, 25, 27, 29

12 U.S.C. § 5536....20, 27, 29

12 U.S.C. § 5551....30

12 U.S.C. § 5581....26

12 U.S.C. § 5564....27, 33

18 U.S.C. § 922....29

18 U.S.C. § 1961....29

Fed. R. Civ. P. 8....3

Fed. R. Civ. P. 12(b)(2)....1, 8, 9, 35

Fed. R. Civ. P. 12(b)(6)....1, 17, 35

16 C.F.R. § 444.2(a)(3)....26

N.Y. C.P.L.R. § 301....9

N.Y. C.P.L.R. § 302....9, 14, 15

**Legislative Materials**

*Rep. Spencer Bachus Holds a Hearing on Consumer Financial Protection Bureau Semi-Annual Report*, 112th Cong. 2nd Sess., 2012 WL 4282850 (2012)....28, 30

**Other Materials**

Brief of Petitioner, *PHH Corp. v. CFPB*, No. 15-1177 (D.C. Cir. Sept. 28, 2015)....32

Plaintiffs' Memorandum in Support of Summary Judgment, *State Nat'l Bank of Big Spring v. Jacob Lew*, No. 12-cv-1032 (D.D.C. Dec. 1, 2015) ..........33

Brief of Amici Curiae Rep. Sean P. Duffy and Consumers' Research in Support of Plaintiffs, *State Nat'l Bank of Big Spring v. Jacob Lew*, No. 12-cv-1032 (D.D.C. Dec. 1, 2015) ..........34

The NDG Defendants submit this memorandum in support of their motion to dismiss the Amended Complaint of the Consumer Financial Protection Bureau (the "CFPB") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

The CFPB has brought this shotgun complaint against 15 foreign defendants and an overlapping group of a dozen "Relief Defendants" who are alleged to have involvement in short-term loans made by Northway Financial Corp., Ltd. ("Northway"), an Internet lender based in Malta. The essence of the CFPB's case is that the fully disclosed interest rates on Northway's loans were too high under the laws of certain states, and it was therefore "unfair, deceptive or abusive" under federal law to tell willing borrowers that they should pay back money on the precise terms on which they borrowed it. This is a meritless theory on its own terms, but the CFPB's action suffers from bigger problems. It is remarkable that an agency of the United States would bring a lawsuit that completely ignores the "minimum contacts" rules of *International Shoe* and conflates nearly two dozen defendants in violation of *Iqbal*.

The Amended Complaint is deliberately vague when it comes to dates because Northway in fact exited the United States market shortly after the newly created CFPB announced its initiatives to regulate what it calls "payday lending." Am. Compl. ¶ 203. What is clear, however, is that none of these companies or individuals has ever lived or worked in New York, and few are alleged to have been in privity with anyone in this jurisdiction. Instead, the CFPB

---

[1] The NDG Defendants are NDG Financial Corporation ("NDG Financial"), Northway Financial Corp., Ltd., Northway Broker, Ltd. ("Northway Broker"), E-Care Contact Centers, Ltd. ("E-Care"), Blizzard Interactive Corp. ("Blizzard"), New World Consolidated Lending Corp. ("New World Consolidated"), New World Lenders Corp. ("New World Lenders"), Payroll Loans First Lenders Corp. ("Payroll Loans"), New World RRSP Lenders ("New World RRSP"), Kimberly DeThomas, Jeremy Sabourin, William Wrixon, Emerald Willow Holdings, Ltd. ("Emerald Willow"), Red River Holdings Company Ltd. ("Red River"), and Twillingate Holdings Ltd. ("Twillingate").

has sued numerous Canadian citizens and parent companies that are alleged to have done nothing other than own stock, raise funds from unidentified parties, or serve as the officers or directors of these foreign companies. None of those actions runs afoul of the federal consumer finance laws or subjects those individuals to jurisdiction in New York.

The CFPB's theory is that all 20-plus parties be grouped together as a "common enterprise" that offered "unlicensed and usurious payday loans over the Internet to US consumers." Am. Compl. ¶ 7. Yet nothing in the Consumer Financial Protection Act of 2010 ("the CFPA") permits the CFPB to dissolve the legal barriers between separate corporate persons, much less natural ones, and the Amended Complaint is bereft of any allegations that could pierce a single corporate veil, much less more than a dozen separate ones. To the contrary, in its detailed allegations concerning the corporate structure of the "NDG Enterprise," the Amended Complaint acknowledges that these defendants are separate legal persons, with distinct operations, that have taken separate actions, or in some cases, no actions at all. The Amended Complaint completely fails to acknowledge, however, that these distinctions are highly material both to the Court's jurisdiction over defendants and to any suggestion that any defendant committed substantive violations of the consumer finance law.

Whether or not the CFPB could allege some violation of federal law, it is elementary that the CFPB must identify what each named defendant did and why that conduct is actionable. The CFPB cannot simply throw all defendants together, declare "joint and several liability," and avoid identifying any particular wrongdoing. This is not only a matter of Federal Rule of Civil Procedure 8, but also a basic question of the Court's personal jurisdiction over these foreign defendants. For nearly all of these defendants, the Amended Complaint utterly fails to allege any acts at all that would even arguably subject them to jurisdiction New York. The corporate NDG

Defendants are all foreign companies incorporated abroad and host their operations there. Yet the CFPB simply lumps all the NDG Defendants together and asserts that they were part of an "enterprise" that made unspecified Internet loans to unidentified individuals located in New York. The CFPB cannot make a *prima facie* case of jurisdiction over foreign defendants based upon impermissible group pleading and completely vague allegations.

In addition, the CFPB fails to identify how any of the defendants, much less all of them, participated in the nine causes of action in the Amended Complaint. Indeed, in a textbook breach of the requirements of *Iqbal* and *Twombly*, the causes do not identify a ***single*** named defendant, but instead, group ***all*** defendants together collectively, and then allege that they collectively made false or deceptive statements, without identifying which defendant made the actionable statements, when they were made, and to whom. The Amended Complaint must be dismissed under Federal Rule of Civil Procedure 8 as well.

Yet the Amended Complaint's failings do not stop there, because it fails to state a claim under the CFPA. The pleading lacks any allegations identifying specific loans made to specific consumers that caused consumer injury. And though the NDG Defendants complied with any applicable ***federal*** statutes before exiting the United States, the CFPB nevertheless advances the novel view that the CFPA makes it "unfair, deceptive or abusive" to loan money on terms that violate a particular ***state's*** law. Yet the CFPB does not cite a single statutory provision that would federalize state usury or licensing laws. Indeed, the CFPB's Director has previously confirmed that the agency has no authority to enforce state interest rate caps. The CFPB's legal theory, however, would do precisely that by deeming every communication that a lender makes with a borrower concerning an allegedly usurious loan as a *per se* violation of federal law. The CFPB thus does not state any causes of action for violation of the CFPA.

Finally, while ordinarily the Court will not decide a constitutional issue where a matter may be resolved on other grounds, should the Court need to reach the question, the CFPB itself violates the separation of powers doctrine and thus lacks the authority to bring this action. As has been argued in multiple actions challenging the CFPB's structure in the D.C. Circuit and other courts, the CFPA impermissibly creates an agency that is independent of both the Executive and Congress, and thus wholly contravenes the Constitution's separation of powers. For this reason too, the Amended Complaint should be dismissed.

## BACKGROUND

The CFPB brought this action on July 6, 2015, alleging seven counts under the CFPA and one count under the Federal Trade Commission's Credit Practices Rule. Dkt. 1. The original complaint named 10 defendants. Eight of the defendants were Canadian companies, and two were Maltese companies. On December 11, 2015, the CFPB filed an Amended Complaint that added eleven more Canadian defendants, some of who were identified solely as "Relief Defendants." Dkt. 47. The additional defendants consisted entirely of upper-tier shareholders of certain NDG companies, as well as current or former directors.

