**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>NDG Financial Corp., Northway Financial Corp., Ltd., Northway Broker, Ltd., E-Care Contact Centers, Ltd., Blizzard Interactive Corp., New World Consolidated Lending Corp., New World Lenders Corp., Payroll Loans First Lenders Corp., New World RRSP Lenders Corp., Peter Ash, Sagewood Holdings, Ltd., Kimberly DeThomas, Jeremy Sabourin, William Wrixon,<br><br>Defendants,<br><br>Peter Ash, Sagewood Holdings, Ltd., Paul Ash, Knightsbridge Holdings Ltd., Paul Grehan, 0562752 B.C., Ltd., Kimberly DeThomas, Emerald Willow Holdings, Ltd., Jeremy Sabourin, Red River Holdings Company Ltd., William Wrixon, Twillingate Holdings Ltd.,<br><br>Relief Defendants. | : | 15-cv-5211 (CM) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS BY SAGEWOOD HOLDINGS, LTD., KNIGHTSBRIDGE HOLDINGS, LTD., PETER ASH AND PAUL ASH**

Benjamin S. Boyd
*admitted pro hac vice*
benjamin.boyd@dlapiper.com
DLA PIPER LLP (US)
500 8th Street, NW
Washington, DC 20004
Tel. (202) 799-4000
Fax (202) 799-5000

Richard F. Hans
richard.hans@dlapiper.com
Constance C. Tse
connie.tse@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel. (212) 335-4500
Fax (212) 335-4501

*Attorneys for Sagewood Holdings, Ltd., Knightsbridge Holdings Ltd., Peter Ash and Paul Ash*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1
ARGUMENT ..... 3
I. THE BUREAU'S ALLEGATIONS CONFIRM THAT THE SAGEWOOD/KNIGHTSBRIDGE DEFENDANTS DID NOT CONTROL OR PARTICIPATE IN THE ALLEGED COMMON ENTERPRISE SINCE 2009 ..... 3
II. THE BUREAU FAILS TO MAKE A *PRIMA FACIE* SHOWING OF PERSONAL JURISDICTION OVER THE SAGEWOOD/KNIGHTSBRIDGE DEFENDANTS ..... 5
A. The Bureau Is Precluded From Asserting Specific Jurisdiction On The Basis of Pre-July 21, 2011 Conduct ..... 5
B. The Bureau's Joint Enterprise Theory Fails to Confer Specific Jurisdiction ..... 5
C. The Bureau Fails To Assert Specific Jurisdiction Over Peter or Paul Ash ..... 7
D. The Bureau Has Not Established Personal Jurisdiction Under FRCP 4(K)(2) ..... 10
E. Jurisdictional Discovery Is Inappropriate ..... 11
III. THE UDAAP CLAIMS ARE CLEARLY BARRED BY THE STATUTE OF LIMITATIONS ..... 11
IV. THE FAC FAILS TO STATE A CLAIM FOR WHICH RELIEF COULD BE GRANTED ..... 12
A. The FAC Alleges No Plausible Basis on Which the Sagewood/Knightsbridge Defendants Are Covered Persons ..... 12
B. The Bureau's Reliance on Common Enterprise And Other Theories is Unavailing as a Matter of Law ..... 15
C. Counts I to V Fail to State a Claim for a Substantive UDAAP Violation ..... 17
V. THE BUREAU SHOULD NOT BE GIVEN A THIRD BITE AT THE APPLE ..... 20
CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*7 W. 57th St. Realty Co. v. CitiGroup, Inc.*,
No. 13 Civ. 981, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ....10

*Ace Arts, LLC v. Sony/ATV Music*,
56 F. Supp. 3d at 451 (S.D.N.Y. 2014)....20

*Arma v. Buyseasons, Inc.*,
591 F. Supp. 2d 637 (S.D.N.Y. 2008)....9

*Barron Partners v. Lab123, Inc.*,
No. 07 Civ. 11125, 2008 WL 2902187 (S.D.N.Y. July 25, 2008) ....9

*Basquiat v. Kemper Snowboards*,
No. 96 CIV. 0185 (LAP), 1997 WL 527891 (S.D.N.Y. Aug. 25, 1997)....8

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007)....18

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....5

*CFPB v. Accredit'g Council for Indep. Colls. and Schs.*,
No. 1:15-cv-01838-RJL, 2016 WL 1625084 (D.D.C. Apr. 21, 2016)....16

*Clark v. Capital Credit & Coll. Servs., Inc.*,
460 F.3d 1162 (9th Cir. 2006) ....16

*Commonwealth of Pa. v. Think Fin., Inc.*,
No. 14 Civ. 7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016) ....16

*City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.,*
637 F.3d 169 (2d Cir. 2011)....12

*Crown Cork & Seal Co., Inc. Master Ret. Trust v. Credit Suisse First Boston Corp.*,
2013 WL 978980 (S.D.N.Y. Mar. 12, 2013) ....13

*FTC v. Bronson Partners, LLC*,
674 F. Supp. 2d 373 (D. Conn. 2009)....17

*FTC v. Five-Star Auto Club*,
97 F. Supp. 2d 502 (S.D.N.Y. 2000)....12

*FTC v. Gem Merch. Corp.*,
87 F.3d 466 (11th Cir. 1996) ....17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*FTC v. Tax Club, Inc.*,
994 F. Supp. 2d 461 (S.D.N.Y. 2014)....................14, 17

*Gerstle v. Nat'l Credit Adjustors, LLC*,
76 F. Supp. 3d 503 (S.D.N.Y. 2015)....................7

*Gomez v. Resurgent Capital Servs., LP*,
129 F. Supp. 3d 147 (S.D.N.Y. 2015)....................16

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
915 F. Supp. 2d 450 (S.D.N.Y. 2013)....................6

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2001*,
230 F. Supp. 2d 403 (S.D.N.Y. 2002)....................6

*Jazini v. Nissan Motor Co., Ltd.*,
148 F.3d 181 (2d Cir. 1998)....................11

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Straordinaria*,
937 F.2d 44 (2d Cir. 1991)....................5

