**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CONSUMER FINANCIAL PROTECTION BUREAU,

*Plaintiff,*

v.

NDG FINANCIAL CORP., NORTHWAY FINANCIAL CORP., LTD., NORTHWAY BROKER, LTD., E-CARE CONTACT CENTERS, LTD., BLIZZARD INTERACTIVE CORP., NEW WORLD CONSOLIDATED LENDING CORP., NEW WORLD LENDERS CORP., PAYROLL LOANS FIRST LENDERS CORP., NEW WORLD RRSP LENDERS CORP., PETER ASH, SAGEWOOD HOLDINGS, LTD., KIMBERLY DETHOMAS, JEREMY SABOURIN, WILLIAM WRIXON,

*Defendants*,

PETER ASH, SAGEWOOD HOLDINGS, LTD., PAUL ASH, KNIGHTSBRIDGE HOLDINGS LTD., PAUL GREHAN, 0562752 B.C. LTD., KIMBERLY DETHOMAS, EMERALD WILLOW HOLDINGS, LTD., JEREMY SABOURIN, RED RIVER HOLDINGS COMPANY LTD., WILLIAM WRIXON, TWILLINGATE HOLDINGS LTD.,

*Relief Defendants*.

Civ. No. 1:15-cv-5211 (CM)

ECF Case

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF RELIEF DEFENDANTS PAUL GREHAN'S AND 0562752 B.C. LTD.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(6)**

LEVINE LEE LLP

Kenneth E. Lee
Katie G. Crane
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 223-4400
Facsimile: (212) 223-4425
klee@levinelee.com
kcrane@levinelee.com
*Attorneys for Relief Defendants Paul Grehan and 0562752 B.C. Ltd*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. THE CFPB'S ASSERTED TIME FRAME OF ACTIONABLE "CONDUCT" PRECLUDES JURISDICTION OVER, OR DISGORGEMENT FROM, THE GREHAN RELIEF DEFENDANTS ........ 2

A. This Court Lacks Personal Jurisdiction Over the Grehan Relief Defendants ........ 3

(1) The Grehan Relief Defendants Did Not Transact Business in New York ........ 4

(2) The Claim for Disgorgement Cannot "Arise From" the Conduct Alleged ........ 8

(a) The Amended Complaint Does Not Allege a "Substantial Relationship" Between the post-July 21, 2011 Activities of the Grehan Relief Defendants and the Claim for Disgorgement ........ 8

(b) The Amended Complaint Does Not Allege a "Substantial Relationship" Between the Activities of the Grehan Relief Defendants and the Claim for Disgorgement Within the CFPA's Statutory Timeframe ........ 10

B. The Court Cannot Exercise Personal Jurisdiction Over the Grehan Relief Defendants Pursuant to an Agency Theory or Rule 4(k)(2) ........ 12

(1) The CFPB Has Not Alleged an Agency Relationship Between the Grehan Relief Defendants and the Foreign Subsidiaries ........ 12

(2) The CFPB Has Not Alleged Jurisdiction is Appropriate Under Rule 4(k)(2) ........ 16

II. THE COURT SHOULD NOT ALLOW JURISDICTIONAL DISCOVERY OR PERMIT THE CFPB TO AMEND ITS COMPLAINT AGAIN ........ 18

CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Cases**

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
782 F. Supp. 215 (S.D.N.Y. 1992) ........ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 11

*Barron Partners, LP v. Lab123, Inc.*,
No. 07 CIV. 11135 JSR, 2008 WL 2902187 (S.D.N.Y. July 25, 2008) ........ 13, 15

*Beacon Enterprises, Inc. v. Menzies*,
715 F.2d 757 (2d Cir. 1983) ........ 12

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) ........ 4, 12

*Chang Young Bak v. Metro-N. R. Co.*,
No. 12 CIV. 3220, 2013 WL 1248581 (S.D.N.Y. Mar. 26, 2013) ........ 10

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F. 3d 158 (2d Cir. 2010) ........ 5, 16

*Citigroup Inc. v. City Holding Co.*,
97 F. Supp. 2d 549 (S.D.N.Y. 2000) ........ 5, 6, 7

*Doe v. Delaware State Police,*
939 F. Supp. 2d 313 (S.D.N.Y. Apr. 4, 2013) ........ 18

*Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*,
No. 12 CIV. 6390 JPO, 2013 WL 1775440 (S.D.N.Y. Apr. 25, 2013) ........ 4, 5

*Fallman v. Hotel Insider Ltd,*
No. 14 CIV. 10140 SAS, 2016 WL 316378 (S.D.N.Y. Jan. 15, 2016) ........ 19

*Gerstle v. Nat'l Credit Adjusters, LLC,*
76 F. Supp. 3d 503 (S.D.N.Y. 2015) ........ 15

*Glens Falls Cement Co. v. Severn Coal Co.*,
No. 89 CIV. 1092, 1990 WL 15604 (N.D.N.Y. Feb. 14, 1990) ........ 13

*Grove Press, Inc. v. Angleton*,
649 F.2d 121 (2d Cir. 1981) ........ 15

*In re Aluminum Warehousing Antitrust Litig.*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015) ........ 17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
No. 11 MDL 2262 NRB, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ........ 13

*In re Terrorist Attacks on Sept. 11*,
349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........ 13

*JGB Enterprises, Inc. v. Beta Fluid Sys., Inc.*,
135 F. Supp. 3d 18 (N.D.N.Y. 2015) ........ 6