The Amended Complaint is not improved. To the contrary, in its effort to pin liability indiscriminately on 21 defendants, the pleading relies on murky and contradictory allegations of guilt by association. The CFPB alleges that defendants comprise the so-called "NDG Enterprise" consisting of "commonly controlled companies located in Canada and Europe that function as a seamless unit to offer unlicensed and usurious payday loans over the Internet to U.S. consumers." Am. Compl. ¶ 7. In four conclusory paragraphs, the Amended Complaint alleges an "interrelated network of companies" that operates as a "common enterprise" in which each of 21 parties is "jointly and severally liable" for the acts of the others. *Id.* ¶¶ 104-107. The Amended Complaint, however, does not identify any legal theory under federal law to make that

so. The Amended Complaint makes clear that Northway and Northway Broker operate from Malta, while the other companies are centered in Canada. In addition, the allegations of "common control," while insufficient to pierce any corporate veil, are themselves contradictory. The Amended Complaint identifies NDG Financial as a company that "directly or indirectly own[s] or operate[s]" Northway or Northway Broker, *id.* ¶¶ 28, 33, but also asserts that New Northway S.A. (a third-party to the lawsuit) is the owner of those companies, *id.* ¶¶ 108-09.

**The Parties**

The CFPB evidently believes that by throwing 21 separate parties in the same suit, it can relieve itself of the need actually to plead personal jurisdiction and specific allegations against each of the parties. However, that is not the law, and therefore, it is necessary for the Court to consider the CFPB's allegations – or lack thereof – regarding the connection that each party has to New York, and to the alleged conduct, in order to evaluate personal jurisdiction and the sufficiency of the Amended Complaint. The NDG Defendants are identified here.

NDG Financial. NDG Financial is a Canadian corporation with its principal place of business in British Columbia. *Id.* ¶ 17. NDG Financial is allegedly a "privately held global e-commerce company" that owns other foreign companies and acts solely through "its subsidiaries and affiliate companies." *Id.* ¶ 20. NDG Financial is not alleged to have done any business itself in New York or to have taken any actions itself that violated federal law.

Blizzard. Blizzard is a Canadian corporation that operates in Winnipeg, Manitoba. *Id.* ¶ 42. Blizzard allegedly "identifies potential customers for Northway's loans by purchasing leads from lead generation companies," who are not identified. *Id.* ¶¶ 122, 128-32. The CFPB does not allege that the purchase of leads or the identification of "potential customers" is unlawful, or that Blizzard itself has transacted any business in New York.

Northway and Northway Broker. Northway and Northway Broker are alleged to be companies operating from Malta, under whose laws they are licensed and organized. *Id.* ¶¶ 26, 30. Northway is alleged to have made Internet loans to U.S. consumers. *Id.* ¶ 27. Northway Broker is alleged to provide "money brokering services" to U.S. consumers. *Id.* ¶ 31. Northway is alleged to have advanced funds using U.S. banks and to have received them in the same way, *id.* ¶ 147, which is not surprising, since Northway is an Internet lender based abroad. The CFPB does not allege, however, that the use of U.S. banks to process payments violates federal law.

The Amended Complaint ***implies*** that Northway has made loans to New York consumers, because it alleges that the New York regulator sent Northway a cease and desist letter in August 2013, and that Northway complied by informing "New York consumers" that it would no longer offer any loans to persons within the jurisdiction. *Id.* ¶¶ 202-03. This correspondence, however, is not itself actionable conduct, and the Amended Complaint does not contain a single factual allegation concerning the existence of any Northway loan to a New York consumer, the terms of such a loan, or any "deceptive," "abusive," or "unfair" actions or statements that Northway may have made to persons within the jurisdiction.

The Funding Entities. New World Consolidated, New World Lenders, Payroll Loans, and New World RRSP are Canadian companies that "assist in raising funds for the payday lending operation." *Id.* ¶ 47. Payroll Loans and New World RRSP were allegedly dissolved. *Id.* ¶¶ 53, 55. New World Lenders allegedly issued offering memos to unidentified investors. *Id.* ¶ 188. None of the entities allegedly took any action at New York or in violation of federal law.

E-Care. E-Care is a Canadian corporation headquartered in Canada. *Id.* ¶ 36. E-Care "collects payday loans extended by Northway." *Id.* ¶ 40. E-Care is alleged "[i]n numerous instances" to have "falsely represented to consumers that non-payment of debt would result in

lawsuit, arrest, imprisonment, or wage garnishment." *Id.* ¶ 161. The Amended Complaint does not contain a single example of any such statement or identify any New York consumer targeted by such alleged statements.

NDG's Shareholders. The CFPB has named Emerald Willow, Red River, and Twillingate, three Canadian corporations, as "Relief Defendants." Emerald Willow allegedly owns a majority of NDG Financial' shares. *Id.* ¶ 69. Red River and Twillingate allegedly "hold[] shares" in NDG Financial. *Id.* ¶¶ 100, 102. The Amended Complaint does not otherwise identify any actions taken by these entities, much less any connection to New York.

NDG's Directors and Officers. The CFPB has named three Canadian citizens, Kimberly DeThomas, Jeremy Sabourin, and William Wrixon, as Defendants and Relief Defendants. *Id.* ¶¶ 72-79, 81-84, 86-88. These individuals are alleged to be officers and directors of some of the Canadian companies at issue. *Id.* ¶¶ 72-88. Years before the enactment of the CFPA, DeThomas allegedly sent letters to an unidentified "U.S. state regulator." *Id.* ¶ 181. DeThomas, Sabourin, and Wrixon are otherwise alleged only to have signed ordinary corporate documents for these foreign companies. *Id.* ¶¶ 209, 241. None of these defendants is alleged to have taken any actions in his or her individual capacity, much less any actions that would violate federal law or connect him or her to New York.

**The Conclusory Legal Allegations**

The Amended Complaint devotes substantial space to describing the sophisticated and legitimate corporate operations of NDG Financial, Northway, and their affiliates. When it comes to alleging unlawful conduct, however, the Amended Complaint is sparse and conclusory. For example, it alleges that "Defendants made loans" to consumers located in a number of states, including New York, in violation of ***state*** anti-usury and licensing laws. *Id.* ¶¶ 259, 266. The

Amended Complaint does not identify any particular loan, however. There is no mention of who was the borrower, who was the lender, and when the loan was made. Moreover, it is obviously false to allege that all 21 defendants made such loans, since none of the entities other than Northway is alleged to have loaned any money.

In a similar vein, while the Amended Complaint alleges nine distinct causes of action, it fails to single out any defendant or provide notice as to what the defendant did that was unlawful. *Id.* ¶¶ 275-335. For instance, Count I alleges that "Defendants represented expressly or by implication that consumers residing in the Subject States were obligated to repay loan amounts, an obligation that in fact did not exist because the loans violated state licensing and/or usury laws that amounts void." *Id.* ¶ 276. Yet the claim does not identify which defendant made the representation, when it was made, and to whom. The same can be said for Counts II through VIII, all of which allege that all 21 defendants have engaged in "deception," "abusiveness," and "unfairness" without identifying a single defendant, a single injured consumer, or a single transaction where such matters took place. *Id.* ¶¶ 284-332. Count IX identifies twelve "Relief Defendants" by name, but again says nothing other than all twelve allegedly were "signatories on bank accounts" and that they have no "legitimate claims to such funds," without identifying any funds or bank accounts that may be at issue. *Id.* ¶¶ 333-35.

## ARGUMENT

### I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

As a threshold matter, the Amended Complaint must be dismissed because the CPFB has failed to establish that Defendants are subject to personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). To determine whether a foreign defendant is subject to personal jurisdiction, this Court first considers whether New York's long-arm statute would permit the exercise of jurisdiction.