*Maersk v. Neewra,*
554 F. Supp. 2d 424 (S.D.N.Y. 2008)....................8

*Nat'l Union Fire Ins. Co. v. BP Amoco*,
319 F. Supp. 2d 352 (S.D.N.Y. 2004)....................9

*NovelAire Tech., LLC v. Munters AB*,
No. 13 Civ. 472, 2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013)....................5

*Packer v. TDI Sys., Inc.*,
959 F. Supp. 192 (S.D.N.Y. 1997)....................8

*Porina v. Marward Shipping Co., Ltd.*,
521 F.3d 122 (2d Cir. 2008)....................10

*Ross v. UKI Ltd.*,
No. 02 Civ. 9297 (WHP), 2004 WL 384885 (S.D.N.Y. Mar. 1, 2004)....................8

*Shaffer v. Heitmer*,
433 U.S. 186 (1977)....................7

*Skidmore v. Led Zeppelin*,
106 F. Supp. 3d 581 (E.D. Pa. 2015)....................5

*Troll Co. v. Uneeda Doll Co.*,
483 F.3d 150 (2d Cir. 2007)....................14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Turbana Corp. v. M/V "Summer Meadows*,
No. 03, Civ. 2099, 2003 WL 22852742 (S.D.N.Y. Dec. 2, 2003)........................................10

*Walden v. Fiore*,
134 S. Ct. 1115 (2014)........................................................................................6

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)...................................................................................20

**FEDERAL STATUTES**

12 U.S.C. § 5481(6) ..........................................................................................12

12 U.S.C. § 5481(25) ........................................................................................14

12 U.S.C. § 5481(25)(C)(i) ..................................................................................14

12 U.S.C. § 5481(25)(C)(ii)..................................................................................16

12 U.S.C. § 5481(25)(C)(iii)..................................................................................16

12 U.S.C § 5531(a) ..........................................................................................14

12 U.S.C. § 5536(a)(3).......................................................................................16

15 U.S.C. § 45(a)(2)..........................................................................................16

**STATE STATUTES**

Colo. Rev. Stat. § 5-2-301(1)(a) ..........................................................................19

Ind. Code § 24-4.5-3-502(3) ................................................................................19

Ind. Code § 24-4.5-3-502(5) ................................................................................19

Ky. Rev. Stat. § 286.9-035...................................................................................19

Minn. Stat. § 47.60, subd. 1(a)..............................................................................19

Mont. Code Ann. § 31-1-703(5)(c)..........................................................................19

N.Y. Banking Law § 340 .....................................................................................19

N.Y. Banking Law § 355 .....................................................................................19

N.Y. Banking Law § 355(2) ...............................................................................19, 20

Utah Code Ann. § 7-23 .......................................................................................19

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**RULES**

Fed R. Civ. P. 4(K)(2) .......... 10

Fed. R. Civ. P. 12 (b)(2) .......... 20

Fed. R. Civ. P. 12 (b)(6) .......... 20

N.Y. CPLR § 302 .......... 5

## PRELIMINARY STATEMENT

The Bureau's Opposition does not rescue its First Amended Complaint ("FAC") from dismissal. Its arguments are inconsistent with, and unsupported by, the FAC, exaggerating what was actually pled and offering its own dubious legal conclusions as facts. The Bureau has now expressly limited its claims to activity by the alleged common enterprise after July 2011. But the Bureau has pled facts making clear that the Sagewood/Knightsbridge Defendants have not controlled or participated in the alleged enterprise since 2009, when these Defendants are alleged to have transferred control to the current owners and co-defendants. The factual allegations which pre-date the Bureau's express time limitation cannot form the basis of personal jurisdiction under New York's long-arm statute. And there are no allegations during the now relevant period—after July 21, 2011—that tie the Sagewood/Knightsbridge Defendants to any conduct directed to New York. As a result, this much is now crystal clear—that personal jurisdiction does not exist over the Sagewood/Knightsbridge Defendants and the Bureau has no viable claims against them.[1]

The claims as pled fail against the Sagewood/Knightsbridge Defendants as a matter of law. Factual allegations which could support a finding of participation/control by these Defendants post–July 2011 are non-existent. The Bureau offers little more than an allegation that Sagewood and Knightsbridge received dividends from the alleged enterprise into bank accounts located in Canada. New York law does not provide that the passive receipt of dividends by a foreign investor allows the Courts of New York to exercise personal jurisdiction over that person or entity. Equally weak, the Bureau points to an allegation that a bank

[1] Unless otherwise defined, all capitalized terms herein have the same meaning ascribed to them in the Sagewood/Knightsbridge Defendants' Memorandum of Law in Support of Its Motion to Dismiss ("Mem."), and the well-pleaded allegations of the FAC are assumed to be true solely for purposes of this motion.

manager's notes taken sometime in 2011 as a result of a meeting with Paul Grehan and William Wrixon that at some point between 2009 and 2011, the "Original Owners" provided "strategic direction at the board level," without specifying the time frame, subject matter or even the specific entity to which such "direction" was provided. There is nothing to suggest that such activity occurred after July 2011 and such a conclusion is inconsistent with the allegations that the Original Owners, i.e., the Sagewood/Knightsbridge Defendants, had long before ceded all board positions and management roles. Finally, the alleged "direction" provided by these Defendants when they had no official role with any entity is not alleged to have any connection with New York and therefore cannot establish the necessary minimum contacts with New York. Because the Bureau's FAC fails to allege any actionable conduct during the relevant time period, its overreach in attempting to hail these foreign Defendants into this New York Court should be dismissed.

The Bureau's Opposition is notable for its blatant attempts to backfill the FAC, proffering entirely new and conclusory allegations and recasting and mis-citing that which it actually pled. It is impossible to reconcile the Bureau's Opposition with the actual allegations found in its FAC. The Bureau may not use its opposition brief to rescue the fundamental pleading deficiencies of the FAC.

The lack of any allegations in the FAC which would support a finding of managerial control or responsibility with respect to the Sagewood/Knightsbridge Defendants after July 2011 dooms the Bureau's claims as a matter of law. The Bureau has expressly pled that these Defendants have not been officers or directors of any of the entities since 2009 and there are no facts pled which suggest these Defendants as shareholders materially participated in any activities of the purported enterprise after July 2011. Every substantive, factual allegation in the

FAC relating to alleged actionable conduct after July 2011 arose under the alleged management and control of the current owners and co-defendants. As such, the Sagewood/Knightsbridge Defendants are not themselves "related persons," and if not "related persons," then they cannot then be deemed "covered persons," and if not "covered persons," then they are not and cannot be liable under the CFPA.