*Karabu Corp. v. Gitner*,
16 F. Supp. 2d 319 (S.D.N.Y. 1998) ........ 14, 15

*Lawson v. Full Tilt Poker Ltd.*,
930 F. Supp. 2d 476 (S.D.N.Y. 2013) ........ 6, 7, 10

*Mao v. Sands Bethworks Gaming LLC*,
No. 15 CIV. 6252 JMF, 2016 WL 1717220 (S.D.N.Y. Apr. 28, 2016) ........ 8

*Skidmore v. Led Zepplin*,
106 F. Supp. 3d 581 (E.D. Pa. 2015) ........ 4, 11

*Stair v. Calhoun*,
No. 07 CIV. 03906 JFB, 2009 WL 792189 (E.D.N.Y. Mar. 23, 2009) ........ 18

*Tamam v. Fransabank SAL*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010) ........ 8

*Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*,
No. 14 CIV. 804 RWS, 2014 WL 3857053 (S.D.N.Y. Aug. 5, 2014) ........ 7

*Voiceone Commc'ns, LLC v. Google Inc.*,
No. 12 CIV. 9433 PGG, 2014 WL 10936546 (S.D.N.Y. Mar. 31, 2014) ........ 11

*Walden v. Fiorre*,
134 S. Ct. 1115 (2014) ........ 17

*Whitaker v. Am. Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001) ........ 18

**Statutes**

12 U.S.C.A. § 5564(g)(1) ........ 8, 10

NY CPLR § 302(a)(1) ........ passim

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ........ 1

Federal Rule of Civil Procedure 12(b)(6) ........ 1

Federal Rule of Civil Procedure 4(k)(2) ........ passim

Relief Defendants Paul Grehan and 0562752 B.C. Ltd. ("0562752," collectively, the "Grehan Relief Defendants") respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss Plaintiff Consumer Financial Protection Bureau's (the "CFPB" or "Bureau") First Amended Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(2) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

In opposing the motion to dismiss for lack of personal jurisdiction, the CFPB fails to identify sufficient allegations of specific conduct directly attributable to the Grehan Relief Defendants. Rather, the CFPB rests its jurisdictional theory on the alleged conduct of the various other defendants—imputing it to the Grehan Relief Defendants by mere extension. A close reading of the CFPB's Opposition and Amended Complaint demonstrates that the CFPB has not made even a *prima facie* case of general or specific jurisdiction over the Grehan Relief Defendants—requiring their dismissal from this action.

While purporting to assert jurisdiction over the Grehan Relief Defendants based on their alleged participation in a "complex web of foreign corporations," the CFPB concedes that its claims, including for disgorgement against the Grehan Relief Defendants, are limited to "conduct that occurred on or after July 21, 2011." (CFPB's Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Opp.") at 3, 44.) The Amended Complaint contains but two sparse allegations concerning the Grehan Relief Defendants that ***arguably*** cover the period after July 21, 2011: (i) that "[f]rom approximately 2006 until 2013. . . 0562752 owned 10.1%" of NDG Financial and New Northway shares (Am. Compl. ¶¶ 9, 12); and (ii) "[a]ccording to the

---

1 Unless otherwise defined, all capitalized terms herein have the same meaning ascribed to them in the Grehan Relief Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Mem."), and all allegations in the Amended Complaint are assumed to be true for the purposes of this motion.

notes from a bank relationship manager. . . in 2011," Grehan and 0562752 "continued to collect dividends from loans targeted to US consumers" after they had transferred "day-to-day operational control" of the NDG Enterprise in 2009 (*id.* ¶¶ 230, 239).

Those allegations fall far short of establishing specific jurisdiction under New York's Long Arm Statute because they fail to establish that the Grehan Relief Defendants transacted business in New York or that the claim for disgorgement against them arises directly from the transaction of any business within the jurisdiction. Moreover, the CFPB alleges absolutely no conduct of any kind by the Grehan Relief Defendants, or the receipt of any proceeds that have any connection to the jurisdiction, within the three-year statute of limitations period under the CFPA (*i.e.,* between December 11, 2012 and December 11, 2015). For the same reasons, the CFPB's arguments under the doctrine of agency and pursuant to Rule 4(k)(2) are no more effective in establishing jurisdiction over the Grehan Relief Defendants.

Because the Amended Complaint fails to proffer any allegations that would support the Court's exercise of jurisdiction over the Grehan Relief Defendants, it is respectfully submitted that they should be dismissed from this action with prejudice, and without the need for jurisdictional discovery.

## ARGUMENT

### I. THE CFPB'S ASSERTED TIME FRAME OF ACTIONABLE "CONDUCT" PRECLUDES JURISDICTION OVER, OR DISGORGEMENT FROM, THE GREHAN RELIEF DEFENDANTS

The CFPB concedes that it is not bringing any claims "for ***conduct*** prior to July 21, 2011." (Opp. at 44 (emphasis added).) Insofar as the Grehan Relief Defendants are concerned, the CFPB has brought a single claim for disgorgement (Count IX), alleging that such defendants "have received, directly or indirectly, funds or other assets. . . that are traceable to funds obtained from [ ] consumers through the unfair, deceptive, abusive, and unlawful acts or practices"

described in the Amended Complaint. (Am. Compl. ¶ 333.) Accordingly, because the only relevant conduct at issue in this case occurred "on or after July 21, 2011," and because the Amended Complaint does not allege any post-July 21, 2011 conduct to establish (i) that the Grehan Relief Defendants transacted business in New York, or (ii) that the claim for disgorgement is substantially related to the transaction of such business in New York, the exercise of specific jurisdiction over the Grehan Relief Defendants is improper. Moreover, the claim for disgorgement should be dismissed because the Amended Complaint does not allege a substantial relationship between the activities giving rise to the claim and the Grehan Relief Defendants within the three-year statute of limitations imposed by the CFPA. Finally, the CFPB's jurisdictional theories under agency and Rule 4(k)(2) fail for the same reasons.