*See, e.g.*, *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). New York permits a plaintiff to establish personal jurisdiction over a foreign defendant by showing general jurisdiction under N.Y. C.P.L.R. § 301 or specific jurisdiction under N.Y. C.P.L.R. § 302. *See Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 102-03 (S.D.N.Y. 2015). If a plaintiff can show personal jurisdiction under the long-arm statute, then the Court considers whether jurisdiction complies with Due Process. *Chloe*, 616 F.3d at 163. Notably, a plaintiff fails to satisfy its *prima facie* burden to establish personal jurisdiction if it merely pleads conclusory allegations and "states no facts supporting that conclusion . . . ." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998).[2]

The Amended Complaint completely fails to demonstrate personal jurisdiction. The CFPB rests entirely upon a "common enterprise" theory in seeking to hale the 15 NDG Defendants before the Court, despite clear law from the Supreme Court requiring the Court to assess individually ***each defendant's*** contacts with the forum state. The CFPB cannot seriously allege that any of these foreign defendants is subject to general jurisdiction, and the Amended Complaint does not plausibly allege any particular New York transaction involving any particular NDG Defendant to support specific jurisdiction. Even if the CFPB had so pled, it could not establish that jurisdiction is consistent with Due Process. Accordingly, the action should be dismissed under Fed. R. Civ. P. 12(b)(2).

---

[2] Plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). The plaintiff first must "make a *prima facie* showing of personal jurisdiction over the defendants." *Realuyo v. Abrille*, 93 F. App'x 297, 298 (2d Cir. 2004) (internal quotations omitted)). Plaintiffs must present "an averment of facts that, if credited[,] . . . would suffice to establish jurisdiction over the defendant." *Whitaker*, 261 F.3d at 208 (internal quotations and citations omitted).

### A. The CFPB Cannot Rely On A "Common Enterprise" Theory To Hale All 15 NDG Defendants Into This Court.

The Amended Complaint proceeds as though the CFPB has no need to allege that ***each NDG Defendant*** is subject to the Court's personal jurisdiction. That is not the law, however. As the Supreme Court has made clear, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary. ***Each defendant's contacts with the forum State must be assessed individually***." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, n.13 (1984) (internal citation omitted and emphasis added); *see also Vista Food Exch., Inc. v. Champion Foodservice, LLC*, No. 14 CIV. 804, 2015 WL 5000863, at *1 (S.D.N.Y. Aug. 18, 2015) (plaintiff "bears the burden of demonstrating personal jurisdiction over each defendant"). Indeed, this Court has rejected the proposition that personal jurisdiction extends to all members of an alleged common enterprise. *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) ("The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine."). The CFPB cannot absolve itself of this requirement merely by alleging the existence of a "common enterprise."

The Amended Complaint does not contain any allegations that would possibly allow the Court to impute the contacts of one defendant to those of all others. Numerous courts have rejected similar efforts to leverage jurisdiction over one party to support jurisdiction over an affiliate. *See Jazini* 148 F.3d at 184 (2d Cir. 1998) ("Where, as here, the claim is that the foreign corporation is present in New York state because of the activities there of its subsidiary, the presence of the subsidiary alone does not establish the parent's presence in the state."); *Giordano v. UBS, AG*, No. 14 CIV. 8252, 2015 WL 5671970, at *9 (S.D.N.Y. Sept. 25, 2015) (rejecting

the argument that personal jurisdiction existed over parent corporation simply because of the aggregate of contacts the subsidiaries had in the forum state); *Williamson ex rel. At Home Bondholders' Liquidating Trust v. Verizon Commc'ns Inc.*, No. 11 CIV. 4948, 2013 WL 227691, at *2 (S.D.N.Y. Jan. 22, 2013) ("[O]verlapping officers and directors are intrinsic to the parent-subsidiary relationship and . . . are not determinative as to whether the subsidiary is a mere department of the parent . . . .") (internal quotations and citations omitted); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 681 (2d Cir. 2013) ("[I]t is well established that individual officers and employees of a corporation are not automatically subject to personal jurisdiction in New York simply because a court can exercise jurisdiction over the corporation.") (internal quotation and citation omitted).

Here, the Amended Complaint is replete with general allegations concerning the allegations of "Defendants" or the "NDG Enterprise," but ***lacks a single specific allegation*** concerning the New York contacts of nearly all of them. There are no allegations concerning the New York ties of NDG Financial, Northway Broker, E-Care, the Funding Entities, Emerald Willow, Red River, Twillingate, DeThomas, Sabourin, or Wrixon. *See, e.g., Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) ("[Plaintiff] cannot obtain personal jurisdiction over [an individual] based solely on his position as [an officer]; instead, [plaintiff] must show that [the defendant] personally took part in the activities giving rise to the action at issue.") (internal quotations omitted) (citing *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995)). As for Blizzard, the Amended Complaint alleges that "Blizzard worked with a lead generator to target consumers residing in New York" in June 2013, but the fact that a Canadian company collected information on New York customers can hardly constitute contacts with the State itself. Am. Compl. ¶ 131.

In places, the Amended Complaint seems to imply that Northway made loans to customers in New York, yet curiously, the Amended Complaint does not actually allege any such transactions. Rather, the Amended Complaint alleges that Northway routed money to Canada using "correspondent accounts located in New York," *id.* ¶ 147, and told unidentified New York consumers that it would not make future loans in the state, *id.* ¶ 201. As explained below, these sparse allegations do not make a *prima facie* case of jurisdiction over Northway, and they certainly would not permit jurisdiction to be exercised over any other named defendant.

### B. The Court Lacks General Jurisdiction Over Any NDG Defendant.

The CFPB cannot plausibly argue that any of these foreign defendants is subject to general jurisdiction in New York. When it comes to foreign parties, the Supreme Court recently made clear that the exercise of general jurisdiction is limited to "exceptional cases" that warrant jurisdiction "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 751 n.19 (2014) (internal quotations and citations omitted).[3]

The CFPB has not alleged any facts to suggest that any foreign defendant is "essentially at home" in New York. The Amended Complaint clearly establishes that all of the defendants

[3] Before *Daimler*, New York courts had considered whether a foreign defendant was "doing business" in the State in order to determine general jurisdiction. *See Ballard v. Walker*, No. 11 CIV. 5874, 2013 WL 6501234, at *1 (S.D.N.Y. Dec. 11, 2013) ("A New York court may exercise jurisdiction over a non-domiciliary under New York CPLR § 301 if he is present in New York by virtue of 'doing business' in New York-that is, 'is here, not occasionally or casually, but with a fair measure of permanence and continuity. . . .'") (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267 (1917) (Cardozo, J.)). Post-*Daimler*, the Second Circuit has questioned the continuing viability of the "doing business" test. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 n.2 (2d Cir.) ("Not every company that regularly 'does business' in New York is 'at home' there. *Daimler* . . . may lead New York courts to revisit Judge Cardozo's well-known and oft-repeated jurisdictional incantation."), *cert. denied*, __ U.S. __, 134 S. Ct. 2888 (2014); *Levitin v. Sony Music Entm't*, 101 F. Supp. 3d 376, 388 (S.D.N.Y. 2015) ("The use of agency to demonstrate general jurisdiction is now of dubious validity."). In any event, the CFPB does not allege that any NDG Defendant is "doing business" in New York.

are foreign persons, who reside or are headquartered in Canada or Malta. As noted, the Amended Complaint alleges ***no*** facts to show any ties to New York for nearly all of the defendants, much less that they are at home here. *See Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14-CV-01568, 2015 WL 5091170, at *4 (S.D.N.Y. Aug. 28, 2015) ("The fact that DBAG might be 'at home' in the United States . . . is insufficient to render it 'at home' in New York."). The CFPB's pleading falls well below the *prima facie* threshold required for general jurisdiction. *See, e.g.*, *id.* (finding no general jurisdiction over foreign bank that conducted "significant operations" in New York City); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 351 (S.D.N.Y. 2014) (finding no general jurisdiction over corporation with offices in New York); *SPV OSUS Ltd. v. UBS AG*, No. 14-CV-9744, 2015 WL 4394955, at *4 (S.D.N.Y. July 20, 2015) (finding no general jurisdiction under *Daimler* where defendant "has offices in New York, conducts substantial business here, has a registered agent here, and has been the subject of many suits in New York courts").