## ARGUMENT

### I. THE BUREAU'S ALLEGATIONS CONFIRM THAT THE SAGEWOOD/KNIGHTSBRIDGE DEFENDANTS DID NOT CONTROL OR PARTICIPATE IN THE ALLEGED COMMON ENTERPRISE SINCE 2009

The Bureau concedes that it "has brought no claims under the CFPA for conduct prior to July 21, 2011—the counts in question are limited to conduct after that date, and the Bureau has not suggested that its CFPA claims are intended to extend to earlier conduct." Opp. at 44. The Bureau then drops a footnote in which it explains that its extensive recitation of events prior to July 21, 2011 "is relevant to questions of jurisdiction." *Id.* While that legal conclusion is contrary to the law,[2] the Bureau's pre-2011 factual allegations do provide a solid foundation to conclude that the Sagewood/Knightsbridge Defendants did not have control of the alleged common enterprise, or participate in any payday lending activities, after 2009.

While the FAC alleges that Peter and Paul Ash and Paul Grehan created the alleged common enterprise in 2005, FAC ¶ 210, the Bureau states that their management and control of that alleged enterprise ended in 2009. *Id.,* ¶ 230. Indeed, the FAC provides that the three no longer signed offering memoranda after 2009. *See id.*, ¶ 189 ("From 2005 to June 2009, the

[2] If the allegations do not provide the basis for liability, they cannot provide the basis for jurisdiction under New York's long-arm statute, *see* Section II.A, *infra*. In addition, the Bureau asserts, without citation to any authority, that because it raises two claims under the Credit Practices Rule, all of the conduct alleged in the FAC is encompassed under that authority. Opp. at 44, n.3. Not only is the CFPB's argument unsupported, but neither of the claims to which it refers are alleged as to the Sagewood/Knightsbridge Defendants, *see* Mem. at 23, and are therefore not relevant to the inquiry of jurisdiction over those defendants.

NWL Offering Memoranda were signed by Peter Ash, Paul Ash and Paul Grehan, in their capacities as officers and directors"); ¶ 231. The Bureau plainly states that the three transferred management of the alleged enterprise in 2009. *See id.*, Heading Before ¶ 230 ("2009: The Original Owners Transfer Day-To-Day Management to the Current Owners, While Continuing to Collect Dividends") & ¶ 230 ("Beginning in 2009, the Original Owners began transferring day-to-day management of NDG Enterprise operations to DeThomas, Sabourin, and Wrixon, while maintaining control over the NDG Enterprise as shareholders"); *see also id.* ¶ 233 ("In August 2009, Peter Ash resigned his position as director in Northway and Northway Broker.").

After the 2009 transition of ownership, control and management, the FAC never again alleges that the Sagewood/Knightsbridge Defendants controlled, managed or materially participated in the alleged enterprise. The Bureau's allegations are limited to claiming that these defendants received dividends. The lone allegation on which the Bureau rests its Opposition is the claim that "notes from a bank relationship manager" based on "interviews with Grehan and Wrixon in 2011," set forth that sometime after 2009—but prior to the date of the interview in 2011—the "Original Owners" may have provided unspecified "strategic direction at the Board level" and continued to have influence over NDG. FAC ¶¶ 239, 240. Yet, paragraph 239 confirms (for the third time in the FAC) that this was "*after* transferring operational control." *Id.* (emphasis added). And the FAC is devoid of any allegation that such activity occurred after July 2011. In sum, the FAC, taken at face value, alleges no actual activity or participation by these Defendants connected to the alleged common enterprise after 2009, much less after July 21, 2011. This Court may not, as the Bureau suggests, ignore what it actually pled and reach a result contrary to those facts.

## II. THE BUREAU FAILS TO MAKE A *PRIMA FACIE* SHOWING OF PERSONAL JURISDICTION OVER THE SAGEWOOD/KNIGHTSBRIDGE DEFENDANTS

### A. The Bureau Is Precluded From Asserting Specific Jurisdiction on The Basis of Pre-July 21, 2011 Conduct.

The Bureau purports to assert specific jurisdiction under N.Y. CPLR § 302; that section requires that "the claims must arise out of the acts that form the basis for personal jurisdiction." *NovelAire Tech., LLC v. Munters AB*, No. 13 Civ. 472, 2013 WL 6182938, at *3 (S.D.N.Y. Nov. 21, 2013) (citation omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (for the proper exercise of specific jurisdiction, the defendant must have "purposefully directed" his activities at the forum and the litigation must "arise out of or relate to" those activities). Because the Bureau concedes it has brought no claims under the CFPA for conduct prior to July 21, 2011, it is explicitly precluded from asserting specific jurisdiction over the Defendants on the basis of pre-July 21, 2011 conduct. *See NovelAire*, 2013 WL 6182938, at *3; *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 587-88 (E.D. Pa. 2015) (declining to consider alleged contacts outside the statute of limitations period of personal jurisdictional "minimum contacts" analysis) (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)). As set forth in detail above, there is not a single factual allegation that ties the Sagewood/Knightsbridge Defendants to any of the alleged conduct or the provision of loans occurring after July 2011 and the Bureau has, through its failure to allege such facts, conceded that there is no basis to assert specific jurisdiction over these Defendants.

### B. The Bureau's Joint Enterprise Theory Fails to Confer Specific Jurisdiction.

The Bureau also attempts to establish long-arm jurisdiction over the Sagewood/Knightsbridge Defendants in New York by arguing that Northway, Northway Broker and/or E-Care's New York conduct can be imputed to each of the defendants under a "joint enterprise" theory. Opp. at 12-14. The Bureau's joint enterprise jurisdiction argument fails

because it (1) does not satisfy due process and (2) does not (and cannot) identify any factual, non-conclusory allegations of the FAC demonstrating that the Sagewood/Knightsbridge Defendants participated in the alleged enterprise during the relevant time period.