**A. This Court Lacks Personal Jurisdiction Over the Grehan Relief Defendants**

The CFPB concedes that general jurisdiction over the Grehan Relief Defendants is lacking. (Opp. at 10-11.) Instead, the CFPB argues that the Court's exercise of specific jurisdiction over the Grehan Relief Defendants is appropriate under New York's Long Arm Statute where such defendants have transacted business in New York by virtue of the "highly interactive websites" of Northway, Northway Brokers and E-Care. (*Id.* at 12-14.) Contrary to the CFPB's contention, the Amended Complaint does not allege any conduct between July 21, 2011 and the filing of the Amended Complaint on December 11, 2015—*i.e.*, the time period in which the CFPB alleges the claims at issue arose—that would give rise to jurisdiction under New York's Long Arm Statute as to the Grehan Relief Defendants.[2] Rather, the Amended Complaint

---

[2] As discussed *infra* at Section I(A)(2), to the extent the CFPB seeks to rely on conduct outside the time period in which it alleges the conduct giving rise to its claims occurred—*i.e.* "conduct prior to July 21, 2011" (Opp. at 44, n.3)—such reliance is misplaced because it is neither substantially related to the conduct that the CFPB alleges gives rise to its claim for disgorgement, nor is such conduct within the statute of limitations period relating to its claim

contains but two allegations of conduct on the part of the Grehan Relief Defendants in that time frame: (i) until 2013, 0562752 maintained a 10.1% interest in NDG Financial and New Northway (collectively, the "Foreign Parent Corporations")[3] (Am. Compl. ¶¶ 9, 12); and (ii) "[a]ccording to notes of a bank relationship manager based on [an] interview with Grehan . . . in 2011," after transferring day-to-day operational control of the NDG Enterprise in 2009, the Grehan Relief Defendants "continued to collect dividends from loans targeted at US consumers" and provide "'strategic direction at the board level.'" (*Id.* ¶¶ 230, 239).

Such allegations are insufficient to establish (i) that the Grehan Relief Defendants transacted business in New York, and (ii) that the cause of action for disgorgement arises from such transaction of business. *Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*, No. 12 CIV. 6390 JPO, 2013 WL 1775440, at *4 (S.D.N.Y. Apr. 25, 2013).

**(1) *The Grehan Relief Defendants Did Not Transact Business in New York***

The Amended Complaint fails to allege any conduct that could establish the type of "purposeful activity" required for application of New York's Long Arm Statute, let alone any such conduct within the timeframe alleged by the CFPB. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *see also Eternal Asia*, 2013 WL 1775440, at *4. ("[T]he

---

for disgorgement against the Grehan Relief Defendants. *See, e.g., Skidmore v. Led Zepplin*, 106 F. Supp. 3d 581, 588 (E.D. Pa. 2015) (limiting contacts for the purpose of specific jurisdiction inquiry to those within the statutory period of the claim). Moreover, the CFPB asserts, without citation to any authority, that because it raises two claims under the Credit Practices Rule, all of the conduct alleged in the Amended Complaint is encompassed under that authority. (Opp. at 44, n.3.) Not only is the CFPB's argument unsupported, but neither of the claims to which it refers is alleged as to the Grehan Relief Defendants and are therefore not relevant to the inquiry of jurisdiction over those defendants.

[3] As further discussed *infra* at Section I(B), the Amended Complaint only alleges ownership interests by the Grehan Relief Defendants in the Foreign Parent Corporations. That is, it does not allege any direct ownership interest by the Grehan Relief Defendants in the relevant foreign subsidiaries of the Foreign Parent Corporations—*i.e.*, Northway, Northway Broker and E-Care. (*E.g.*, Am. Compl. ¶¶ 9, 11, 12.)

overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York.") The CFPB does not even attempt to argue that the Grehan Relief Defendants ***themselves*** transacted business in New York, relying instead on the interactivity of the websites of Northway, Northway Brokers and E-Care. (Opp. at 14-15.)

Consequently, the CFPB relies on cases applying long-arm jurisdiction over companies operating websites that interacted with New York consumers, and contends such cases favor jurisdiction over the Grehan Relief Defendants. (Opp. at 12-14.) Not only are such cases inapplicable here, where the CFPB has not alleged any such interaction over the internet on the part of the Grehan Relief Defendants, but such cases establish that the level of contacts required for the exercise of long-arm jurisdiction is substantially more extensive than what has been alleged. For example, in *Chloe v. Queen Bee of Beverly Hills, LLC,* the court found that the defendants, a company operating a website out of Alabama and a principal thereof that resided in California, were subject to jurisdiction under CPLR § 302(a)(1) based on a combination of factors, including, *inter alia*, that: the principal shared in the profits of the merchandise sold by the website; the principal had joint access to the website's bank account; the principal used the website's revenue to pay for his office space in California; and the principal "shared in the decision-making and execution of the purchase and sale of handbags." 616 F. 3d 158, 166-69 (2d Cir. 2010). No such claims are made here about the Grehan Relief Defendants. Similarly, in *Citigroup Inc. v. City Holding Co.*, the court applied long-arm jurisdiction over defendant lender domiciled in West Virginia based on lender's purposeful activity in New York through its interactive website. 97 F. Supp. 2d 549 (S.D.N.Y. 2000). That website allowed customers in New York to, *inter alia*: "apply for loans on-line as well as print out an application for

submission by facsimile"; "click on a 'hyper link' to 'chat' on-line with a [defendant] representative"; and "e-mail [defendant] with home loan questions and receive a response from an 'online representative.'" *Id*. at 565.