In an apparent effort to imply a connection to New York, the CFPB scatters allegations concerning Northway's use of "correspondent accounts located in New York" (Am. Compl. ¶ 147) or Blizzard's purchase of leads from an unidentified company for "consumers residing in New York" (*id.* ¶ 131). Neither allegation makes a *prima facie* showing that either company was essentially at home in the state—let alone "doing business" here. *See, e.g.*, *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1045 (2d Cir. 1990) (finding a lack of general jurisdiction where defendant made thirteen business trips to New York in effort to solicit business in the state); *Aquascutum of London, Inc. v. S. S. Am. Champion*, 426 F.2d 205, 208 (2d Cir. 1970) (finding no general jurisdiction existed where defendants visited New York multiple

times a year "to exploit leads and solicit business generally"). The CFPB plainly cannot establish general jurisdiction over any NDG Defendant.

**C. Likewise, The Court Lacks Specific Jurisdiction Over Any NDG Defendant.**

To demonstrate specific jurisdiction, the CFPB must show that this case arises out of actions that a defendant has taken in New York or out of tortious conduct directed to, or causing injury, here. *See* N.Y. C.P.L.R. § 302. Under Section 302(a)(1), the Court must determine that the plaintiff has "proof of one transaction in New York" and there is a substantial relationship between the transaction and the claim asserted." *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (internal quotations and citations omitted).

The CFPB does not make either showing. As discussed, the CFPB does not allege the particulars of ***a single transaction*** in New York. The CFPB alleges twice that "Defendants made loans" in, among other places, New York. Am. Compl. ¶¶ 259, 266. However, these allegations are entirely conclusory, and they neither identify the defendant making the loans nor allege any details of the transactions. The CFPB does not allege that any New York consumer has been in privity with any NDG Defendant.

Indeed, the fleeting suggestion that Northway told an unidentified number of "New York consumers" that it would no longer offer loans in New York does not establish that Northway, in fact, ever made a loan in the State, much less a loan in violation of federal law. Am. Compl. ¶ 203. The Amended Complaint makes clear that Northway, a Maltese financial institution, makes loans over the Internet, and there is no basis for concluding that its loans occurred in New York. In numerous cases, this Court has rejected the assertion of jurisdiction where the contracting party had done far more in New York. *See, e.g.*, *Aquiline Capital Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 388 (S.D.N.Y. 2012) (finding no specific jurisdiction exists despite contracts and meetings that took place in New York); *King Cty., Wash. v. IKB Deutsche*

*Industriebank, AG*, 769 F. Supp. 2d 309, 316 (S.D.N.Y. 2011) (finding no specific jurisdiction when defendants "traveled to New York to transact business directly related to [the subject of the litigation]"). Specific jurisdiction over the NDG Defendants simply does not exist under § 302(a)(1).

Nor can the CFPB purport to rely on either CPLR § 302(a)(2) or § (a)(3), which premise jurisdiction over claims related to tortious acts or injuries in the forum state. The CFPB here has not clearly identified any tortious acts committed by any particular defendant in New York, and similarly, the CFPB has not identified any tortious injury to any particular New York consumer. *See, e.g.*, *Eastboro Found. Charitable Trust v. Penzer*, 950 F. Supp. 2d 648, 663 (S.D.N.Y. 2013) (explaining plaintiff must allege defendant committed tortious acts in order to meet the *prima facie* burden of personal jurisdiction); *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 572 (E.D.N.Y. 2011) (holding no tortious conduct exists for purposes of the long-arm analysis when plaintiff failed to plead defendant's conduct caused injury); *Gaymar Indus., Inc. v. FirstMerit Bank, N.A.*, No. 06-CV-70S, 2007 WL 894217, at *4 (W.D.N.Y. Mar. 21, 2007) (explaining plaintiff must sufficiently plead defendant committed tort for specific jurisdiction to exist under relevant provisions of the New York long-arm statute). For these reasons, specific jurisdiction does not exist under New York law.

### D. The Exercise Of Personal Jurisdiction Would Violate The NDG Defendants' Due Process Rights.

Even if the CFPB had pled personal jurisdiction under the New York statute, the assertion of jurisdiction here would violate Due Process. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2853 (2011); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012). Courts employ a two-step inquiry to assess constitutional compliance. *Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 557

(S.D.N.Y. 2007). First, courts must determine whether the defendant has "minimum contacts" in the state such that it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State" in a way "that [it] should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (internal quotations and citations omitted). Second, courts must decide whether personal jurisdiction is reasonable under the circumstances so as "not [to] offend 'traditional notions of fair play and substantial justice.'" *Goodyear*, 131 S. Ct. at 2853 (quoting *International Shoe Co. v. Wash. Office of Unemployment Compensation & Placement*, 326 U.S. at 310, 316 (1945)) (internal quotations omitted)). The reasonableness inquiry requires courts to weigh:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial's system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies.

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999).

The exercise of personal jurisdiction over any NDG Defendant would violate Due Process. For most defendants, there are simply no allegations of ***any contacts*** with New York. The Amended Complaint makes clear that all NDG Defendants are located in either Canada or Malta, and that they do not own any property or lease any offices in New York. Blizzard allegedly "worked with a lead generator to target consumers in New York," but the Amended Complaint does not link this activity—the collection of customer information—to a single New York transaction. Am. Compl. ¶ 131. Therefore, Blizzard has no contacts in New York sufficient to satisfy the initial constitutional test. *Steinberg v. Bombardier Trust*, No. 07 CIV. 1212, 2008 WL 2787720, at *3 (S.D.N.Y. July 9, 2008) (noting conversations and other

discussions are not sufficient to satisfy minimum contacts test, unless the communications "project [defendant] into New York to participate in . . . activities localized in the state") (internal quotations and citations omitted). Moreover, the exercise of personal jurisdiction over any other NDG Defendant would be unreasonable. NDG Defendants are located in Canada and Malta, and the burden of litigating in New York is substantial. It is impossible for the Court to assess the forum state's interest in litigating here, because the CFPB has not provided any allegations concerning whether and how any NDG Defendant injured any New York resident.

## II. THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6).

In addition to failing to plead jurisdiction, the Amended Complaint fails to state a claim under Fed. R. Civ. P 12(b)(6). To avoid a 12(b)(6) dismissal, "a complaint must contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 389 (S.D.N.Y. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the Court will assume the truth of factual allegations in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, the Amended Complaint suffers from multiple defects. First, just as with personal jurisdiction, the CFPB erroneously relies on a theory of "common enterprise" liability to state a claim against all 15 NDG Defendants, in an apparent attempt to escape its burden to plausibly state a claim to relief against each named defendant. Second, the Amended Complaint fails to allege that NDG Financial, DeThomas, Sabourin, or Wrixon fall within the scope of the CFPA. Third, when considered with respect to each defendant, the Amended Complaint lacks any

factual allegations regarding any particular wrongful acts or specific injuries, rendering the claimed violations under the CFPA and the Credit Practices Rule wholly conclusory.

Fourth, even if the CFPB could state a claim against any member of the "NDG Enterprise," the CFPB has not properly pled any violation of the CFPA. The CFPB's legal theory, essentially, is that the "NDG Enterprise" violated the CFPA by collecting loans that violated state usury and licensing laws. Yet the CFPB has no authority to enforce such state laws. Finally, the CFPB's effort to state claims against the so-called "Relief Defendants" are entirely conclusory. The CFPB neither identifies the funds at issue nor explains how those defendants lack a legitimate claim to them. For these reasons, the Court should dismiss the Amended Complaint in its entirety with prejudice.