Following *Walden v. Fiore*, the widely criticized theory of personal jurisdiction based upon a common enterprise no longer passes due process scrutiny. 134 S. Ct. 1115, 1122 (2014) (personal jurisdiction must be based upon "contacts that the 'defendant *himself*' creates with the forum State'") (citation omitted); *see also* Mem. at 5, 12. Thus, the Bureau's reliance on this theory as a basis to exercise specific jurisdiction over the Sagewood/Knightsbridge Defendants is misplaced and fails as a matter of law. The Bureau's Opposition notably fails to address this argument (*see* Opp. at 14) and instead merely assumes that common enterprise allegations are sufficient to satisfy due process post-*Walden*.

While the Bureau asserts that the Sagewood/Knightsbridge Defendants were "joint participants" in the NDG Enterprise (Opp. at 14), the FAC is notably silent on their participation in the alleged enterprise during the relevant time period.[3] Aside from general conclusory and time-barred arguments and misstatements of factual allegations found in its brief (*see* Opp. at 7), the Bureau does not directly or indirectly connect the Sagewood/Knightsbridge Defendants with the alleged transactions or conduct in New York after July 2011. Absent that fundamental connection, there is no basis for jurisdiction. *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 485 (S.D.N.Y. 2013) (no personal jurisdiction where plaintiffs did not allege facts "which connect [the foreign defendants] with transactions occurring in the United States").

[3] References to the "NDG Group" in corporate fact sheets, external audits and MSFA licensing announcement—all predating 2011—merely describe the companies and do not support an allegation that the NDG Defendants operated as a "single unit" for jurisdictional or liability purposes. *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2001*, 230 F. Supp. 2d 403, 410-11 (S.D.N.Y. 2002) (group activity reflected in a public document "cannot create a single entity structure") (citations omitted).

**C. The Bureau Fails to Assert Specific Jurisdiction Over Peter or Paul Ash.**

The Bureau's efforts to assert jurisdiction over Peter and Paul Ash individually have even less merit. Even if the Court assumed jurisdiction over any of the entity defendants,[4] it is well settled that personal jurisdiction over a company does not extend to its officers, directors or shareholders if those individuals personally lack the requisite basic minimum contacts with the forum, as here. *Shaffer v. Heitmer*, 433 U.S. 186, 213-16 (1977).

The Bureau has not alleged that either of the Ashes was a "primary participant" in any alleged conduct after July 21, 2011, nor does it cite any facts in the FAC supporting the claim that either Peter or Paul Ash "knew about, benefitted from, and exercised more than some control" over the alleged New York loan transactions during the relevant time period. *See* Opp. at 14. The Bureau nevertheless asserts that "[Peter] Ash's liability for CFPA violations arises entirely from his actions after July 21, 2011, including . . . his services as a director, officer, and 100% owner of Sagewood and ultimately the Enterprise as a whole." Opp. at 44. One cannot find allegations in the FAC to support that broad and exaggerated statement. To the contrary, the FAC concedes that Peter Ash relinquished whatever operational control and director positions in 2009. FAC ¶¶ 230, 233. The Bureau offers only that Sagewood passively received dividends during the relevant time period and that Peter Ash owned Sagewood. As with the Ashes, there are no allegations that Sagewood actively participated in the alleged common enterprise at any point in time. Peter Ash's connection to Sagewood, as actually alleged therefore, is a woefully insufficient basis for the individual forum-related contacts required for personal jurisdiction. *See* Mem. at 8 (citing, *inter alia*, *Gerstle v. Nat'l Credit Adjustors, LLC*, 76 F. Supp. 3d 503, 510

[4] The Sagewood/Knightsbridge Defendants do not concede that this Court has personal jurisdiction over any of the entity defendants. The Bureau's Opposition further fails to address the point that none of the corporate entities among the NDG Defendants is an agent or mere department of Sagewood or Knightsbridge. *See* Mem. at 9-11.

(S.D.N.Y. 2015) (rejecting specific jurisdiction in lending dispute where, as here, defendants are not alleged to have been involved in the subject loans' collection or have any other forum-based activities related to the claims)); *see also Ross v. UKI Ltd.*, No. 02 Civ. 9297 (WHP), 2004 WL 384885, at *6 (S.D.N.Y. Mar. 1, 2004) (allegations that defendant is the "patriarch" and "de facto head of the . . . entire . . . real estate empire" insufficient to establish personal jurisdiction).

A review of the cases to which the Bureau cites paints a very different picture of direct and timely involvement of defendant individuals in the underlying conduct supporting jurisdiction and so renders such cases inapposite. *See, e.g., Maersk v. Neewra,* 554 F. Supp. 2d 424, 447 (S.D.N.Y. 2008) (principal "took numerous steps to obtain and doctor the fraudulent bill of lading . . . including an attempt to bribe one Elvis Pinto"); *Basquiat v. Kemper Snowboards*, No. 96 CIV. 0185 (LAP), 1997 WL 527891, at *3 (S.D.N.Y. Aug. 25, 1997) (officer was a "primary actor" in the transaction and allegedly "caused the distribution of infringing snowboards"); *Ross*, 2004 WL 384885, at *7 (officer "played an active role" and was "intimately involved" in negotiating the transactions at issue). By contrast, the Bureau's allegations here "amount to nothing more than "bland assertion[s] of conspiracy or agency" and are "just the kind of conclusory allegations . . . that cannot sustain even a prima facie case of jurisdiction over a foreign defendant." *Maersk*, 554 F. Supp.2d at 447, 451; *accord Packer v. TDI Sys., Inc.*, 959 F. Supp. 192, 201 (S.D.N.Y. 1997) (declining to impute jurisdiction to corporate officer under agency theory).