In contrast, the CFPB has, at most, alleged that (i) in 2011, a bank relationship manager indicated that, after the Grehan Relief Defendant transferred day-to-day operations of the NDG Enterprise in 2009, they "continued to collect dividends from loans targeted to US consumers" (Am. Compl. ¶¶ 230, 239), and (ii) that 0562752 maintained a 10.1% interest in the Foreign Parent Corporations until 2013 (*id*. ¶¶ 9, 12). These allegations of minority ownership status and the purported receipt of certain dividends from an unspecified source fall far short of what is necessary to satisfy the transacting business element of CPLR § 302(a)(1), let alone for conducting such activity over the internet. *See e.g.*, *JGB Enterprises, Inc. v. Beta Fluid Sys., Inc.*, 135 F. Supp. 3d 18, 25 (N.D.N.Y. 2015) (finding complaint's allegations of, *inter alia*, foreign corporate parent's activities in New York and relationship with subsidiaries insufficient to satisfy the transacting business element of CPLR § 302(a)(1) with respect to foreign parent corporation); *see also Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 484 (S.D.N.Y. 2013) (defendants' limited interactions with the employees who operated and maintained defendants' employer's website does not constitute the level of "consistent interactions" required to meet the transacting business standard).

Significantly, the allegations fail to allege any conduct relating to or targeted at New York. Moreover, with respect to the collection of dividends, the transacting business prong is not satisfied by the 2011 report of a bank relationship manager that the Grehan Relief Defendants had continued to collect dividends from loans targeted to US consumers after

transferring day-to-day control of the NDG Enterprise in 2009. (Am. Compl. ¶ 230, 239.)[4] Not only is such an allegation outside the CFPB's time frame, but it does not even allege that such collection ***continued*** after 2009. Similarly, the CFPB's allegation that 0562752 owned a 10.1% interest in the Foreign Parent Corporations until 2013 fails to articulate how such minority ownership rises to the level of conducting commercial activity in New York. Therefore, to the extent the CFPB seeks to rely on commercial activity conducted over the internet as the basis for jurisdiction, such reliance is inapplicable as to the Grehan Relief Defendants because the CFPB does not allege that such defendants purposefully availed themselves of the privilege of doing business in New York or that they directed their activities at New York. *See, e.g.*, *Lawson*, 930 F. Supp. 2d at 484; *see also Citigroup*, 97 F. Supp. 2d at 565 ("whether the exercise of personal jurisdiction is permissible is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet" (internal quotation marks omitted)).[5] Accordingly, the CFPB has not plausibly alleged that the Grehan Relief Defendants transacted business in New York, and the exercise of long-arm jurisdiction over them is unwarranted.

---

4 Not only does the allegation at Paragraph 239 of the Amended Complaint fail to specify precisely when such dividends were received, but it also fails to clarify whether the "notes" upon which the CFPB seeks to rely were taken in 2011, or merely reflect an interview of Grehan that occurred in 2011.

5 To the extent the CFPB purports to contend that there exists a contractual basis to support an application of CPLR § 302(a)(1), it fails to plead that the "totality" of the Grehan Relief Defendants' conduct establishes that they were "doing business" on the basis of any ongoing contractual relationships. *See Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*, No. 14 CIV. 804 RWS, 2014 WL 3857053, at *5 (S.D.N.Y. Aug. 5, 2014) (finding that in addition to allegations of a contractual relationship, a court should consider, *inter alia*, "whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant . . . visited New York for the purpose of meeting with parties to the contract regarding the relationship." (alternation in original)).

**(2) *The Claim for Disgorgement Cannot "Arise From" the Conduct Alleged***

Not only has the CFPB failed to allege that the Grehan Relief Defendants "transacted business" within meaning of CPLR § 302(a)(1), but the Amended Complaint also fails to plausibly allege that the conduct of such defendants is "substantially related" to the claim of disgorgement. Absent such a nexus, long-arm jurisdiction over the Grehan Relief Defendants cannot attach. First, the CFPB does not articulate a substantial relationship between any post-July 21, 2011 conduct of the Grehan Relief Defendants in New York and the claim for disgorgement. Second, the CFPB's claim for disgorgement is further restricted by the three-year statute of limitations in its enacting statute—pursuant to which the CFPB may not pursue disgorged funds from the Grehan Relief Defendants unless they were received ***after*** December 11, 2012. 12 U.S.C.A. § 5564(g)(1).