### A. The CFPB May Not Rely On Common Enterprise Liability To Evade *Iqbal* And *Twombly.*

Just as the CFPB may not hide behind shotgun allegations to establish personal jurisdiction, it may not rely upon a theory of a "common enterprise" to excuse its failure to make specific allegations as to how each, or any, of the named NDG Defendants is liable for unfair, deceptive, or abusive conduct under the CFPA. In naming nine causes of action, the CFPB fails to identify a single NDG Defendant, but rather treats all "Defendants" as though they are interchangeable. In so doing, the CFPB has failed to state a claim against any of them.

The CFPB premises its shotgun pleading based upon the notion that the "NDG Enterprise" is a "common enterprise" in which all 21 members are jointly and severally liable for each other's debts. Had Congress wished to provide for "common enterprise" liability in the CFPA, then it surely would have said so, but nothing in the statute permits it. Indeed, federal courts have held that "common enterprise" liability does not apply to claims brought under the unfair, deceptive and abusive act provisions of the CFPA. *See Commonwealth of Pa. v. Think*

*Fin., Inc.*, No. 14-CV-7139, 2016 WL 183289, at *26 (E.D. Pa. Jan. 14, 2016). While some federal courts have permitted the FTC to rely upon a "common enterprise" theory under the Federal Trade Commission Act, the *Think Finance* court explained that the FTCA exception should not apply to the CFPA. *Id.*

Even if the CFPB could pursue a "common enterprise" theory under the CFPA, the allegations would be limited to corporate defendants, and thus, could not form a basis for an action against any of the individual defendants. *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). Moreover, the sparse allegations in the Amended Complaint would not support this theory. To state a "common enterprise" among "a set of corporate defendants," the defendants must allege that they "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Id.* Here, the CFPB has merely alleged some of these factors through two conclusory paragraphs. Am. Compl. ¶¶ 105-06. This Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

In addition, the CFPB's allegations contradict these summary conclusions. Thus, the Amended Complaint alleges that the "NDG Enterprise" is "split into two groups." Am. Compl. ¶ 108. Northway and Northway Broker, which form the "European Group," have separate operations and corporate ownerships, and thus, cannot be part of a common enterprise with the "Canadian Group." *Id*. ¶ 11. In addition, while some of the Canadian companies share offices, not all of them do, and in fact, the Amended Complaint alleges that different companies operate variously out of Vancouver, Winnipeg, and Surrey. *Id*. ¶¶ 18, 42, 50. Likewise, the Amended Complaint does not contain any particular allegations of commingled funds, but simply alleges that some (but not all) defendants are signatories on certain bank accounts. *Id*. ¶¶ 227, 237.

The Amended Complaint completely fails to identify which defendants have engaged in the challenged conduct. Read most charitably, the Amended Complaint indicates that the CFPB believes Northway made loans to U.S. consumers, and that E-Care played a role in collecting them. While the lack of specificity with respect to those allegations prevents the CFPB from stating a claim under the Federal Rules, *see infra*, at a minimum, the CFPB cannot plead claims against any other defendants who have not taken any action to violate the CFPA. This is not a case where a "common enterprise" has been employed to diffuse responsibility among a number of cooperating corporations. This is a case in which the CFPB has sued over a dozen defendants without providing fair notice of wrongdoing against all, or nearly all, of them.

In the absence of specific allegations as to each of the NDG Defendants' participation in the unlawful conduct, the Amended Complaint fails to state a claim. *See Hinds Cty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 512-13 (S.D.N.Y. 2009) (dismissing claims against 21 defendants where complaint failed to allege their participation in the unlawful activity and simply named them as joint defendants). To hold otherwise would effectively result in a CFPA exception to *Iqbal/Twombly*.

**B. The CFPB Fails To Allege Conduct By NDG Financial, DeThomas, Sabourin, Or Wrixon Covered By The CFPA.**

The Amended Complaint fails to state a claim with respect to NDG Financial, DeThomas, Sabourin, and Wrixon because it does not allege that these defendants fall within the scope of the CFPA's prohibitions. The CFPA prohibits "unfair, deceptive, or abusive" acts or practices by "any covered person or service provider." 12 U.S.C. § 5536. The Amended Complaint, however, does not contain any factual allegations that these defendants are "covered persons," "service providers," "affiliates," or "related persons" under the CFPA. Instead, it just parrots the terms of the statute. Such conclusory allegations fail to satisfy *Iqbal/Twombly*.

*NDG Financial*. The Amended Complaint alleges that NDG Financial is an "affiliate, a covered person, and a service provider under the CFPA." Am. Compl. ¶ 25. The CFPB's allegations that NDG Financial is an "affiliate" is irrelevant here, because affiliates do not fall within the CFPA's prohibition. To allege that NDG Financial is a covered person, the CFPB must allege that it "engages in offering or providing a consumer financial product or service," 12 U.S.C. § 5481(6)(A), or that, in its capacity as an "affiliate" of a covered person, it acts as a "service provider" to the covered person, *id*. § 5481(6)(B).[4] Even if NDG is an "affiliate" of its subsidiaries, the Amended Complaint does not allege that it provides any services to them. To the contrary, it alleges that NDG Financial acts through its subsidiaries, and thus does not does not directly offer products or services to consumers. Am. Compl. ¶ 23. And the CFPB offers no allegations that NDG Financial provided a "material service to a covered person in connection with the offering/provision of the consumer financial product," or that it "processe[d] transactions relating to the consumer financial product or service" such that NDG Financial could thereby be considered an affiliate acting as a service provider to a covered person, or that it could be a service provider in its own right. 12 U.S.C. §§ 5481(6)(B), (26)(A).

*DeThomas, Wrixon, and Sabourin*. The Amended Complaint suffers from the same conclusory defect when it comes to DeThomas, Wrixon, and Sabourin. It alleges that all three are "related persons" under the CFPA. Am. Compl. ¶¶ 80, 85, 89. But to allege that they are "related persons," the CFPB must plausibly allege that they are each a"director, officer, or employee charged with managerial responsibility for, or controlling shareholder of, or agent for,

---

[4] The CFPA defines a "service provider" as "any person that provides a ***material service*** to a covered person in connection with the offering or provision by such covered person of a consumer financial product or service, including a person that . . . ***processes transactions*** relating to the consumer financial product or service . . . ." 12 U.S.C. § 5481(26)(A) (emphasis added).

such covered person." 12 U.S.C. § 5481(25)(C); *see also id*. § 5481(25)(A) (deeming a "related person" to be a "covered person" for any provision of federal consumer financial law).[5]

While the Amended Complaint alleges that DeThomas, Sabourin, and Wrixon held officer and director positions, it does not plausibly allege any managerial responsibility for a "covered person." The CFPB simply assumes that by listing officer and director positions, it has met its obligation. Not so. The statute requires allegations of managerial responsibility, and the Amended Complaint's only non-conclusory allegations are that DeThomas sent two letters to an unidentified regulator on behalf of E-Care in 2007 and 2009, Am. Compl. ¶¶ 181-82, and that DeThomas, Wrixon, and Sabourin signed for documents and accounts on behalf of certain defendants, *id*. ¶¶ 237-38, 241, 209. Such statements are woefully insufficient in alleging "managerial responsibility" for any entity offering a consumer financial product to the public, because they fail to allege management of the day-to-day operations of the NDG entities' business.

The CFPB's conclusory allegations fail to plausibly allege that NDG Financial, DeThomas, Sabourin, and Wrixon fall within the scope of the CFPA. These four defendants should be dismissed on this ground too.

### C. Lacking Any Factual Allegations Regarding Specific Loans Made Or Any Consumer Injury, The Amended Complaint Fails To State A Claim Against Any NDG Defendant.