Second, the allegations that the Ashes used their positions as shareholders in Sagewood and Knightsbridge to make unspecified suggestions for "strategic direction" to an unspecified entity or entities up to some unspecified point in time in 2011, are patently insufficient to establish the necessary contacts with New York under the New York long-arm statute. *See*

Mem. at 8 (citing, *inter alia*, *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 646 (S.D.N.Y. 2008) ("courts in this district have . . . routinely granted 12(b)(2) motions for lack of personal jurisdiction where the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand") (citation omitted)); *see also Barron Partners v. Lab123, Inc.*, No. 07 Civ. 11125, 2008 WL 2902187, at *10 (S.D.N.Y. July 25, 2008) (prima facie showing of control requires detailed allegations of conduct in the "*specific matter in question*") (emphasis added). The Bureau cites the factually inapposite case of *Nat'l Union Fire Ins. Co. v. BP Amoco*, 319 F.Supp.2d 352 (S.D.N.Y. 2004), for the proposition that informal relationships between defendants and their agents may satisfy the "some control" test for long-arm jurisdiction. Opp. at 17-18. That case involved a principal's ratification of a New York contract entered into by its agent and as to which the principal had knowledge of all material facts and accepted the contractual benefits. There are no similar principal/agent allegations here.

Third, the Bureau baldly contends that the Sagewood/Knightsbridge Defendants profited from the collection of loans made to U.S. consumers through receipt of dividends and "benefitted by virtue of their positions as shareholders and high-level executives alone." Opp. at 16. But there are no allegations in the FAC that the Sagewood/Knightsbridge Defendants directly received proceeds from any allegedly improper consumer loan repayments traceable to New York post-July 2011[5] and the Bureau admits that the Ashes were not high-level executives after 2009. Indeed, the FAC makes clear that during the relevant time frame, they were, at best,

[5] For the same reason, the Bureau fails to assert personal jurisdiction or state a claim against the Relief Defendants. *See* Mem. at 23-24. Nor are its deficient pleadings cured by the wholly conclusory allegations in the Opposition. *See* Opp. at 40-41 ("Peter and Paul Ash were unjustly enriched as the alter-egos of Sagewood and Knightsbridge respectively"). All claims against the Relief Defendants must therefore be dismissed.

shareholders in a company that held shares in NDG, which in turn owned the other Defendants alleged to have conducted lending activities in New York.

**D. The Bureau Has Not Established Personal Jurisdiction Under FRCP 4(K)(2).**

The Bureau also cannot establish that Fed. R. Civ. P. 4(k)(2), the federal long-arm statute, confers personal jurisdiction over the Sagewood/Knightsbridge Defendants. Rule 4(k)(2) provides that for a claim that arises under federal law, serving a summons establishes personal jurisdiction over a defendant if: (a) the defendant is not "subject to jurisdiction in any state's courts of general jurisdiction"; and (b) exercising jurisdiction is "consistent with the United States Constitution and laws." *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008).

While it pleads Rule 4(k)(2) jurisdiction in the alternative, the Bureau has not certified that the Defendants are not subject to jurisdiction "in any other state." *7 W. 57th St. Realty Co. v. CitiGroup, Inc.*, No. 13 Civ. 981, 2015 WL 1514539, at *13 (S.D.N.Y. Mar. 31, 2015). Absent such certification, the Bureau will not have established a *prima facie* case for the exercise of jurisdiction under Rule 4(k)(2), and the petition must be dismissed. *See id.* (dismissing plaintiff's claims against foreign banks for failing to "certi[fy] that Defendants are not subject to jurisdiction in any other state").

Even were the Bureau to present the required certification, the exercise of jurisdiction over the Sagewood/Knightsbridge Defendants would still violate due process. The Bureau must still demonstrate that each of the Sagewood/Knightsbridge Defendants has sufficient aggregate ties to the United States as a whole, to render jurisdiction constitutional. *Turbana Corp. v. M/V "Summer Meadows"*, No. 03, Civ. 2099, 2003 WL 22852742 (S.D.N.Y. Dec. 2, 2003). They have not done so. But as already demonstrated, the Sagewood/Knightsbridge Defendants' contacts with the United States are jurisdictionally insufficient for the same reasons as they are

insufficient under New York law. *See* Section II.B, *supra*. Because there is insufficient connection between the claims at issue and the Sagewood/Knightsbridge Defendants' American affiliations, the action must be dismissed.

### E. Jurisdictional Discovery Is Inappropriate.

The Bureau has not made a threshold showing of jurisdiction as against the Sagewood/Knighsbridge Defendants and so is not entitled to jurisdictional discovery, as the Bureau itself concedes. Opp. at 48; *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998) (holding district court did not err in denying jurisdictional discovery where plaintiff had not established a *prima facie* case). The Bureau concedes that general jurisdiction does not exist and, as demonstrated already, *supra* at Section II.A, specific jurisdiction is foreclosed based on the lack of relevant forum-connected conduct occurring post-July 2011. Asking for discovery "to confirm the accuracy and extent" of its allegations and vaguely citing the "wide range of direct contact . . . by various members of the Enterprise" (Opp. at 48)—especially now, after two bites at the pleading apple—is simply insufficient. Jurisdictional discovery should be denied.

## III. THE UDAAP CLAIMS ARE CLEARLY BARRED BY THE STATUTE OF LIMITATIONS

The Bureau misapprehends the nature of Sagewood/Knightsbridge Defendants' argument with respect to the Statute of Limitations. *See* Opp. at 43-44. To the extent the Bureau's claims arise from conduct that occurred more than three years ago, such claims are outside the Statute of Limitations and thus must be dismissed. Mem. at 12-13. Accepting the Bureau's argument that it could not have discovered the conduct at issue until it finally got around to investigating or issuing a Civil Investigative Demand would effectively eviscerate the Statute of Limitations. Instead, the clock starts to run when a reasonably diligent plaintiff would have discovered the facts constituting the violation. The Second Circuit has held with respect to similar Statutes of

Limitations that "the limitations period commences not when a reasonable investor would have begun investigating, but when a reasonable investor conducting a timely investigation would have uncovered the facts constituting a violation." *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.,* 637 F.3d 169, 174 (2d Cir. 2011). The Bureau has cited publicly available State Cease and Desist Orders—each revealing the facts forming the basis of the Bureau's UDAAP claims—some of which not only pre-date 2012 but also July 2011. FAC ¶¶ 172, 180; Opp. at 11. The Bureau can hardly claim it did not know or could not have known of the conduct of which they complain. Here, a reasonable government agency, conducting a timely investigation, would have uncovered sufficient facts—including those already publicly available—to bring a claim.