**(a) The Amended Complaint Does Not Allege a "Substantial Relationship" Between the post-July 21, 2011 Activities of the Grehan Relief Defendants and the Claim for Disgorgement**

The CFPB alleges that (i) at ***sometime*** in 2011, a bank relationship manager came to understand that, after transferring day-to-day operational control in 2009, the Grehan Relief Defendants continued to collect dividends from loans targeted to US consumers, (Am. Compl. ¶¶ 230, 239), and (ii) that 0562752 maintained a 10.1% interest in the Foreign Parent Corporations until 2013 (*id.* ¶¶ 9, 12). These allegations do not articulate a "substantial relationship" between the claim for disgorgement and any actions occurring in New York giving rise to the claim. *See e.g.*, *Tamam v. Fransabank SAL*, 677 F.Supp.2d 720, 727 (S.D.N.Y. 2010) (dismissal for lack of personal jurisdiction based upon the plaintiffs' failure to allege "the missing link" between the claim alleged and specific transfers through New York accounts); *see also Mao v. Sands Bethworks Gaming LLC*, No. 15 CIV. 6252 JMF, 2016 WL 1717220, at *2 (S.D.N.Y. Apr. 28, 2016). First, it is not clear from the Amended Complaint that the Grehan

Relief Defendants actually received any dividends from US loans at any time after 2009. (Am. Compl. ¶ 230, 239.) Second, with respect to 0562752, the CFPB's allegation that it maintained a 10.1% interest in the Foreign Parent Corporations until 2013 (*id.* ¶¶ 9, 12), does not articulate a "substantial relationship" between such interest and the claim for disgorgement.

In fact, the only allegations in the Amended Complaint relevant to the Grehan Relief Defendants concern activities well before July 21, 2011, and are nonetheless too vague to establish the requisite nexus between the Grehan Relief Defendants' activities in New York and the claim for disgorgement: (i) "In 2005, Peter Ash, Paul Ash, and Grehan (the Original Owners) built the NDG Enterprise and devised its strategy and practice of extending unlicensed, triple digit interest rate loans to consumers residing in New York and throughout the United States" (*id.* ¶ 210); (ii) "In 2005, E-Care, with Peter Ash as President and CEO, Paul Ash as Vice President and Chief Information Officer, and Paul Grehan as Chief Financial Officer, established a relationship with a money transmitter service for the purpose of collecting loans the NDG Enterprise extended to US consumers using the internet" (*id.* ¶ 210); (iii) "An August 2010 account review . . . revealed that money originating from Northway's deposit account for US consumer loan repayments was funneled to accounts belonging to Knightsbridge, 0562752 as well as to individuals with 'signing authority:' DeThomas, Sabourin, and Wrixon" (*id.* ¶ 227); (iv) "In August 2009, an account review at a Canadian financial institution indicated that Northway transferred money from an account in which it deposited US consumer loan repayments, accounts belonging to Sagewood, Knightsbridge and 0562752" (*id.* ¶ 239).[6] Attenuating Grehan's and 0562752's contacts with New York even more is the CFPB's

6 The Grehan Relief Defendants maintain that, even absent the CFPB's assertion that the conduct giving rise to its claims occurred only after July 12, 2011, the Amended Complaint's allegations of their contacts with New York are insufficient as a matter of law to establish jurisdiction, no matter when those alleged contacts occurred. (*See* Mem. at 7-8.)

admission that 33% of the NDG Enterprise's business was conducted with European and Australian consumers—not US consumers. (*Id.* ¶ 116.)

The CFPB has, therefore failed to allege that its claim for disgorgement arises out of the Grehan Relief Defendants' alleged connections with New York. *See Lawson*, 930 F. Supp. 2d at 484 (finding defendants did not transact business within the meaning of CPLR 302(a)(1) where allegation that defendant encouraged consumers to use its website had no "direct relation" to the freezing of consumer accounts which served as basis for the conversion claim"); *see also Chang Young Bak v. Metro-N. R. Co.*, No. 12 CIV. 3220, 2013 WL 1248581, at *3 (S.D.N.Y. Mar. 26, 2013) (specific jurisdiction lacking where plaintiff failed to allege a connection between defendant's ownership of property in Connecticut at which alleged negligence occurred and any business activities in New York).

**(b) The Amended Complaint Does Not Allege a "Substantial Relationship" Between the Activities of the Grehan Relief Defendants and the Claim for Disgorgement Within the CFPA's Statutory Timeframe**

The CFPB's claim for disgorgement is further restricted by the limitation in its enacting statute. Pursuant to the CFPA, the CFPB may not bring an action "more than 3 years after the date of discovery of the violation to which an action relates." 12 U.S.C.A. § 5564(g)(1). Here the Amended Complaint (which named the Grehan Relief Defendants) was filed on December 11, 2015. Accordingly, the CFPB cannot disgorge funds from the Grehan Relief Defendants unless they were received on or after December 11, 2012. The Amended Complaint contains no allegations that would support jurisdiction within this time limitation and therefore must be dismissed.