Even if the CFPB could pursue claims against particular defendants, the Amended Complaint suffers from another fatal defect: its complete absence of factual allegations regarding specific loans made to consumers and specific injuries suffered by consumers. Indeed, in the

[5] The Amended Complaint also alleges that the three are "covered persons" in their own right. Am. Compl. ¶¶ 80, 85, 89. But the CFPB only alleges that they are officers and directors of NDG Defendant entities, and does not allege that they directly offer financial products or services to consumers in their individual capacities. They therefore are not "covered persons."

absence of "any alleged facts supporting [the Amended Complaint's] conclusory assertion[s]," this Court must dismiss the Amended Complaint for failure to state a claim. *See Pungitore v. Barbera,* 506 F. App'x 40, 43 n.1 (2d Cir. 2012) (affirming district court's dismissal of complaint for failure to state a claim); *Blumenfield v. Advanced Call Ctr. Techs., LLC*, No. 15-CV-4578, 2015 WL 6442621, at *2 (E.D.N.Y. Oct. 23, 2015) (dismissing complaint where plaintiff failed to identify acts by defendants under the Fair Debt Collection Practices Act).

1. The Amended Complaint Lacks Allegations Demonstrating Substantial Injury, Rendering Its Claims For "Unfairness" Wholly Conclusory.

The Amended Complaint pleads two counts of unfairness: Count II alleges defendants' collection of loan payments in violation of state laws, and Count VIII alleges that defendants' conditioned "some" loan agreements on irrevocable wage assignment clauses. The vagueness of these allegations not only dooms them as a matter of law, but it completely fails to provide fair notice. In point of fact, Northway is not aware of any loans advanced with irrevocable wage assignment clauses, and the CFPB's lack of specificity on these claims likely reflects the fact that it has no basis on which to make such allegations against Northway.

To plausibly state a claim of unfair acts or practices, the CFPB must allege that the acts or practices cause or are likely to cause substantial injury to consumers, which are not reasonably avoidable by consumers; and that such substantial injury is not outweighed by countervailing benefits to consumers or competition. *See* 12 U.S.C. § 5531(c)(1)(A). A "substantial" injury in the context of consumer protection is generally a financial one. *See Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc.,* No. 14-CV-00292, 2015 WL 1013508, at *25 (S.D. Ind. Mar. 6, 2015). Speculative harm will not suffice. *See id.*

Here, the CFPB makes no effort to plead a "substantial injury," let alone to allege that such injury is not outweighed by countervailing benefits to consumers or competition. The

CFPB does not point to any specific loans made by any defendant; does not allege ***any*** (let alone a "substantial") injury suffered by any consumer; admits that the allegedly irrevocable wage assignment clause appears only in "some loan agreements" (in fact, it does not appear in any Northway loan agreement); and admits that defendants did not even have any "intention of employing wage garnishment as a collections technique and do not employ wage garnishment in the United States." Am. Compl. ¶¶ 164-65. Lacking any allegations that any defendant actually caused any injury to any consumers, the Amended Complaint fails to plausibly allege that "[t]he injuries sustained by consumers . . . were not outweighed by countervailing benefits to consumers or to competition." *Id.* ¶¶ 288, 311.

Because the CFPB's efforts here are nothing more than "recitals of the elements of a cause of action, supported by mere conclusory statements," Counts II and VIII should be dismissed. *Iqbal*, 556 U.S. at 678; *cf. WorldHomeCenter.com, Inc. v. Franke Consumer Prods., Inc.*, No. 10 CIV. 3205, 2011 WL 2565284, at *7 (S.D.N.Y. June 22, 2011) ("The Court finds that Plaintiff has failed to state a claim . . . because Plaintiff cannot specify any consumer who was actually injured"); *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414-15 (S.D.N.Y. 2004) (dismissing claim under New York law where plaintiff failed to plead facts alleging injury as required by the statute).

2. The Amended Complaint Lacks Allegations As To Specific Consumers, Rendering Its Claims For "Abusiveness" Wholly Conclusory.

The Amended Complaint similarly pleads two vague counts of abusiveness: Count III relates to the collection of loans; and Count V relates to purported representations made to consumers concerning federal and state law. To plausibly plead a claim for "abusive" acts under the CFPA, the CFPB must allege that the NDG Defendants' conduct "***materially interfere[d]*** with the ability of a consumer to understand a term or condition of a consumer financial product

or service," or ***exploit[ed]*** "a lack of understanding on the part of the consumer . . . ; the inability of the consumer to protect the interests of the consumer . . . ; or the reasonable reliance by the consumer." 12 U.S.C. § 5531(d)(2)(A), (B), (C) (emphasis added).

Again, the CFPB's failure to proffer specific allegations as to specific transactions with consumers dooms its claims for abusiveness. The Amended Complaint objects to defendants' purported actions, but it lacks any factual allegations regarding ***consumers'*** understanding of terms or conditions of the loans allegedly offered by the NDG Enterprise. In the absence of such allegations, the Amended Complaint cannot plausibly allege that the NDG Defendants' collection of loans or representations regarding the law materially interfered or exploited consumers' lack of understanding of their rights. Counts III and V should be dismissed.

3. The Amended Complaint Lacks Allegations Demonstrating Materiality, Rendering Its Claims For Deceptive Acts Wholly Conclusory.

The CFPB also accuses the NDG Defendants of committing deceptive acts in Count I (deception regarding legal right to collect loans), Count IV (deception regarding the applicability of state and federal law), and Count VI of the Amended Complaint (consequences of non-payment). To plausibly allege that an act is deceptive under the CFPA, the CFPB must provide factual allegations demonstrating "(1) a representation, omission, or practice, that (2) is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material." *F.T.C. v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006) (internal quotations and citations omitted).[6]

[6] The CFPB has taken the position that the term "deceptive act" has the same definition as in the Federal Trade Commission Act, and defendants accept that for purposes of this motion. *See Illinois v. Alta Colleges, Inc.*, No. 14 C 3786, 2014 WL 4377579, at *4 (N.D. Ill. Sept. 4, 2014) ("The statute does not define a "deceptive" practice, but the Bureau says the phrase has the same meaning under the CFPA as it does under the Federal Trade Commission Act. . . .").

The CFPB has failed to plead that any representations to consumers were material. A plaintiff pleads materiality by alleging that "information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Bildstein*, 329 F. Supp. 2d at 414 (internal quotes and further citations omitted). Thus, to survive a motion to dismiss, the CFPB must plausibly allege that the information allegedly withheld from consumers would have affected the consumers' choices of short-term loans or their decisions to pay the loans back. *See id*. (dismissing claim where complaint lacked any allegation regarding materiality).

The Amended Complaint, however, does not allege that the information allegedly withheld from consumers (about state usury laws or the consequences of non-payment) would have affected their choice of short-term loan or their decision to honor the terms of their loan. Instead, as with the other counts, the CFPB does nothing more than simply parrot the elements of the statute. *See* Am. Compl. ¶¶ 281-82, 302-304. Federal rules of pleading plainly require more, particularly when a government agency is charging a party with unlawful and fraudulent conduct. Counts I, IV, and VI should be dismissed.

4. The Amended Complaint Only Speculates At A Violation Of The Credit Practices Rule.

Count VII of the Amended Complaint alleges that Northway and Northway Broker violated the FTC's Credit Practices Rule, 16 C.F.R. § 444.2(a)(3). That rule, which the CFPA authorizes the CFPB to enforce, 12 U.S.C. § 5581(b)(5)(B)(ii), prohibits lenders from "directly or indirectly" taking or receiving from a consumer an obligation that constitutes or contains an assignment of wages or other earnings, unless the assignment is revocable at will of the debtor. 16 C.F.R. § 444.2(a)(3). To plausibly state a claim against a lender, the plaintiff must therefore allege that the lender received a consumer obligation via an irrevocable wage assignment clause.