## IV. THE FAC FAILS TO STATE A CLAIM FOR WHICH RELIEF COULD BE GRANTED

### A. The FAC Alleges No Plausible Basis on Which The Sagewood/Knightsbridge Defendants Are Covered Persons.

The FAC still clearly fails to state a claim against the Sagewood/Knightsbridge Defendants. Try as it might to now assert that the Sagewood/Knightsbridge Defendants are covered persons under 12 U.S.C. § 5481(6) (Opp. at 28-29), the facts actually alleged in the FAC do not support this conclusion. There is not one allegation in the FAC that these Defendants engaged in offering or providing a consumer financial product or service after July 2011.

The Bureau points to the Federal Trade Commission and argues that the liability standard under the CFPA is the same as that found under the Federal Trade Commission Act. Even were that true, and it is not, to hold an individual liable for corporate misconduct, it is still incumbent on a plaintiff to allege "(1) that the individuals participated directly in the wrongful acts or practices or that the individual defendants had the authority to control the defendants; and (2) that the individuals had some knowledge of the acts or practices." *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 535 (S.D.N.Y. 2000). The FAC does not plead facts that would demonstrate

that Peter and Paul Ash or Sagewood and Knightsbridge had knowledge of the acts or practices occurring vis-à-vis any consumer post-July 2011, nor does it allege that they participated directly post-July 2011 in the lending or lead-generation activities of Northway or Northway Broker (respectively), or the loan servicing activities of E-Care.[6]

In much the same way, the FAC fails to establish that the Sagewood/Knightsbridge Defendants are "related persons." It is not enough to simply contend, as the Bureau does, that a shareholder of a covered person is to be deemed a related person and thus a covered person. Opp. at 28-29. To be clear, the Bureau only alleges that Peter and Paul Ash were shareholders of Sagewood and Knightsbridge, respectively, not that they were shareholders of covered persons such as Northway or any of the other entities post-July 2011. In addition, the applicable law requires that any non-controlling shareholder must have "materially participated" in the conduct of the affairs of the covered person. Thus, to sustain its claim, the Bureau must do more than simply claim material participation as that is simply a legal conclusion. It must allege facts to support that conclusion, but once again, it does not. *Cf. Crown Cork & Seal Co., Inc. Master Ret. Trust v. Credit Suisse First Boston Corp.*, 2013 WL 978980, at *8 (S.D.N.Y. Mar. 12, 2013) (use of the term "material" amounts to an "inadmissible legal conclusion[]"). There is no factual allegation in the FAC—none—that supports the legal conclusion that any of the Sagewood/Knightsbridge Defendants materially participated in any activities after July 2011 and the Bureau concedes that anything before then is not relevant to the claims being made.[7]

---

[6] Although the Opposition states "Both groups were under the ultimate control of the Original Owners until 2013," the FAC offers no such allegation. The Bureau's citation to ¶ 111 of the FAC is misleading at best inasmuch as it is inconsistent with other allegations within the FAC. *Compare* Opp. at 15 *with* FAC ¶ 239. It is implausible that one could simultaneously transfer control and possess ultimate control.

[7] The Bureau contends that it may bring an action against an entity that is not covered, as long as the entity is a "link in a chain of 'related persons' deemed to be 'covered persons' based on

The Bureau's contentions as to Knightsbridge ignore the wording of the CFPA and the facts it has alleged in the FAC. Knightsbridge was never alleged to be a "controlling shareholder" of any entity, as required by the "related person" language, having only held 39%. 12 U.S.C. § 5481(25)(C)(i); FAC ¶¶ 9, 12, 92.

Nor may the Bureau claim that Peter and Paul Ash are related persons by virtue of having once served as directors or officers of any of the NDG entities. Opp. at 28-29. The FAC provides that the Ashes were only officers or directors from 2005 through 2009—again, well before July 2011—and, after that, those positions were taken by the "Current Owners." FAC ¶¶ 231-233. Conceding that the events alleged prior to 2011 have no bearing on liability, the Bureau may not now bootstrap those earlier events into liability for separate and distinct activity after July 2011. *Cf. FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 471-72 (S.D.N.Y. 2014) (the fact that defendant "has not owned or served as an officer of any the Corporate Defendants since 2011" was immaterial because, unlike here, the complaint "alleges illegal conduct since 2008, and [defendant] has not argued that any of Plaintiffs' claims are time-barred.")

Likewise, the Bureau fails to plead how Sagewood and Knightsbridge—which are not alleged to have had involvement in the consumer finance activities targeted by the FAC—might be liable for the UDAAP misconduct alleged.[8] The FAC merely asserts that Sagewood and Knightsbridge had bank accounts in Canada that may have received money transfers from Northway, where such moneys constituted US consumer loan repayments. FAC ¶ 225. Even if

---

controlling interests in subsidiary companies." Opp. at 36. This concept has no support in the CFPA and would gut the CFPA's "related person" language. If it were correct, there would be no purpose to the actual statutory limitations found in the definition of "related person," specifying the form, level of knowledge, and categories of culpable persons. *See* 12 U.S.C. § 5481(25); *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 160 (2d Cir. 2007) (rejecting interpretation of statute that would lead to an "absurd result[]").

[8] Under the CFPA, one cannot be liable unless one has "engaged in" or "committed" the act. *See* Mem. at 20; 12 U.S.C § 5531(a); 5536(a)(1).

that were true, the standalone fact that an entity received funds *in its own* bank account does not constitute a consumer financial protection law violation. Sagewood and Knightsbridge are not alleged to have engaged in or committed any illegal act, and the claims against them should also be dismissed.

**B. The Bureau's Reliance on Common Enterprise And Other Theories is Unavailing as a Matter of Law.**

The Bureau clings weakly to its allegation of "common enterprise" in its attempt to keep the Sagewood/Knightsbridge Defendants in the case and hold them liable. As set forth previously, this attempt must fail. Allegations of these Defendants' participation in the purported enterprise long pre-date the passage of the CFPA and the existence of the Bureau itself. The dearth of factual allegations tying the Sagewood/Knightsbridge Defendants to any purported enterprise during the relevant time period (not to be confused with the plethora of legal conclusions in the Opposition and the FAC itself) has been well documented here and in Defendants' Opening Brief.