In opposing the Grehan Relief Defendants' motion to dismiss, the CFPB does not dispute that Section 5564(g)(1) precludes any recovery of illicit funds allegedly received by the Grehan

Relief Defendants prior to December 11, 2012. Instead, the CFPB argues a statute of limitations defense is inappropriate for a motion to dismiss because Grehan "presumably continued to receive [] dividends" until transferring his ownership interests in 2013." (Opp. at 41.) Contrary to the CFPB's "presumption," the allegation in the Amended Complaint as to the Grehan Relief Defendants states only that according to notes of an interview conducted in 2011, "after transferring day-to-day operational control" in 2009, they "continued to collect dividends from loans targeted to US consumers, while providing 'strategic direction at the board level.'" (Am. Compl. ¶¶ 230, 239.) Thus, the Amended Complaint does not actually allege that the Grehan Relief Defendants received any dividends traceable to loans targeted to US consumers within the statute of limitations period—*i.e.*, between December 11, 2012 and the filing of the Amended Complaint on December 11, 2015. *See e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); (*see* also Mem. at 10). Moreover, to the extent the CFPB seeks to rely on conduct outside the statutory period to establish specific jurisdiction, such reliance is precluded. *See Skidmore*, 106 F. Supp. 3d at 588 (limiting contacts for the purposes of specific jurisdiction inquiry to those within the statutory period of the claim). Thus, the Amended Complaint's recital of events prior to December 11, 2012 is irrelevant to the instant motion.

Consequently, because the CFPB alleges no "conduct" by, or distributions to, the Grehan Relief Defendants within the statutory time frame for disgorgement, it is clear from the face of the Amended Complaint that the claim fails as a matter of law. *Voiceone Commc'ns, LLC v. Google Inc.*, No. 12 CIV. 9433 PGG, 2014 WL 10936546, at *7 (S.D.N.Y. Mar. 31, 2014) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a

defendant may raise the affirmative defense in a pre-answer motion to dismiss" pursuant to Rule 12(b)(6)" (internal citations omitted)).[7]

### B. The Court Cannot Exercise Personal Jurisdiction Over the Grehan Relief Defendants Pursuant to an Agency Theory or Rule 4(k)(2)

The CFPB's alternative theories of jurisdiction over the Grehan Relief Defendants—agency and Rule 4(k)(2)—similarly fail because it has not alleged any "conduct" establishing either control or US contacts by the Grehan Relief Defendants, let alone any such conduct within the relevant time frame. Therefore, and in accordance with its own limitations, the CFPB cannot impute jurisdiction to Grehan and 0562752 based upon the contacts of foreign subsidiaries of the Foreign Parent Corporations—namely, Northway, Northway Broker and E-Care (collectively the "Foreign Subsidiaries").

#### (1) *The CFPB Has Not Alleged an Agency Relationship Between the Grehan Relief Defendants and the Foreign Subsidiaries*

The Amended Complaint cannot establish an agency relationship between the Grehan Relief Defendants and the Foreign Subsidiaries because the only allegations of "control" by the Grehan Relief Defendants relate to their minority ownership interest in the Foreign Parent Corporations—not the Foreign Subsidiaries. Moreover, with respect to their interest in the Foreign Parent Corporations, the CFPB relies exclusively on the combined ownership interests of the Ash Defendants with the Grehan Relief Defendants to allege the Grehan Relief Defendants had the requisite level of control. Accordingly, the Amended Complaint is devoid of any

---

[7] Because specific jurisdiction under New York's Long Arm Statute is lacking, the Court need not proceed with a due process analysis of the Grehan Relief Defendants contacts with New York State. *See e.g., Best Van Lines,* 490 F.3d at 242 (finding that courts need to undergo a Fourteenth Amendment due process investigation "[i]f, but only if" personal jurisdiction is statutorily permissible); *see also Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 764, n.6 (2d Cir. 1983). Nonetheless, the exercise of personal jurisdiction over the Grehan Relief Defendants would offend Due Process for the reasons set forth in their moving brief. (*See* Mem. at 8-9.)

allegations, timely or not, that Grehan or 0562752 specifically consented to, knew of or exercised control over the Foreign Subsidiaries' alleged conduct in New York.

In order to plead the existence of an agency relationship between the Grehan Relief Defendants and the Foreign Subsidiaries for the purpose of imputing jurisdiction over the Grehan Relief Defendants,[8] the CFPB must show that: (i) the agent acted in New York for the benefit of the nondomicilliary; (ii) the nondomicilliary consented to the agent's conduct; (iii) the agent acted with the knowledge of the nondomicilliary; and (iv) the nondomicilliary exercised some control over the agent. *See Barron Partners, LP v. Lab123, Inc.,* No. 07 CIV. 11135 JSR, 2008 WL 2902187, at *10 (S.D.N.Y. July 25, 2008).[9] In other words, the CFPB "must demonstrate that the relationship" between the Grehan Relief Defendants and the Foreign Subsidiaries "was ***at least*** sufficiently analogous to a joint venture or partnership to show joint control of a common enterprise." *Glens Falls Cement Co. v. Severn Coal Co.*, No. 89 CIV. 1092, 1990 WL 15604, at *6 (N.D.N.Y. Feb. 14, 1990) (emphasis in original) (internal quotation marks omitted). "At the heart of [the agency jurisdiction] inquiry is whether the out-of-state corporate officers were

---

[8] The Grehan Relief Defendants do not concede that any defendant or relief defendant is subject to the personal jurisdiction of this Court.