Because the Amended Complaint does not identify any occasion in which Northway or Northway Broker took or received wage assignments pursuant to irrevocable wage assignment clauses, Count VII fails to state a claim. As noted above, the Amended Complaint alleges only that "some" loan agreements included such a clause. Am. Compl. ¶ 154. The Amended Complaint states that the NDG Defendants received money directly from employers' payrolls pursuant to wage assignment clauses, Am. Compl. ¶ 154, but it does not identify any particular transaction or allege that Northway or Northway Broker received money pursuant to an ***irrevocable*** wage assignment. Nor does the CFPB specify when these alleged loan agreements containing the irrevocable wage assignment clauses were made. Therefore, defendants have no basis for determining whether the alleged activity falls within the three-year statute of limitations provided by the CFPA. *See Chechele v. Morgan Stanley*, 896 F. Supp. 2d 297, 305 (S.D.N.Y. 2012) ("[A] complaint is inadequately pled if it does not provide factual allegations sufficient 'to give the defendant fair notice of what the claim is and the grounds upon which it rests.'"). Defendants' liability cannot be premised on such an amorphous and undefined basis. Count VII should be dismissed.

**D. The CFPB Lacks The Authority To Enforce The State Usury And Licensing Laws Upon Which Counts I, II And III Rely.**

1. The CFPA Prohibits The CFPB From Enforcing State Usury Laws.

The CFPB has brought this case pursuant to its authority to prohibit practices in violation of ***federal consumer financial law***. 12 U.S.C. §§ 5531, 5536(a), 5564(a)-(b). Congress established the CFPB for the purpose of, among other things, "supervising . . . compliance with Federal consumer financial law, and taking appropriate enforcement action to address violations of Federal consumer financial law . . . ." 12 U.S.C. § 5511(c)(1), (2), (4). In this case, however, the CFPB has sought to expand that authority to wield powers that it does not have. The CFPB's

theory here is that a lender's effort to advance and collect loans in violation of state usury laws would *ipso facto* constitute a violation of the CFPA. *See* Am. Compl. ¶¶ 253-70. Counts I, II and III allege that because certain states regulate the interest rates that a lender may charge, defendants violated federal law when they sought to advance and collect loans according to the unambiguous terms of the loan agreements.

Yet the CFPA plainly disavows such authority. Section 1027(o) of the law (12 U.S.C. § 5517(o)) expressly prohibits the CFPB from enforcing state usury interest rate limits and other aspects of state usury laws. The law reads:

> **No authority to impose usury limit.** No provision of this title shall be construed as conferring authority on the [CFPB] to establish a usury limit applicable to an extension of credit offered or made by a covered person to a consumer, unless explicitly authorized by law.

12 U.S.C. § 5517(o). At least one district court has noted that the CFPB lacks authority "to establish a usury limit applicable to an extension of credit." *See Illinois v. CMK Invs., Inc.*, No. 14 CV 2783, 2014 WL 6910519, at *7 n.5 (N.D. Ill. Dec. 9, 2014) (intimating defendant should have challenged scope of CFPB's authority on motion to dismiss based on 12 U.S.C. § 5517(o)) (internal quotations omitted). Indeed, the CFPB's Director has agreed. *See Rep. Spencer Bachus Holds a Hearing on Consumer Financial Protection Bureau Semi-Annual Report*, 112th Cong. 2nd Sess., 2012 WL 4282850 (2012) (statement of Richard Cordray, Director CFPB) ("Cordray Testimony") ("CORDRAY: … I want to emphasize this: We do not have under our statute authority to impose an interest rate cap, which has been the method -- the approach which has been taken at the state level at times to address this [payday lending] issue . . . ."). The CFPB should not be permitted to take an end run around this prohibition. Because Counts I, II and III seek to enforce state usury laws, the claims should be dismissed.

2. The CFPA Does Not Incorporate State Consumer Finance Law.

Counts I, II and III fail for another reason: the CFPA fails to incorporate state consumer financial laws into the federal regime. The CFPB's reliance on state licensing and usury law here violates "the delicate balance of power mandated by the Constitution" between the state and federal sovereigns. *Wyeth v. Levine*, 555 U.S. 555, 585 (2009). Clearly, Congress has the ability to regulate in areas of state concern. However, when Congress seeks to regulate in an area of long-standing state regulation, Congress must make a "clear and definite" statement that it has incorporated state law into its own. *See Bond v. United States*, __ U.S. __, 134 S. Ct. 2077, 2083 (2014) ("Because our constitutional structure leaves local criminal activity primarily to the States, we have generally declined to read federal law as intruding on that responsibility, unless Congress has clearly indicated that the law should have such reach."); *Jones v. United States*, 529 U.S. 848, 858 (2000); *United States v. Bass*, 404 U.S. 336, 350 (1971).

Congress has not given any indication—let alone a clear one—that it intended to incorporate state usury and licensing laws into the CFPA. The law gives the CFPB the authority to "prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice *under Federal law* in connection with any transaction with a consumer for a consumer financial product or service." 12 U.S.C. § 5531(a) (emphasis added); *see* 12 U.S.C. § 5536(a)(1)(A) ("It shall be unlawful . . . to offer or provide to a consumer any financial product or service not in conformity ***with Federal consumer financial law***, or otherwise commit any act or omission in violation ***of a Federal consumer financial law*** . . . .") (emphasis added). Congress could have very simply added language authorizing the CFPB to prevent unfair, deceptive, or abusive acts ***under state laws***. *See, e.g.*, 18 U.S.C. § 1961(1) (defining racketeering, in part, as an act "***which is chargeable under State law*** and punishable by imprisonment for more than one year") (emphasis added); 18 U.S.C. § 922(b)(2) ("It shall be

unlawful . . . to sell or deliver . . . any firearm to any person in any State where the purchase or possession . . . ***would be in violation of any State law***") (emphasis added). Congress did not include such language, but instead, it expressly prohibited the CFPB from relying on state usury laws.

The CFPA provision entitled "Relation to Other Provisions of Enumerated Consumer Laws that Relate to State Law" further manifests Congress' intent that the CFPA not incorporate state usury and licensing laws. *See* 12 U.S.C. § 5551(b) ("No provision of this title [subject to one exception] shall be construed as modifying, limiting, or superseding the operation of any provision of an enumerated consumer law that relates to the application of a law in effect in any State with respect to such Federal law."). Here, Congress drew a clear line between the CFPA and state consumer financial protections. The restriction was an important aspect of the bill as many then-state attorneys general—including Director Cordray—were concerned that the CFPA would preempt state prosecutions. Cordray himself said:

> So for the most part, our approach is we're going to be leery about preempting state law. I mean, most of what we do will ride on top of state law and coexist with state law, and that actually was most of the premise of the Dodd-Frank Act, as I understood. I was attorney general at the time; we were very concerned about those issues.

Cordray Testimony, 2012 WL 4282850.

Indeed, the theory of this case disregards the purpose Congress gave the CFPB. Congress has instructed that the CFPB "shall seek to implement and, where applicable, enforce ***Federal consumer financial law*** consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive." 12 U.S.C. § 5511(a) (emphasis added). Nowhere in the Amended Complaint does the CFPB seek to enforce ***federal*** consumer

financial law. Instead, the Amended Complaint's theory of liability is premised on the NDG Defendants' collection on loans the CFPB views as void under ***state*** law.

The CFPB premised Counts I, II and III on authority the CFPB simply does not have. The Court should dismiss Counts I, II, III of the Amended Complaint with prejudice.

**E. The CFPB Fails To State A Claim Against Any Relief Defendant.**

A relief defendant is one "who holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute." *CFTC v. Walsh*, 618 F.3d 218, 225 (2d Cir. 2010) (internal quotations omitted). The doctrine traditionally applies only in cases of fraud. *See, e.g.*, *S.E.C. v. Wyly*, 860 F. Supp. 2d 275, 280 (S.D.N.Y. 2012). The CFPB has not identified any cases under the CFPA permitting the pursuit of a "relief defendant," and this is not a fraud case. Therefore, this fraud-based doctrine should not apply.