This is how the Bureau seeks to stretch the facts alleged to create some theory of common enterprise. Citing to paragraphs 112 and 115 of the FAC, the Bureau argues that a 2010 audit "describes the common control of Sagewood, Knightsbridge and 0562752." Opp. at 24. But these paragraphs in the FAC do *not* discuss or even mention those three entities. The audit to which the Bureau cites, in any event, pre-dates July 2011 and thus carries no weight as to anything which may have occurred after that and, by the Bureau's own admission, is not and cannot be offered for purposes of establishing liability.

The Bureau also takes liberties to argue—for the first time—that the corporate defendants were "wholly-owned alter-egos" of the Ashes, and defendants are liable on a theory of "alter-

ego." Opp. at 23, 35.[9] Nowhere in the FAC does the Bureau mention the word "alter-ego" and nowhere can one find the sort of factual allegations that normally accompany such an assertion. To be sure, theories of liability arising out of "common enterprise" or "alter-egos" do not exist under the CFPA.[10] There is no statutory provision to which it may or does cite, and the Bureau's treatment of the recent court order in *Commonwealth of Pa. v. Think Fin., Inc.*, misstates the Court's holding. *Compare* Opp. at 34, n. 2 (suggesting that the *Think Finance* court did not speak to the question whether the CFPA contemplates a common enterprise theory) *with Think Fin.*, No. 14 Civ. 7139, 2016 WL 183289, at *26 (E.D. Pa. Jan. 14, 2016) ("We agree with the Defendants that the common enterprise theory should not be superimposed on a claim under the Dodd-Frank Act.").[11]

The Bureau fails to allege a single factual allegation that after July 2011 the Current

[9] The paragraphs cited in the Opposition do not stand for the proposition for which they are cited. Nowhere in the FAC does the Bureau mention the word "alter-ego."

[10] The CFPA contemplates different paths to derivative liability, each dependent on the nature of the indirect actor's relationship to the primary violator and associated levels of "materiality" of service as well as culpability based on varied levels of *mens rea*. *See, e.g.*, 12 U.S.C. § 5481(25)(C)(ii) and (iii) (independent contractors, shareholders and others' ability to deemed "covered" dependent on material, knowing or reckless participation); 12 U.S.C. § 5536(a)(3) (liability arises as a facilitator for "any person" who "knowingly or recklessly provide[d] substantial assistance" to primary violator). The FTC Act, by contrast, contains no such provisions necessitating the development of common law to enable the government to reach indirect actors. *See generally* 15 U.S.C. § 45(a)(2).

[11] As a new agency, the Bureau should not stray outside the remit found in its authorizing statute. *See, e.g.*, *CFPB v. Accredit'g Council for Indep. Colls. and Schs.*, No. 1:15-cv-01838-RJL, 2016 WL 1625084, at 8 (D.D.C. Apr. 21, 2016) ("Although it is understandable that new agencies like the CFPB will struggle to establish the exact parameters of their authority, they must be especially prudent before they plow head long into fields not clearly ceded to them by Congress.") (citation omitted). The Bureau's citation to authority under the Fair Debt Collection Practices Act allowing agency theory of liability is inapposite. Opp. at 37. These cases merely hold that misconduct is imputed to the principal when the actor performs within the "scope of [his] apparent authority"—none of which is alleged to be relevant here. *See Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 157 (S.D.N.Y. 2015) (debt collector vicariously liable for actions of attorney); *Clark v. Capital Credit & Coll. Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (attorney not vicariously liable for debt collector's alleged FDCPA violation).

Owners and the Sagewood/Knightsbridge Defendants had overlapping officers, operated under common control, shared offices, commingled funds, or shared advertising and marketing to support such a theory.[12] *See Tax Club, Inc.*, 994 F. Supp.2d at 469 (listing factors for finding common enterprise liability under the FTC). The FAC is clear that Peter and Paul Ash were only directors and officers until 2009, and that their purported control over the other entities is alleged to have been transferred by 2009. FAC ¶¶ 230-33. Although the Bureau alleges that an unspecified 2010 audit states that the Canadian and European Groups were "all under common control," that audit (which is irrelevant to post-2011 conduct) excludes Sagewood and Knightsbridge from the common enterprise, by its own terms. *Id.* ¶¶ 114-15. Moreover, while the Bureau asserts that all the defendants "held themselves out" as the NDG Group (Opp. at 6), the NDG Group, as defined, excludes Sagewood, Knightsbridge, and Peter and Paul Ash (*see* FAC ¶¶ 112, 115).[13]

**C. Counts I to V Fail to State a Claim for a Substantive UDAAP Violation.**

The Bureau concedes that to sustain a UDAAP claim, a defendant must be *both* a covered person *and* one who "engages in or commits" a violative act; the former requirement serves to identify the types of entities the Bureau may sue and the latter links the person to the commission of a substantive, unlawful act. Opp. at 26. But it still has not alleged sufficient facts to

---

[12] The Bureau's Opposition offers that defendants "shared office space and commingled money," but the FAC paragraphs to which it cites do not support either of those supposed facts. Paragraphs 147-48 merely allege that money was sent to Sagewood/Knightsbridge accounts in Canada. The passive receipt of funds in one's own, separate bank account does not constitute "commingling of funds." And Paragraph 229 speaks to a third party's unsupported suspicions prior to July 2011, none of which is at issue in the FAC.

[13] The FTC cases cited by the Bureau do not support the application of an alter-ego theory here, as the Bureau contends. Opp. at 35. *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996) merely confirmed that individuals are liable for corporate misconduct if they knew and participated in it, and had the ability to control it. *FTC v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 390-91 (D. Conn. 2009) reflect application of an alter ego analysis in a post-trial motion seeking to add a corporate defendant in light of evidence produced at trial.

demonstrate a plausible violation of any particular state's lending laws to state a UDAAP claim against Sagewood or Peter Ash. Because the Bureau asserts that the Defendants "originated, serviced, and collected" loans that were subject to a particular state's law and that conduct occurred in violation of that law, under *Twombly*, it must allege the existence of such a loan and factual content to plausibly demonstrate how its terms violated the state laws alleged. *See* Mem. at 21. It has not. Asserting in its brief that the Defendants "collected repayment for loans . . . are void or otherwise uncollectible under state law" is itself a legal conclusion, not a factual allegation supported by the paragraphs in the FAC to which it cites. *See* Opp. at 31.[14] Not one paragraph in the FAC offers a specific instance where any of the Defendants, much less the Sagewood/Knightsbridge Defendants, did just this.