[9] The requirements for agency jurisdiction and co-conspirator jurisdiction are very similar. *See In re Terrorist Attacks on Sept. 11,* 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005) ("To warrant the inference that a defendant was a member of the conspiracy [for jurisdictional purposes], Plaintiffs must show that (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control or at the request of or on behalf of the out-of-state defendant."(internal quotation marks omitted)); *but see Allstate Life Ins. Co. v. Linter Grp. Ltd.,* 782 F. Supp. 215, 221 (S.D.N.Y. 1992) (Courts have recognized personal jurisdiction on the basis of conspiracy have required plaintiffs to "(1) make a *prima facie* factual showing of a conspiracy; (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in [the forum]."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.,* No. 11 MDL 2262 NRB, 2015 WL 6243526, at *29 (S.D.N.Y. Oct. 20, 2015) (same).

primary actor[s] in the transaction in New York that gave rise to the litigation, and not merely some corporate employee[s] . . . who played no part in it." *Karabu Corp. v. Gitner,* 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (alteration in original) (internal quotation marks omitted). "To make a prima facie showing of control, a plaintiff's allegations must sufficiently detail the defendant's conduct" so as to show "the defendant was a primary actor in the specific matter in question; control cannot be shown based merely upon a defendant's title or position . . . or upon conclusory allegations that the defendant controls the corporation." *Id.* at 324 (internal quotation marks omitted).

Insofar as the CFPB alleges that, following transfer of the day-to-day management of the NDG Enterprise in 2009, the "Original Owners . . . maintain[ed] control" over the NDG Enterprise and provided "strategic direction" at the board level (Am. Compl. ¶¶ 230, 239), the Amended Complaint's allegations make clear that no such "control" existed as to the Grehan Relief Defendants individually. Rather, the CFPB purposefully conflates the activities of the Grehan Relief Defendants with those of the Ash Defendants to draw attention away from Grehan's and 0562752's distinct position. Specifically, by alleging that the "Original Owners. . . maintain[ed] control over the NDG Enterprise as shareholders" following the 2009 transfer (*id.* ¶ 230), the CFPB glosses over its contradictory allegations that, unlike the Ash Defendants' 89.9% combined ownership of the Foreign Parent Corporations (*id.* ¶¶ 14, 15), the Grehan Relief Defendants only allegedly ever owned 10.1% of said companies (*see id.* ¶¶ 9, 12, 97, 110 (repeatedly alleging 0562752 only ever held a 10.1% stake in the Foreign Parent Corporations)).

Notwithstanding the CFPB's conflation, however, it cannot escape its obligation to satisfy a jurisdictional basis as to each of the defendants, rather than the Original Owners

collectively. *See Gerstle v. Nat'l Credit Adjusters, LLC,* 76 F. Supp. 3d 503, 510 (S.D.N.Y. 2015) ("Plaintiffs must sufficiently detail ***each*** defendant's conduct so as to persuade a court that the defendant was a primary actor in the specific matter in question." (emphasis added, internal quotation marks omitted)). Because the Court's analysis is restricted to the circumstances of "each defendant," it is clear that a 10.1% ownership stake in the Foreign Parent Corporations cannot demonstrate that either of the Grehan Relief Defendants was a "primary actor" sufficient to impute jurisdiction over them through the acts of the Foreign Subsidiaries. *Gerstle,* 76 F. Supp. 3d at 510; *see also Barron Partners LP,* 2008 WL 2902187, at *11 (allegations that the individual defendants were directors or on the Board of Directors of "agent" companies were insufficient to establish the individual defendants were "primary actors" in any of the companies' activities in New York). Moreover, the CFPB's conflated allegations do not even purport to meet the requirement that Grehan or 0562752 were primary actors "in the transaction in New York that gave rise to the litigation." *Karabu Corp.,* 16 F. Supp. 2d at 323.

The CFPB mistakenly relies on *Grove Press, Inc. v. Angleton*, 649 F.2d 121 (2d Cir. 1981), to support its agency theory. (*See* Opp. at 13.) But there, the Second Circuit declined to exercise agency jurisdiction despite the existence of more robust relationships than that between the Grehan Relief Defendants and the Foreign Subsidiaries allegedly acting as agents. *Grove Press*, 649 F.2d at 122. In fact, the Second Circuit reversed the district court's finding of agency jurisdiction because "[t]he evidence relied upon by the district court to connect appellants with conspiracy was extremely weak" and no part of the "common action" occurred in New York. *Id.* at 123. The allegations here are similarly weak, especially because the CFPB alleges no common action on behalf of the Foreign Subsidiaries and the Grehan Relief Defendants in New

York, alleging instead only a minority ownership interest by the Grehan Relief Defendants in the Foreign Parent Corporations. (Am. Compl. ¶¶ 9, 11, 12.)

Even cases the CFPB cites in which courts have exercised agency jurisdiction, the courts relied on relationships far more extensive than that alleged between the Grehan Relief Defendants and the Foreign Subsidiaries. *See, e.g., Chloe*, 616 F.3d 158 (cited in Opp. at 12-13). As discussed *supra*, in *Chloe*, the Second Circuit based its agency jurisdictional finding on the fact that the "agent" defendant had joint access to the "principal" parent company's bank accounts, used the parent company's revenue to pay rent and shared in decision-making regarding the purchase and sale of handbags. *Id.* at 162. Here, the allegations in the Amended Complaint do not go nearly as far—there are no allegations that the Grehan Relief Defendants and the Foreign Subsidiaries shared bank accounts or engaged in any such joint decision-making.

Simply put, this Court cannot exercise jurisdiction over Grehan or 0562752 through their alleged "agents" because the CFPB alleges only that such defendants ever held a 10.1% stake in the Foreign Parent Corporations of those subsidiaries, and that Grehan ceased any managerial role in the NDG Enterprise in 2009. These concessions by the CFPB conflict with any argument that Grehan or 0562752 exercised control over the Foreign Subsidiaries, or the requirement that they be primary actors in the events in New York that gave rise to this litigation.