Even if the doctrine could apply outside the fraud context, the Amended Complaint does not contain factual allegations that would allow it to apply to any NDG Relief Defendant. A district court may disgorge funds from a relief defendant if the plaintiff can show that the relief defendant "(1) is in possession of ill-gotten funds and (2) lacks a legitimate claim to those funds." *Walsh*, 618 F.3d at 225. In determining whether a defendant has a "legitimate claim" to funds, courts will look at whether they have received monies as payment for services rendered to an employer. *See Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002) ("[The] receipt of funds as payment for services rendered to an employer constitutes one type of ownership interest that would preclude proceeding against the holder of the funds as a nominal [relief] defendant.").

The Amended Complaint contains no allegation identifying any funds that any particular relief defendant has in his or her possession. The Amended Complaint similarly contains no factual allegations that any NDG Relief Defendants received monies without a legitimate claim.

To the extent that DeThomas, Sabourin, and Wrixon received salaries for their work for one or more defendants, they would have a legitimate claim to those monies. However, the Amended Complaint does not allege that they received salaries or any other money. The CFPB's conclusory legal allegations plainly fail to state a claim against any relief defendant.

## III. THE STRUCTURE OF THE CFPB VIOLATES THE CONSTITUTIONAL SEPARATION OF POWERS.

Ordinarily, a court will avoid addressing a constitutional issue, where there are other grounds available for decision. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter"); *Nicholson v. Scoppetta*, 344 F.3d 154, 170 (2d Cir. 2003) (noting the "well-established judicial preference to avoid unnecessary constitutional rulings") (citing *Baxter v. City of Belleville*, 720 F. Supp. 720, 734 (S.D. Ill. 1989)). Should the Court believe, however, that this action may survive dismissal, then it must also consider whether the CFPB's structure is constitutional. The CFPB is a unique federal agency, which Congress deliberately insulated from the control of the Executive and the Congressional appropriations process. The Supreme Court recently confirmed that the Constitution prevents the creation of novel administrative structures that fall outside the traditional constitutional framework. *See Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 484 (2010) (striking down certain provisions of the statute creating the Public Company Accounting Oversight Board ("PCAOB")).

Given the CFPB's extraordinary degree of independence, several courts are currently considering challenges to the CFPB's authority. *See* Brief of Petitioner at 45-51, *PHH Corp. v. CFPB*, No. 15-1177 (D.C. Cir. Sept. 28, 2015) (oral argument scheduled for April 12, 2016); *ITT*

*Educ. Servs., Inc.*, 2015 WL 1013508, at *10-11; Plaintiffs' Memorandum in Support of Summary Judgment at 10-27, *State Nat'l Bank of Big Spring v. Jacob Lew*, No. 12-cv-1032 (D.D.C. Dec. 1, 2015).[7]

While the Court need not address this issue, given the alternative bases for dismissal, it will need to decide the matter if the Court concludes that the CFPB has stated a claim against a defendant subject to personal jurisdiction. The CFPA established the CFPB as an independent agency with expansive executive authority. 12 U.S.C. § 5491(a). The CFPB may enforce 18 federal consumer protection laws, and its authority to do so overlaps with other federal agencies, like the Federal Trade Commission. *Id*. §§ 5564, 5481(12). The CFPB is headed by a single Director, appointed by the President for a five-year term. *Id*. § 5491.

Unlike other federal independent agencies, however, the CFPB is independent from both Congress and the President. Specifically, the CFPB receives funds outside of Congress' appropriation process, and its Director can only be removed for cause. This insulation from Congressional and Presidential oversight shields the CFPB from the democratic process and therefore violates the doctrine of separation of powers.

*Insulation from Congress.* The Constitution's Appropriations power, U.S. CONST. ART. I, § 9, functions as a powerful check on the Executive branch of government. *See Dep't of Navy v. Fed. Labor Relations Auth.*, 665 F.3d 1339, 1346-47 (D.C. Cir. 2012) (noting Congress' appropriations' power is "one of the most important authorities allocated to Congress in the Constitution's 'necessary partition of power among the'" three branches of government (quoting THE FEDERALIST No. 51 at 320)). Here, however, the CFPB is funded by the Federal Reserve, itself an independent agency. *See* 12 U.S.C. § 5497(a) (giving CFPB Director power to

[7] In 2014, the Central District of California found the Bureau to be constitutional and the decision was not appealed. *Consumer Fin. Prot. Bureau v. Morgan Drexen*, 60 F. Supp. 3d 1082 (C.D. Cal. 2014).

requisition funds from the Federal Reserve System); *id*. § 243 (funding the Federal Reserve through its assessment of fees on banks); *id*. § 244 (stating such fees are "not [to] be construed to be Government funds or appropriated moneys"); *id*. § 5497(c)(2) (same for funds requisitioned by CFPB from Federal Reserve). And the CFPA gives the Director free rein to set the agency's budget. *Id*. § 5497(a)(2)(C) (prohibiting Congress from reviewing the Director's budget for the CFPB). The CFPB is therefore unchecked by meaningful Congressional oversight.

*Insulation from the Executive.* The Constitution's "Take Care" clause entrusts the President with the power to "take Care that the Laws be faithfully executed." U.S. CONST. ART. II, § 3. Yet as the Supreme Court recognized in *Free Enterprise Fund*, the President cannot exercise this power without the ability to "oversee the faithfulness of the officers who execute" the laws. *Free Enter. Fund*, 561 U.S. at 484. The President lacks such oversight over the CFPB Director because the Director is only removable for cause. 12 U.S.C. § 5491(c)(3) ("The President may remove the Director for inefficiency, neglect of duty, or malfeasance in office."). The Director therefore enjoys independence from the Executive Branch as well.

*Unprecedented independence.* While the removal of officers only for cause and the funding of an independent agency outside the appropriations process may not be problematic on their own, the combination of these traits in one agency has a multiplying effect: it results in an entity with expansive authority that is answerable to neither Congress nor the Executive. *See* Brief of Amici Curiae Rep. Sean P. Duffy and Consumers' Research in Support of Plaintiffs at 19, *State Nat'l Bank of Big Spring v. Jacob Lew*, No. 12-cv-1032 (D.D.C. Dec. 1, 2015). Rather than viewing these traits on their own, this Court should consider how they interact together.

Upon a holistic view, the CFPB's independence is even more extreme than that of the PCAOB. In *Free Enterprise Fund*, the Supreme Court struck down the limitations on removal of

members of the PCAOB because the individuals who would determine their removal for cause were themselves removable only for cause. *Id*. at 498 (finding the restrictions "incompatible with the Constitution's separation of powers"). Yet *Free Enterprise Fund* only presented the issue of independence from the Executive. Here, the CFPB is insulated from *both* the Executive and Congress. Once the Director is appointed, he or she effectively enjoys a five-year reign whereby the CFPB's actions are entirely shielded from the processes by which the People elect their representatives.

Such independence is unprecedented and incompatible with our nation's Constitutional scheme. As an unconstitutional entity, the CFPB lacks authority to bring this suit. If the Court chooses to reach this issue, it must dismiss this action.

## CONCLUSION

Because the Amended Complaint fails to comply with 12(b)(2) and 12(b)(6), the NDG Defendants respectfully request that the Court dismiss this action with prejudice. Because none of the defendants is subject to personal jurisdiction in New York, any amendment would be futile. *See, e.g.*, *Steel Inst. of New York v. City of New York,* No. 09 CIV 6539 CM, 2010 WL 5060682, at *3 (S.D.N.Y. Dec. 2, 2010).

Dated: New York, New York
March 16, 2016

DECHERT LLP

By: */s/ Jeffrey Brown*
Jeffrey Brown
Steven A. Engel
jeff.brown@dechert.com

1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Attorneys for Defendants NDG Financial Corp., Northway Financial Corp., Northway Broker Ltd., E-Care Contact Centers Ltd., Blizzard Interactive Corp., New World Consolidated Lending Corp., New World Lenders Corp., Payroll Loans First Lenders Corp., New World RRSP Lenders Corp., Kimberly DeThomas, Jeremy Sabourin, William Wrixon, Emerald Willow Holdings Ltd., Red River Holdings Company Ltd.,* and *Twillingate Holdings Ltd.*