The Opposition contends that the Sagewood/Knightsbridge Defendants "knew that Northway's loans were directed towards consumers throughout the United States, including New York" (Opp. at 16), but neither paragraph in the FAC to which it cites (FAC ¶¶ 131, 166) even mentions Sagewood or Knightsbridge or either of the Ashes, much less speaks to their knowledge that loans were directed at New York consumers. Similarly, citing to ¶ 188 of the FAC, the Bureau states the Original Owners "knew or should have known that [Northway's] loans were void or unenforceable under state law" on the basis of certain warnings made to investors in a 2009 NWL offering memoranda. Opp. at 5. But Paragraph 188 never even mentions the Original Owners and merely summarizes a discussion of potential risks – not facts – that may be of interest to an investor. FAC ¶ 188. One may not infer from that that the

[14] Paragraph 152 of the FAC alleges "[t]he NDG Enterprise originates, services, and collects payday loans in all fifty states, including states such as New York, in which those loans have no legal effect because they violate state usury caps and licensing requirements." Paragraph 253 offers the legal conclusion that "state licensing regulations or usury caps . . . render non-compliant loans, such as those offered by Defendants, void."

Sagewood/Knightsbridge Defendants knew or should have known that loans made were void or enforceable in any period after 2009.

The Opposition and the FAC also gloss over the distinct requirements of the several state laws on which the Bureau relies. For example, the FAC cites Colo. Rev. Stat. § 5-2-301(1)(a) for the proposition that "Colorado relieves the consumer's obligation to pay finance charges to the lender or assignee where the lender or assignee has failed to obtain the requisite license." FAC ¶ 264. But that provision only applies to "Supervised Loans and Supervised Lenders," and the FAC does not allege that any Defendant is a maker of "supervised loans" or had any connection to a "supervised loan" in the state of Colorado. Colo. Rev. Stat. § 5-2-301(1)(a).[15]

Several of the state laws cited in the FAC apply only to those who "regularly" engage in business within the state, and the Bureau makes no allegation that any Defendant "regularly engage[s]" in business within any state, let alone these states. *See* FAC ¶ 263.c (citing Ind. Code §§ 24-4.5-3-502(3), (5), which set forth licensure requirements for only those who "regularly engage" in business in Indiana). New York's law likewise does not apply to "isolated, incidental or occasional transactions" within the state, and, further, only applies to instances where "solicitation of the loan" occurred in New York as defined by N.Y. Banking Law § 355. *See* FAC ¶ 263.k (citing N.Y. Banking Law §§ 340, 355). The Bureau never alleges that any Defendant engaged in "solicitation of a loan" in New York, and N.Y. Banking Law § 355(2)

[15] Other state laws cited by the Bureau apply only to "deferred deposit loans," and yet the Bureau makes no allegation that any loan is a "deferred deposit loan," let alone that any Defendant offered a "deferred deposit loan" within these states. *See, e.g.*, FAC ¶ 263.g (failing to allege that Defendants issued "deferred deposit loans" and yet relying on Mont. Code Ann. § 31-1-703(5)(c)); *accord* FAC ¶¶ 263.d (citing Ky. Rev. Stat. § 286.9-035 ("Deferred deposit transaction agreement[s]")), 263.n (citing Utah Code Ann. § 7-23-102(7) ("Deferred deposit loan")). Minnesota's statute only applies to a short-term, unsecured loan "to be repaid in a single installment" in an amount "equal or less than $350," and the Bureau fails to identify a single loan bearing such terms sold to a Minnesota consumer. *See* FAC ¶ 263.f (relying on Minn. Stat. § 47.60, subd. 1(a)).

does not include Internet solicitation in the requisite definition. *Id.*

## V. THE BUREAU SHOULD NOT BE GIVEN A THIRD BITE AT THE APPLE

As demonstrated, the Bureau's Opposition is replete with newfound contentions, exaggerations, embellishments and legal conclusions that find no home in the FAC, and therefore must be disregarded for purposes of the Court's analysis on a motion to dismiss. *See Ace Arts, LLC v. Sony/ATV Music*, 56 F. Supp. 3d 436, 451 ("[I]t is axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss") (S.D.N.Y. 2014); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (a party may not cure pleading defects by advancing new allegations in opposition to a motion to dismiss). More than anything, the liberties which the Bureau has taken in its Opposition when describing and here supplementing the allegations contained in the FAC only highlight the insufficiency of the allegations contained therein. Having already had two opportunities to get it right in its pleadings, the FAC should be dismissed, and the Bureau should not be provided with yet another bite of the apple.

## CONCLUSION

Because the FAC fails to comply with Fed R. Civ. P. 12(b)(2) and 12(b)(6), the Sagewood/Knightsbridge Defendants respectfully request that the Court dismiss the FAC with prejudice and deny the Bureau's requests for jurisdictional discovery and leave to amend.

Dated: New York, New York
May 25, 2016

DLA PIPER LLP (US)

By: /s/ Richard F. Hans
Richard F. Hans
richard.hans@dlapiper.com
Constance C. Tse
connie.tse@dlapiper.com

DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel. (212) 335-4500
Fax (212) 335-4501

Benjamin S. Boyd, *admitted pro hac vice*
benjamin.boyd@dlapiper.com
DLA PIPER LLP (US)
500 8th Street, NW
Washington, DC 20004
Tel. (202) 799-4000
Fax (202) 799-5000

*Attorneys for Sagewood Holdings, Ltd., Knightsbridge Holdings, Ltd., Peter Ash and Paul Ash*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 25th day of May 2016, a copy of the foregoing memorandum of law was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Richard F. Hans
Richard F. Hans