**(2) *The CFPB Has Not Alleged Jurisdiction is Appropriate Under Rule 4(k)(2)***

Additionally, the CFPB has failed to allege a *prima facie* case of personal jurisdiction over the Grehan Relief Defendants pursuant to Rule 4(k)(2) for three independent reasons.

*First*, as detailed *supra* in Section I(A)(2)(b), the CFPB's claim is limited to conduct post-December 11, 2012. Whether the CFPB has alleged that Grehan and 0562752 directed the effects of their conduct at the United States is inapposite because all allegations in the Amended

Complaint concerning the Grehan Relief Defendants are outside the CFPB's actionable time period.

*Second,* Rule 4(k)(2) does not have an agency or conspiracy component, and therefore, Grehan and 0562752 cannot be haled to the United States based on the alleged contacts of the Foreign Subsidiaries. Notwithstanding, the CFPB argues in opposition that jurisdiction under Rule 4(k)(2) is appropriate because the NDG Enterprise coordinated their activities "as a whole" to deliberately target "United States consumers for profit." (Opp. at 21-22, 24.) However, and contrary to the CFPB's point, collective allegations of a group's contacts with the United States "as a whole" (Opp. at 21), cannot serve as a basis for jurisdiction under Rule 4(k)(2). *In re Aluminum Warehousing Antitrust Litig*., 90 F. Supp. 3d 219, 226-27 (S.D.N.Y. 2015) (Rejecting assertion that "participation in a conspiracy generally can provide a standalone basis for jurisdiction subject only to the constraints of due process. If that were the case, then allegations that a foreign parent participated in a conspiracy with a US subsidiary would be sufficient for an assertion of jurisdiction over the parent."). The Amended Complaint thus fails to make a *prima facie* showing of jurisdiction pursuant to Rule 4(k)(2) because it is devoid of any allegations that the Grehan Relief Defendants ***themselves*** deliberately targeted the United States within the relevant time frame. *See supra* at 9 & n.5; *see also Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him").

*Third*, the CFPB's allegations regarding Grehan's and 0562752's contacts with the United States are just as weak and conclusory as their allegations regarding their contacts with New York. Other than the alleged mere receipt of funds from loans to US consumers that occurred outside the statute of limitations period (Mem. at 7-8; Am. Compl. ¶¶ 225-227), there

are no allegations in the Amended Complaint tying Grehan's and 0562752's conduct to the United States.

The CFPB, therefore, cannot assert jurisdiction over the Grehan Relief Defendants based either on an agency theory or pursuant to Rule 4(k)(2).

## II. THE COURT SHOULD NOT ALLOW JURISDICTIONAL DISCOVERY OR PERMIT THE CFPB TO AMEND ITS COMPLAINT *AGAIN*

As the CFPB admits, it must plead "legally sufficient allegations of jurisdiction" in order to be awarded jurisdictional discovery. (Opp. at 48); *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). The CFPB has failed to meet this burden because it alleges that Grehan stopped participating in the affairs of the alleged NDG Enterprise in 2009 and 0562752 only ever held a minority stake in the Foreign Parent Corporations. Therefore, there are no timely facts by which either could be haled to this Court, and the CFPB should not be permitted to prolong a dispute over which the Court lacks jurisdiction. *See, e.g., Doe v. Delaware State Police,* 939 F. Supp. 2d 313, 333 (S.D.N.Y. Apr. 4, 2013) ("Plaintiffs' allegations, because they are so inadequate, do not merit jurisdiction-related discovery.").

The Court should also not grant leave for the CFPB to amend ***again*** because doing so would be futile. *See Stair v. Calhoun*, No. 07 CIV. 03906 JFB, 2009 WL 792189, at *10 (E.D.N.Y. Mar. 23, 2009) (leave to amend "denied on the grounds that the addition of that allegation would be futile, because the complaint would still be insufficient to show personal jurisdiction"). The CFPB has already had one opportunity to cure the Amended Complaint's deficiencies and articulate a colorable basis by which to hale more than twenty-one defendants and relief defendants to federal court in New York. As detailed above, there are no facts by which Grehan or 0562752 could be subject to this Court's jurisdiction given the CFPB's assertion that it is only pursuing conduct post-July 21, 2011 and the three-year statutory period.

Having failed to amend effectively once, the CFPB should not be permitted to do so again. *See Fallman v. Hotel Insider Ltd,* No. 14 CIV. 10140 SAS, 2016 WL 316378, at *5 n.82 (S.D.N.Y. Jan. 15, 2016) ("Because there are no additional facts to be pled concerning Soderberg Capital's interactions with New York, there is no possible scenario whereby plaintiff could demonstrate this Court's personal jurisdiction over the entity. Leave to amend is denied as futile.")

**CONCLUSION**

For the foregoing reasons, Relief Defendants Paul Grehan and 0562752 B.C. Ltd. respectfully request that the Court dismiss the Amended Complaint against them with prejudice, and grant such further relief as the Court may deem just and proper.

Dated: New York, New York
May 25, 2016

LEVINE LEE LLP

By: s/ Kenneth E. Lee
Kenneth E. Lee
Katie G. Crane
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 223-4400
Facsimile: (212) 223-4425
klee@levinelee.com
kcrane@levinelee.com

*Attorneys for Relief Defendants Paul Grehan and 0562752 B.C. Ltd.*