UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

-against-

NDG FINANCIAL CORP., NORTHWAY FINANCIAL CORP., LTD., NORTHWAY BROKER, LTD., E-CARE CONTACT CENTERS, LTD., BLIZZARD INTERACTIVE CORP., NEW WORLD CONSOLIDATED LENDING CORP., NEW WORLD LENDERS CORP., PAYROLL LOANS FIRST LENDERS CORP., NEW WORLD RRSP LENDERS CORP., PETER ASH, SAGEWOOD HOLDINGS, LTD., KIMBERLY DETHOMAS, JEREMY SABOURIN, and WILLIAM WRIXON,

Defendants,

PETER ASH, SAGEWOOD HOLDINGS, LTD., PAUL ASH, KNIGHTSBRIDGE HOLDINGS LTD., PAUL GREHAN, 0562752 B.C. LTD., KIMBERLY DETHOMAS, EMERALD WILLOW HOLDINGS, LTD., JEREMY SABOURIN, RED RIVER HOLDINGS COMPANY LTD., WILLIAM WRIXON, and TWILLINGATE HOLDINGS LTD.,

Relief Defendants.

-------------------------------------- X

15-cv-5211 (CM)

**REPLY MEMORANDUM OF LAW IN SUPPORT**
**<u>OF NDG DEFENDANTS' MOTION TO DISMISS</u>**

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THE COURT LACKS PERSONAL JURISDICTION OVER THE NDG DEFENDANTS. ..... 2

A. The NDG Defendants Are Not Subject To Specific Jurisdiction In New York. ..... 2

1. The CFPB Has Not Made A Showing Of Specific Jurisdiction Over Northway, Northway Broker, E-Care, Or Any Other NDG Defendant. ..... 3

2. No Agency-Based Theory Of Jurisdiction Extends Specific Jurisdiction To The NDG Defendants. ..... 5

a. Northway's Officers And Directors Are Not Subject To Personal Jurisdiction In New York. ..... 6

b. NDG Financial Is Not Subject To Personal Jurisdiction In New York. ..... 7

c. The Sister Companies And The Holding Companies Are Not Principals Of Northway, Northway Broker, Or E-Care. ..... 8

B. The CFPB's Rule 4(k)(2) Argument Is Without Merit. ..... 9

II. THE COURT SHOULD DISMISS THE FAC FOR FAILURE TO STATE A CLAIM. ..... 9

A. The CFPB Cannot Cure The FAC's Defects By Resorting To Common Enterprise, Alter Ego, Or Agency Theories Of Liability. ..... 9

B. NDG Financial, DeThomas, Wrixon, And Sabourin Are Not Covered Persons Under The CFPA. ..... 12

C. The CFPA's Plain Language And Structure Show That The CFPB Lacks Authority To Enforce State Usury And Licensing Laws. ..... 12

D. The CFPB's Opposition Confirms That The FAC Relies Entirely Upon Conclusory Allegations. ..... 14

E. The "Relief Defendant" Doctrine Does Not Apply To The CFPA. ..... 17

III. THE CFPB'S STRUCTURE VIOLATES THE SEPARATION OF POWERS ..... 17

IV. THE CFPB IDENTIFIES NO BASIS FOR JURISDICTIONAL DISCOVERY OR FURTHER AMENDMENT. ..... 20

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

*Arma v. Buyseasons, Inc.*,
591 F. Supp. 2d 637 (S.D.N.Y. 2008)....................15

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)....................3

*Commonwealth of Pa. v. Think Fin., Inc.*,
No. 14 cv 7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016) ....................10, 11

*Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*,
No. 14 cv 01568, 2015 WL 5091170 (S.D.N.Y. Aug. 28, 2015) ....................8

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014)....................2

*Daventree Ltd. v. Republic of Azerbaijan*,
349 F. Supp. 2d 736 (S.D.N.Y. 2004)....................20

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
7 N.Y.3d 65 (2006) ....................4

*Duravest, Inc. v. Viscardi, A.G.*,
581 F. Supp. 2d 628 (S.D.N.Y. 2008)....................6

*EEOC v. Port Authority of N.Y. & N.J.*,
768 F.3d 247 (2d Cir. 2014)....................15

*F.T.C. v. Think Achievement Corp.*,
144 F. Supp. 2d 1013 (N.D. Ind. 2000), *aff'd*, 312 F.3d 259 (7th Cir. 2002)....................17

*Forbes v. Eagleson*,
No. Civ. A. 95-7021, 1997 WL 733600 (E.D. Pa. Nov. 7, 1997)....................6

*GF Ventures of N.Y., LLC v. Blount Energy Inc.*,
No. 11 cv 1105, 2012 WL 1284392 (N.D.N.Y. Apr. 13, 2012) ....................15

*Girl Scouts of U.S. v. Steir*,
102 F. App'x 217 (2d Cir. 2004) ....................4

*Hood v. Ascent Med. Corp.*,
No. 13 cv 0628, 2016 WL 1366920 (S.D.N.Y. Mar. 3, 2016) ....................6

*Horoshko v. Citibank, N.A.*,
373 F.3d 248 (2d Cir. 2004)....................20

*In re Aluminum Warehousing Antitrust Litig.*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015)....................5, 9

*In re M/V MSC FLAMINIA*,
107 F. Supp. 3d 313 (S.D.N.Y. 2015)....................9

*In re World Trade Ctr. Disaster Site Litig.*,
270 F. Supp. 2d 357 (S.D.N.Y. 2003), *aff'd*, 414 F.3d 352 (2d Cir. 2005)....................13

*International Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*,
64 F. Supp. 3d 494 (S.D.N.Y. 2014)....................5

*Jazini v. Nissan Motor Co.*,
148 F.3d 181 (2d Cir. 1998)....................8

*JGB Enters., Inc. v. Beta Fluid Sys., Inc.*,
135 F. Supp. 3d 18 (N.D.N.Y. 2015)....................8

*Karabu Corp. v. Gitner*,
16 F. Supp. 2d 319 (S.D.N.Y. 1998)....................6

*Levitin v. Sony Music Entm't*,
101 F. Supp. 3d 376 (S.D.N.Y. 2015)....................5

*Madden v. Midland Funding, LLC*,
786 F.3d 246 (2d Cir. 2015)....................14

*Malone v. White Motor Corp.*,
435 U.S. 497 (1978)....................13

*Meyer v. Bd. of Regents of Univ. of Oklahoma*,
No. 13 Civ. 3128 CM, 2014 WL 2039654 (S.D.N.Y. May 14, 2014)....................3

*Morrisette v. United States*,
342 U.S. 246 (1953)....................11

*PHH Corp. v. CFPB*,
No. 15-1177 (D.C. Cir. Apr. 4, 2016)....................18

*Pilates, Inc. v. Current Concepts*,
No. 96 Civ. 0043, 1996 WL 599654 (S.D.N.Y. Oct. 18, 1996)....................6, 7

*S.E.C. v. Cavanagh*,
155 F.3d 129 (2d Cir. 1998)....................17

*Shah v. Nu-Kote Int'l, Inc.*,
898 F. Supp. 496 (E.D. Mich. 1995), *aff'd*, 106 F.3d 401 (6th Cir. 1997)....................6

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir.), *cert. denied*, 134 S. Ct. 2888 (2014) ....................................................5

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)....................................................................................................15

*Steel Inst. of N.Y. v. City of N.Y.*,
No. 09 Civ. 6539 CM, 2010 WL 5060682 (S.D.N.Y. Dec. 2, 2010) .....................................20

*U.S. Commodity Futures Trading Comm'n v. EJS Capital Mgmt., LLC*,
No. 14 cv 3107 CM, 2015 WL 5679688 (S.D.N.Y. Sept. 24, 2015).......................................17

*United States v. Bestfoods*,
524 U.S. 51 (1998)...................................................................................................................10

*Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*,
560 F. App'x 52 (2d Cir. 2014)................................................................................................20

*Viti v. Guardian Life Ins. Co. of Am.*,
817 F. Supp. 2d 214 (S.D.N.Y. 2011).....................................................................................16

*Weiss v. Barc, Inc.*,
No. 12 cv 7571, 2013 WL 2355509 (S.D.N.Y. May 29, 2013)..................................................4

**Statutes/Rules**

12 U.S.C. § 2...........................................................................................................................19

12 U.S.C. § 241.......................................................................................................................19

12 U.S.C. § 5481..............................................................................................................10, 11

12 U.S.C. § 5517(o) .................................................................................................................13

12 U.S.C. § 5531(a) .................................................................................................................12

12 U.S.C. § 5536..............................................................................................................10, 12

12 U.S.C. § 5551(b) .................................................................................................................13

12 U.S.C. § 5564......................................................................................................................13

15 U.S.C. § 44..........................................................................................................................11

15 U.S.C. § 1692e(2)(A)..........................................................................................................14

15 U.S.C. § 1692e(5) ...............................................................................................................14

Fed. R. Civ. P. Rule 4(k)(2) ..........9

C.P.L.R. § 302(a)(1) ..........4, 5

**Other Authorities**

Jimmy Hoover, *D.C. Circ. Judge Slams Too Much Power At Top in CFPB Case* (Apr. 12, 2016), *available at* http://www.law360.com/articles/783491/dc-circ-judge-slams-too-much-power-at-top-in-cfpb-case ..........18

## INTRODUCTION

The CFPB's opposition confirms that the First Amended Complaint (the "FAC") has not identified the discrete actions that subject each of the 15 foreign NDG Defendants to jurisdiction in New York, much less any act that violates federal law.[1] Instead, the Bureau relies on the conclusory allegations of the FAC (together with a few assertions not even alleged therein) and asks the Court to upset firmly established principles of corporate separateness. Based on allegations that Northway, Northway Broker, and E-Care each transacted business in the United States, including in New York, the Bureau argues that this Court has jurisdiction not just over those entities, but over the remaining ***12*** NDG defendants. Yet the FAC fails to allege a single payday lending transaction in New York by ***any defendant*** and does not coherently identify a principal-agency relationship among any of the NDG Defendants, much less all of them. The FAC should be dismissed for lack of personal jurisdiction.

The CFPB also asks this Court to stretch the CFPA to confer authority the agency does not have and to reduce the *Iqbal/Twombly* pleading standards to unprecedented lows. In the CFPB's view, the Court may depart from the CFPA's clear definitions and boundaries to apply alternative theories of liability. In the face of Congress' explicit restriction of the agency's authority to the enforcement of ***federal*** consumer financial law, the CFPB argues it can state a claim based on violations of ***state*** usury laws, despite the absence of any allegations regarding a specific loan or the identity of any alleged borrower or related injury in any state, let alone New York. For these reasons too, the FAC should be dismissed for failure to state a claim.

Finally, the CFPB claims that the constitutional argument regarding the CFPB's structure has been rejected by "every court thus far to have addressed it," CFPB Opp. Br. at 45. Tellingly, the CFPB completely ignores a pending constitutional challenge in the D.C. Circuit, with a

---

[1] Defined terms are the same as in the opening brief.

decision forthcoming, wherein the panel expressed grave concern about the agency's constitutionality. For this reason too, the FAC should be dismissed.

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION OVER THE NDG DEFENDANTS.

#### A. The NDG Defendants Are Not Subject To Specific Jurisdiction In New York.

The CFPB's theory of jurisdiction is clear: Northway, Northway Broker, and E-Care should be deemed agents of every other NDG Defendant, and the New York contacts of the former should be imputed to the latter.[2] This theory is wholly unsupported by the allegations of the FAC, which do not even attempt to allege that these three companies are the agents of 12 separate principals.

As an initial matter, the CFPB has not sufficiently alleged that Northway, Northway Broker, or E-Care is subject to personal jurisdiction in New York. But even if the CFPB could establish jurisdiction over one of those companies, it makes no non-conclusory allegation from which this Court could conclude that these companies were, for the purposes of determining jurisdiction under New York's long-arm statute, the agents of (1) the officers and directors of the corporations; (2) the parent corporation; or (3) the holding companies invested in NDG Financial or any of its sister companies. Without some justification for imputation, the Court must dismiss, at the very least, these 12 NDG Defendants[3] as to whom only this flawed theory of derivative jurisdiction has been alleged.

---

[2] The CFPB appears to concede that none of the NDG Defendants could be subject to general jurisdiction in New York. The CFPB argues "the question at issue is not whether the exercise of general jurisdiction over [Defendants] would be appropriate." CFPB Opp. at 10-11. Indeed, the CFPB has put forth no reasonable argument that any NDG Defendant is "essentially at home" in New York. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (internal quotations omitted).

[3] NDG Financial Corporation, Blizzard Interactive Corp., New World Consolidated Lending Corp., New World Lenders Corp., Payroll Loans First Lenders Corp., New World RRSP

1. The CFPB Has Not Made A Showing Of Specific Jurisdiction Over Northway, Northway Broker, E-Care, Or Any Other NDG Defendant.

The CFPB has not supplied the Court with allegations sufficient to show "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). While the CFPB claims violations of the federal consumer protection laws, the FAC does not identify any New York actions constituting the violation. The CFPB argues generically that "the NDG Enterprise" made loans in the United States, including in New York, but it conspicuously avoids identifying a single transaction by any defendant. This is not an immaterial point. Since the CFPB's shotgun complaint repeatedly conflates ***all*** of the defendants, there can be no basis for jurisdiction against any one defendant in the absence of particular, attributable New York-based acts.

To the extent the FAC mentions New York activity at all, it describes the use of New York banks, FAC ¶ 147-48, a cease and desist letter from the New York Department of Financial Services, *id.* ¶ 202, and an August 2013 letter from Northway to unidentified "New York consumers" in which Northway "stated that it would no longer offer loans to New York consumers," *id.* ¶ 203. The CFPB does not assert claims for relief based upon any of these actions, and the mere access to New York banks will not suffice. *See Meyer v. Bd. of Regents of Univ. of Oklahoma*, No. 13 Civ. 3128, 2014 WL 2039654, at *3 (S.D.N.Y. May 14, 2014) ("If New York courts did not routinely reject the notion that accessing the financial markets constitutes 'doing business' in New York, literally millions of individuals and entities who have no other connection to this state would be subject to general jurisdiction here.").

---

Lenders, Kimberly DeThomas, Jeremy Sabourin, William Wrixon, Emerald Willow Holdings, Ltd., Red River Holdings Company Ltd., and Twillingate Holdings Ltd.

The CFPB's opposition brief introduces for the first time the allegation that Northway Broker, E-Care, and Blizzard (FAC ¶¶ 123, 132, 133) utilized a "fully interactive" website. CFPB Opp. at 15. However, there is no allegation in the FAC that anyone in New York ever accessed this website. Even if someone had, a website directed at the entire United States does not establish personal jurisdiction under C.P.L.R. § 302(a)(1). *See Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 219 (2d Cir. 2004) ("As New York law makes plain, the mere solicitation of business within the state does not constitute the transaction of business within the state absent some other New York-directed activities.") (internal quotations omitted); *Weiss v. Barc, Inc.*, No. 12 cv 7571, 2013 WL 2355509, at *3 (S.D.N.Y. May 29, 2013) ("[W]here a website is directed at the entire United States with no evidence that defendants manifested the intent to specifically target New York or avail themselves of the benefits of New York law, there is no personal jurisdiction under C.P.L.R. § 302(a)(1).").

New York long-arm jurisdiction exists when a corporation, itself or through an agent, "transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1). The plaintiff must present "proof of one transaction in New York[,]" "so long as the defendant's activities here were ***purposeful*** and there is a ***substantial relationship*** between the transaction and the claim asserted." *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (emphasis added). As discussed in the opening brief, NDG Mem. at 14-15, the CFPB has not alleged the particulars of a ***single payday lending transaction*** that Northway or anyone else executed in New York. The FAC comes no closer than alleging the "Defendants made loans" in New York, among other places. FAC ¶¶ 259, 266. The FAC's only non-conclusory allegations about New York actions neither establish the existence of an actionable transaction nor show a "substantial relationship" between the New

York conduct and the federal violations asserted. *Id*. ¶¶ 202-03, 131, 147-48, 166. The Bureau has utterly failed to allege facts conferring jurisdiction for these claims.

2. No Agency-Based Theory Of Jurisdiction Extends Specific Jurisdiction To The NDG Defendants.

The CFPB argues that agency principles justify this Court's exercise of specific jurisdiction, but even assuming such a theory survives *Daimler*, the FAC falls far short of establishing a principal-agent relationship for any of the NDG Defendants, much less all of them. In New York, a principal may be subject to specific jurisdiction if the agent's conduct triggers jurisdiction under the long-arm statute. C.P.L.R. § 302(a)(1). The question whether a defendant is the principal of an agent for the purposes of § 302(a)(1) "hinges on whether the representative acted for the benefit of and with the knowledge and consent of [the] defendant and [the defendant] exercised some control over [the agent] in the matter." *International Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 519 (S.D.N.Y. 2014) (internal quotations omitted). As discussed below, the FAC contains no allegations to establish any of the foregoing with respect to any of the NDG Defendants.

As a threshold matter, *Daimler*, a general jurisdiction case, may render these agency-based theories obsolete for specific jurisdiction as well. *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (explaining the Second Circuit has not yet addressed the impact of *Daimler* on the parent-subsidiary issue in the specific jurisdiction analysis). As far as general jurisdiction is concerned, agency-based theories are now inapplicable. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir.) ("*Daimler* expressed doubts as to the usefulness of an agency analysis . . . that focuses on a forum-state affiliate's importance to the defendant rather than on whether the affiliate is so dominated by the defendant as to be its alter ego."), *cert. denied*, 134 S. Ct. 2888 (2014); *Levitin*

*v. Sony Music Entm't*, 101 F. Supp. 3d 376, 388 (S.D.N.Y. 2015) (rejecting agency theory of personal jurisdiction because "[t]he use of agency to demonstrate general jurisdiction is now of dubious validity."); *Hood v. Ascent Med. Corp.*, No. 13 cv 0628, 2016 WL 1366920, at *13 (S.D.N.Y. Mar. 3, 2016) ("[T]he Supreme Court has soundly rejected the sprawling view that personal jurisdiction can be exercised over a parent corporation merely because a subsidiary of that corporation does business within the forum state.") (internal quotations omitted). In view of *Daimler*, the CFPB similarly must do more than cry "agent" before the Court may assert jurisdiction over a foreign company that itself has done no business in New York.[4]

a. Northway's Officers And Directors Are Not Subject To Personal Jurisdiction In New York.

The Court may assert personal jurisdiction over a corporate officer based upon the contacts of the corporation ***only in the rare instance where the corporation is the agent of the officer***, "rather than vice versa, as would usually be the case." *Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 634 (S.D.N.Y. 2008). Here, the CFPB has not made any allegation that DeThomas, Sabourin, or Wrixon was a "primary actor" who exercised "control" over a particular defendant's New York acts. *See Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998); *Pilates, Inc. v. Current Concepts*, No. 96 Civ. 0043, 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1996) ("[A] general allegation that an officer controls a corporation is not sufficient to

[4] *Daimler* reflects the requirements of the Due Process Clause, which prevents a court from asserting jurisdiction in violation of "traditional notions of fair play and substantial justice." Courts have recognized that those concepts cut across concepts of general and specific personal jurisdiction. *Shah v. Nu-Kote Int'l, Inc.*, 898 F. Supp. 496, 500 (E.D. Mich. 1995) ("[T]his division between general and personal jurisdiction should not be rigidly applied. . . . the relevant inquiry is whether an assertion of jurisdiction over the Defendant would comport with traditional notions of fair play and substantial justice.") (internal quotations omitted), *aff'd*, 106 F.3d 401 (6th Cir. 1997); *Forbes v. Eagleson*, No. Civ. A. 95-7021, 1997 WL 733600, at *2 n.4 (E.D. Pa. Nov. 7, 1997) ("The general versus specific jurisdiction framework originates from *International Shoe* . . . not as conceptually distinct categories . . . to make a court's exercise of jurisdiction constitutional, but rather as instances of a spectrum of possible relationships among a defendant, a forum state, and a cause of action.").

establish personal jurisdiction.”). The CFPB has not alleged a single New York-based action that any of those defendants caused Northway to take, much less one that would render ***all three*** as joint principals to these undefined agents.

Moreover, while the CFPB’s memorandum asserts that Northway and the other defendants took actions in New York with the “knowledge and consent” of DeThomas, Sabourin, and Wrixon, that assertion lacks all support. The FAC does not contain a single non-conclusory allegation addressing these persons’ knowledge or consent. Similarly, there are no allegations that these individuals personally benefited from any New York action taken by any NDG Defendant. The CFPB has alleged nothing more than the “general allegation” that these persons are corporate officers, but that “is not sufficient to establish personal jurisdiction” under well-established law. *Pilates*, 1996 WL 599654 at *3.

b. NDG Financial Is Not Subject To Personal Jurisdiction In New York.

The CFPB similarly fails to allege jurisdictional facts regarding NDG Financial. Though the FAC contradicts itself in this regard, the CFPB appears to argue that NDG Financial is a parent company of the other defendants. The FAC contains the conclusory allegation that “NDG Financial owned, directly or indirectly, the other NDG Enterprise corporations.” FAC ¶ 10. Yet that allegation in fact is false and contradicted elsewhere; indeed, Northway and Northway Broker are ***not*** owned by NDG Financial. *See id.* ¶ 11. Even if NDG Financial were the ultimate parent company, however, the result would be the same. To establish that a subsidiary corporation is an agent of the parent, the CFPB must establish that the former “do[es] all the business which [NDG Financial] could do were it here by its own officials” or that the former are

NDG Financial's "mere departments."[5] *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998). The mere allegation that one company owns another is ***not*** a basis for imputing the subsidiary's contacts to the parent company. *See Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14 cv 01568, 2015 WL 5091170, at *6 (S.D.N.Y. Aug. 28, 2015) ("[Plaintiff's] allegation that [the subsidiary] is a wholly owned subsidiary is insufficient to show that [the subsidiary] does all the business [the parent] could do."); *JGB Enters., Inc. v. Beta Fluid Sys., Inc.*, 135 F. Supp. 3d 18, 26 (N.D.N.Y. 2015) ("Plaintiff again makes only the conclusory allegation that [the parent corporation] 'owned and controlled' the operations of [the subsidiary]. This is insufficient to establish that [the subsidiary] was either an 'agent' or 'mere department' of [the parent corporation]."). The FAC does not contain any allegations to show that Northway, Northway Broker, or E-Care operates as a "mere department" of NDG Financial.

c. The Sister Companies And The Holding Companies Are Not Principals Of Northway, Northway Broker, Or E-Care.

The FAC similarly does not allege that the "sister companies" exerted any control over or received benefits from Northway, Northway Broker, or E-Care.[6] To the contrary, the FAC alleges that the sister companies existed solely for the purpose of supporting Northway's payday lending operation. To the extent there is an agency relationship, therefore, the sister companies would be agents for Northway, not the other way around. And there is no allegation that any of these companies did business in New York.

---

[5] The determination of whether a subsidiary is a "mere department" requires balancing four factors: (1) common ownership, (2) the financial dependency of the subsidiary on the parent, (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities," and (4) "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent." *Jazini*, 148 F.3d at 185.

[6] The sister companies are Blizzard, New World Consolidated Lending, New World Lenders, Payroll Loans First Lenders, and New World RRSP Lenders.

Similarly, the FAC draws no direct connection between the "holding companies" (Emerald Willow, Red River, and Twillingate), and the operating companies. The FAC alleges that Red River and Twillingate own minority interests in NDG Financial, and Emerald Willow has a majority position. FAC ¶ 22, 70. But apart from the conclusory allegation that these shareholders "materially participated" in NDG Financial's business, there are no specific allegations of any business in New York. *Id.* ¶¶ 100, 102. The CFPB fails to cite a single case subjecting non-operating shareholders to personal jurisdiction based on such conclusory allegations.

### B. The CFPB's Rule 4(k)(2) Argument Is Without Merit.

The CFPB also relies upon Fed. R. Civ. P. Rule 4(k)(2) for the proposition that it may extend personal jurisdiction "based on [Defendants'] contacts with the United States as a whole." CFPB Opp. at 11. But Rule 4(k)(2) is a service rule that does not expand the Court's personal jurisdiction, but rather expressly limits itself to where the assertion of personal jurisdiction would be "consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2)(B); *see also In re Aluminum*, 90 F. Supp. 3d at 227 (rejecting the argument that "Rule 4(k)(2) permits courts to exercise personal jurisdiction over a defendant on the basis of a conspiracy, ***based on their contacts with the United States as a whole***—and regardless of whether a court could exercise general or specific jurisdiction over that defendant") (emphasis added). The CFPB has failed to allege that the Court can subject the NDG Defendants to either general or specific personal jurisdiction in New York ***or any other state***. Therefore, Rule 4(k)(2) does not apply. *See In re M/V MSC FLAMINIA*, 107 F. Supp. 3d 313, 322-23 (S.D.N.Y. 2015).

## II. THE COURT SHOULD DISMISS THE FAC FOR FAILURE TO STATE A CLAIM.

### A. The CFPB Cannot Cure The FAC's Defects By Resorting To Common Enterprise, Alter Ego, Or Agency Theories Of Liability.

The CFPB admits that at most, the FAC alleges unlawful acts by Northway, Northway Broker, and E-Care. CFPB Opp. at 32. Nevertheless, the CFPB argues that it may hold the other NDG Defendants liable because of theories of common enterprise, alter-ego, and agency liability. Whether such theories apply to the CFPA is a matter of first impression in this Circuit, and there is no cause to expand the CFPA's scope of liability beyond that which is provided in the statute. Yet this is exactly what the CFPB asks this Court to do.

Congress explicitly defined the parties subject to the CFPA: "covered persons," "service providers," and "related persons." 12 U.S.C. §§ 5481, 5536. Despite these clear definitions, the CFPB argues that it may rely upon enterprise liability, alter ego liability, or agency principles to excuse its failure to explain how each, or any, of the 15 NDG Defendants committed "unfair, deceptive, or abusive" acts under the CFPA. However, these theories of liability are an exception, and the CFPB does not cite any evidence that Congress intended to allow group pleading under the CFPA. *See, e.g., United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries.").

Instead, the CFPB supports its joint enterprise argument by relying upon a body of law that interpreted the Federal Trade Commission Act ("FTC Act") to include common enterprise liability for affiliated corporations. *See* CFPB Opp. at 33 (observing that "Courts have found common enterprise liability under the FTC Act" and that the doctrine should "apply with full force to the CFPA as well"). As the *Think Finance* court has recognized, however, "the common enterprise theory should not be superimposed on a claim under the Dodd-Frank Act [*i.e.*, the CFPA]." *Commonwealth of Pa. v. Think Fin., Inc.*, No. 14 cv 7139, 2016 WL 183289, at *26 (E.D. Pa. Jan. 14, 2016). Though the FTC Act provides for joint enterprise liability, the statute

differs materially from the CFPA. The CFPA is "more expansive, including abusive claims as well as unlawful and deceptive" ones, and provides for private enforcement. *Id.* In addition, in contrast with the FTC Act, the CFPB specifically defines the related parties who are subject to its mandate. *Compare* 12 U.S.C. § 5481 (defining "covered person") *with* 15 U.S.C. § 44 (no such definition under the FTC Act). Those statutory definitions would be wholly unnecessary if, as the CFPB contends, Congress had intended to subject every corporation affiliated with a consumer lender to common enterprise liability.[7]

The CFPB's argument for common enterprise liability relies entirely upon the fact that the CFPA prohibits unfair and deceptive acts, just as the FTC Act does. The CFPB relies upon *Morrisette v. United States,* 342 U.S. 246, 263 (1953), which cited past federal statutes in support of its conclusion that the Court would not lightly presume that Congress had intended to remove an intent element from a federal criminal statute. It is doubtful that *Morrisette* provides any authority for the proposition that "unfair" and "deceptive," when used in the CFPA and the FTC Act, should be interpreted in parallel, given that Congress gave different agencies the authority to interpret those ambiguous terms by regulation. To the extent though that the shared usage of "unfair" and "deceptive" in those statutes has any significance, it would bear only on the ***type*** of conduct prohibited by the CFPA, not ***who*** may be held liable for that conduct. The CFPB identifies no evidence that Congress intended to expand the reach of substantive liability under the CFPA beyond those "covered persons" under the statute.

[7] The CFPB admits "the standards for principal-agent liability are concededly higher than those required for jurisdiction." CFPB Opp. at 38. Since the FAC does not establish agency liability for purposes of personal jurisdiction, then it likewise does not establish substantive liability. The CFPB has also not pled which entities are agents for which other entities with sufficient particularity, so its conclusory argument that "[e]ach Defendant was a joint participant in the payday lending business venture" is entirely circular.

### B. NDG Financial, DeThomas, Wrixon, And Sabourin Are Not Covered Persons Under The CFPA.

The CFPB argues that it has sufficiently pled that NDG Financial, DeThomas, Sabourin, and Wrixon are "covered" by the CFPA, but its reasoning is entirely circular. CFPB Opp. at 27-28. The CFPA prohibits "unfair, deceptive, or abusive" acts or practices by "any covered person or service provider." 12 U.S.C. § 5536. The CFPB argues that NDG Financial is a "covered person," because it is a "related person," because it is a "controlling shareholder" of E-Care, a covered person. CFPB Opp. at 27-28. Alternatively, the CFPB posits that NDG Financial is a "service provider" because it participated in operating and maintaining the payday loan services provided by other defendants. *Id*. The CFPB also claims that NDG Financial is an "affiliate" of other defendants, so it is a "covered person" in its own right. *Id*. Each of these attenuated, confusing arguments suffers from the same flaw: they are supported only by references to conclusory allegations in the Complaint and so fail to state a claim under *Iqbal*/*Twombly*.

Likewise, the CFPB argues that DeThomas, Sabourin, and Wrixon are covered persons because they "exercise managerial responsibility" for the "enterprise." However, the FAC contains only conclusory allegations concerning the role that DeThomas, Sabourin, and Wrixon played. NDG Mem. at 21-22. There are no allegations at all concerning the role that any one of them, much less all, played in the management of the business.

### C. The CFPA's Plain Language And Structure Show That The CFPB Lacks Authority To Enforce State Usury And Licensing Laws.

In arguing that it may plead claims based on violations of state usury and licensing laws, the CFPB asks this Court to ignore the plain language and structure of the CFPA. CFPB Opp. at 41-42. The CFPB completely ignores the fact that Congress limited the CFPB's authority to the enforcement of federal law, not state law. *See* 12 U.S.C. § 5531(a) (authorizing agency to take action "to prevent a covered person or service provider from committing or engaging in an

unfair, deceptive, or abusive act or practice *under Federal law*" ) (emphasis added); *id*. § 5564 (authorizing agency to commence a civil action for violations of *federal consumer financial law*) (emphasis added). Nor does the CFPB address the CFPA's express disavowal of any authority to set a usury limit, 12 U.S.C. § 5517(o), or the statute's clear distinction between state consumer financial protection laws and the CFPA, 12 U.S.C. § 5551(b). Both provisions demonstrate Congress' intent to leave the enforcement of usury limits to the states. *Malone v. White Motor Corp.*, 435 U.S. 497, 505 (1978) (analyzing text and structure of federal statute to find that Congress "recognized and preserved state authority"); *see also In re World Trade Ctr. Disaster Site Litig.*, 270 F. Supp. 2d 357, 378 (S.D.N.Y. 2003) ("The requirements of federalism, in the absence of clear congressional intent, command due regard for long-established and traditionally enforced state law."), *aff'd,* 414 F.3d 352 (2d Cir. 2005).

Instead, the CFPB asks the Court to follow an unpublished minute order that does not address the plain language and structure of the CFPA. CFPB Opp. at 42 (citing Order, *CFPB v. CashCall*, No. CV 15-7522 (C.D. Cal. Dec. 30, 2015) ECF No. 110) ("*CashCall Order*") (Attachment A). In *CashCall,* the district court considered only "whether the plaintiff has alleged an action that falls within the broad range of conduct prohibited by the CFPA." *CashCall Order* at 2. Yet in concluding that the CFPB's allegations of state law violations fell within the CFPA's ban on unfair, deceptive, and abusive acts, the district court failed to consider the statute's clear limitation to federal law, its disavowal of usury limit enforcement by the CFPB, and the absence of any "clear and definite statement" by Congress that it intended to incorporate state law into the CFPA. These are all arguments that the NDG Defendants raised in their opening memorandum, NDG Mem. at 27-31, and these statutory limitations prevent the CFPB from bringing the state law-based claims pled in Counts I, II and III of the FAC.

Nor can the CFPB rely upon *Madden v. Midland Funding, LLC,* 786 F.3d 246, 254 (2d Cir. 2015), to support its authority here. In *Madden*, the district court granted the lender summary judgment under the federal Fair Debt Collection Practices Act ("FDCPA") because it was an assignee of a national bank. On appeal, the Second Circuit reversed, concluding that the lender was not protected by the National Bank Act and remanding to allow the district court to pass in the first instance on whether Delaware or New York law governed the loans. *See id.* *Madden* did not address whether a usurious loan, standing alone, violated the FDCPA, much less support the claim that "***several*** circuits have held that debt collectors" violate the FDCPA by attempting "to collect debts that are void under state law." CFPB Opp. at 42. In any event, in marked contrast with the CFPA, the FDCPA specifically prohibits misrepresentations as to the character, amount, or legal status of any debt, *see* 15 U.S.C. § 1692e(2)(A), and threats to take actions that cannot legally be taken, *see id*. § 1692e(5). Thus, even if *Madden* did support an action under the FDCPA, it would not provide any support for an action under the CFPA, which does not provide any similar authority to the CFPB to enforce state usury laws.

By basing Counts I, II and III of the FAC on violations of state law, the CFPB seeks to broaden the application of the CFPA and seize authority it simply does not have. The Court should reject the agency's attempt to do so and dismiss these counts.

### D. The CFPB's Opposition Confirms That The FAC Relies Entirely Upon Conclusory Allegations.

In arguing that the FAC states a claim as to the alleged unfair, deceptive, and abusive acts committed by the NDG Defendants, the CFPB effectively reduces *Iqbal/Twombly* to a meaningless standard. The CFPB does not seriously rebut the NDG Defendants' argument that the FAC relies on conclusory allegations, but instead argues that *Iqbal/Twombly* does not "require the pleading of specific evidence." CFPB Opp. at 30. Yet the CFPB fails to explain the

distinction between "the pleading of specific evidence" and the well-established requirement that a complaint provide nonconclusory factual allegations plausibly suggesting the defendants' liability. *See EEOC v. Port Authority of N.Y. & N.J.*, 768 F.3d 247, 259 (2d Cir. 2014) (finding district court properly dismissed complaint where plaintiff failed to support claim with any nonconclusory allegations); *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 709 (2d Cir. 2013) (affirming dismissal of complaint that failed to plead "sufficient, nonconclusory factual allegations"). Indeed, courts have not hesitated to dismiss complaints where the plaintiffs failed to provide nonconclusory factual allegations supporting the asserted claims. *GF Ventures of N.Y., LLC v. Blount Energy Inc.*, No. 11 cv 1105, 2012 WL 1284392, at *1 (N.D.N.Y. Apr. 13, 2012) (dismissing complaint due to insufficient factual, nonconclusory allegations plausibly suggesting that defendant did not pay fair market value or that it was otherwise unjustly enriched); *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008) (finding bare allegations that defendants failed to make timely payments and failed to properly account to plaintiffs were unsupported by "any specific facts" and dismissing claim).

The absence of nonconclusory allegations supporting the CFPB's causes of action requires that the FAC be dismissed. Here, the FAC goes to great lengths to describe the (entirely legitimate) corporate structure of the NDG Defendants, but then fails to point to ***any*** loans made by any defendant or allege anything about specific customers who were injured—a point the CFPB concedes. CFPB Opp. at 31 (arguing the CFPB does not have to plead the individual identity of loans). Instead, the CFPB believes its claims for unfair, deceptive, or abusive acts related to loan collection (Counts I, II, and III) should survive this motion to dismiss because of two paragraphs out of the 337-paragraph FAC: an allegation that "the NDG Enterprise

originates, services, and collects payday loans in all fifty states, including states such as New York, in which those loans have no legal effect," FAC ¶ 152, and another allegation that "Defendants have originated, serviced, and collected on loans that consumers are not obligated to pay," *id*. ¶ 253. The conclusory nature of such allegations is plain, and the agency's admission that the FAC lacks further factual allegations supporting these counts is remarkable.

Likewise, the CFPB argues that its claims as to deceptive and abusive acts related to the NDG Defendants' loan agreements and customer communications (Counts IV and V) satisfy *Iqbal/Twombly* even though they make no factual allegations concerning communications made to any actual consumer. The CFPB relies on one paragraph to support the allegation in Count IV that consumers did not fully understand their loan terms or the legal status of the loans, but the cited paragraph does not identify or name any consumer who was confused by the loan terms. CFPB Opp. at 31 (citing FAC ¶ 170). The agency also cites a stream of paragraphs to support the notion that it has sufficiently pled that defendants' alleged false representations materially interfered with consumers' ability to understand the terms and conditions of their loans, but none of the cited paragraphs mentions or identifies a single consumer. CFPB Opp. at 31 (citing FAC ¶¶ 169-178, 181, 183, 190, 194, 200). As the NDG Defendants argued in their opening brief, not only do Counts IV and V rely on conclusory allegations as to consumers, but the FAC also fails to support these claims with any nonconclusory factual allegations as to materiality. NDG Mem. at 24-26.

Finally, the CFPB's Opposition does not even address the NDG Defendants' arguments concerning the supposed wage garnishment and irrevocable wage assignment causes of action (Counts VI, VII and VIII). The CFPB therefore has conceded that dismissal of these counts is proper. *Viti v. Guardian Life Ins. Co. of Am.*, 817 F. Supp. 2d 214, 234 (S.D.N.Y. 2011)

(dismissing two causes of action where plaintiff "offer[ed] no answer to either of [defendant's] arguments" and so conceded them). For these reasons, and those stated in the opening brief, the FAC fails to state a claim against any NDG Defendant. NDG Mem. at 22-27.

### E. The "Relief Defendant" Doctrine Does Not Apply To The CFPA.

The CFPB centers its defense of the "relief defendant" doctrine in this case by citing three cases that purportedly did not involve fraud. CFPB Opp. at 40. Yet every one of these cases involves fraudulent acts. *See S.E.C. v. Cavanagh*, 155 F.3d 129, 131 (2d Cir. 1998) ("The [SEC] brought this enforcement action against multiple defendants for violations of the registration and ***antifraud provisions*** of the federal securities laws.") (emphasis added); *U.S. Commodity Futures Trading Comm'n v. EJS Capital Mgmt., LLC*, No. 14 cv 3107 CM, 2015 WL 5679688, at *1 (S.D.N.Y. Sept. 24, 2015) ("On May 1, 2014, the Commission filed a Complaint charging Defendants . . . with ***fraudulently soliciting*** more than $2 million from at least 90 customers . . . in violation of [federal law].") (emphasis added); *F.T.C. v. Think Achievement Corp.*, 144 F. Supp. 2d 1013, 1018 (N.D. Ind. 2000) ("The Commission has also requested that the Court order the [Defendants] to make restitution by repaying the money they made from their ***fraudulent***, deceptive business enterprise.") (emphasis added), *aff'd*, 312 F.3d 259 (7th Cir. 2002). Certainly, these cases support the contention that the relief defendant doctrine applies only to the disgorgement of the proceeds of fraud. The CFPB has not alleged any defendant committed fraud, much less alleged that any defendant received the proceeds of a fraud. The relief defendant doctrine has no application here.

## III. THE CFPB'S STRUCTURE VIOLATES THE SEPARATION OF POWERS.

In a strained attempt to dismiss the legitimacy of the separation of powers issues raised by the NDG Defendants, the CFPB characterizes the argument as a "last ditch attempt to escape liability." CFPB Opp. at 45. The CFPB's discussion, however, conveniently omits any reference

to the D.C. Circuit's order in *PHH Corp. v. CFPB* directing the agency to be prepared to discuss, at oral argument, the agency's constitutionality and the appropriate remedy. Order, *PHH Corp. v. CFPB*, No. 15-1177 (D.C. Cir. Apr. 4, 2016) (Attachment B). Indeed, at oral argument, the *PHH Corp.* panel repeatedly questioned the parties as to the constitutionality of the CFPB's single-director structure.[8] The NDG Defendants neither invented this argument nor can the CFPB ignore the serious constitutional doubt over the Bureau's structure. NDG Mem. at 32-35.

The CFPB cites examples purportedly showing that the design of the agency and vesting of power in the Director is no cause for concern, but each of its examples only highlights the agency's unprecedented design and the fact that the Director operates without constraints imposed on other independent agencies. The CFPB points to particular aspects of certain agencies in isolation, omitting any mention of other structural features that serve as a check on agency authority. Yet a laser-like focus misses the point of a separation of powers analysis. To determine whether the agency violates separation of powers principles, this Court can only consider the agency ***as a whole***; the very notion of checks and balances is built on a holistic view and does not permit the Court to deem the agency constitutional simply because it has one feature that is shared by another independent agency.

First, the CFPB argues that the Director's for-cause removal makes his position no different from that of FTC Commissioners, CFPB Opp. at 46, but the agency ignores the fact that a multi-member commission like the FTC contains its own checks and balances. Because the five-member commission acts through majority vote, the FTC Commissioners act as a check on one another's power. The need for presidential oversight is therefore not as great because of the

---

[8] Jimmy Hoover, *D.C. Circ. Judge Slams Too Much Power At Top in CFPB Case*, Law360.com (Apr. 12, 2016), *available at* http://www.law360.com/articles/783491/dc-circ-judge-slams-too-much-power-at-top-in-cfpb-case.

multi-member commission. In contrast, the CFPB concentrates power in a single director, and the CFPA grants the Director sweeping authority to enforce eighteen different federal consumer statutes.[9] The need for some kind of check on the Director's power is necessary to ensure that the Director does not abuse his power—but the Director's removability only for cause and his five-year term severely dilutes any oversight the President could exercise over the agency. Accordingly, the Director's independence from the President interferes with the President's ability to "take care" that the laws of the United States are faithfully executed.

Second, the CFPB argues that its funding mechanism, outside of the Congressional appropriations process, is no different than that of other regulatory agencies such as the Federal Reserve or the Office of the Comptroller of the Currency. CFPB Opp. at 47. While both of these agencies are indeed funded outside of the Congressional appropriations process, they also contain other internal checks and balances to restrain the power of their agency leaders. The Federal Reserve is run by a multi-member commission—the seven-member Board of Governors. 12 U.S.C. § 241. The Comptroller of the Currency, unlike the CFPB Director, is removable by the President "upon reasons to be communicated by him to the Senate." 12 U.S.C. § 2.

Finally, the CFPB argues that the President and Congress "retain their full constitutional authority to oversee the Bureau," CFPB Opp. at 47, but it's clear that, when compared to other independent regulatory agencies, the result is something less than full oversight. There is no dispute that the CFPB, through its concentration of power in a single Director, removable only for cause and unaccountable to the congressional appropriations process, remains free of the usual checks and balances built in to other agencies. This Court should therefore find that the structure of the agency is unconstitutional.

---

[9] And if the CFPB prevails here, the Director is effectively empowered to enforce the usury and licensing laws of all 50 states.

## IV. THE CFPB IDENTIFIES NO BASIS FOR JURISDICTIONAL DISCOVERY OR FURTHER AMENDMENT.

Sensing the weakness of the FAC, the CFPB requests the opportunity to conduct jurisdictional discovery and leave to file a Second FAC. CFPB Opp. at 48. The Court should deny both forms of relief to the agency. The CFPB has already amended the complaint once, and its request to amend does not "disclose what additional allegations [the agency] would make which might lead to a different result." *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004). Any amendment would thus be futile. *See e.g.*, *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 56-57 (2d Cir. 2014) (amendment futile where plaintiff was not able to point to any specific basis for an exercise of jurisdiction over defendants or a basis to believe acts forming cause of action had been committed); *see also Steel Inst. of N.Y. v. City of N.Y.*, No. 09 Civ. 6539 CM, 2010 WL 5060682, at *3 (S.D.N.Y. Dec. 2, 2010).

Nor has the CFPB identified a basis for jurisdictional discovery. Jurisdictional discovery is only awarded if a plaintiff has pled factual disputes over personal jurisdiction. *See Universal Trading & Inv. Co.*, 560 F. App'x at 55-56. Here, the CFPB's allegations are conclusory and unspecific, therefore requiring this Court to deny jurisdictional discovery. Nor has the CFPB identified any genuine issue of jurisdictional fact warranting discovery, even despite its failure to make a *prima facie* case. *See Daventree Ltd. v. Republic of Azerbaijan,* 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (citing *Jazini*).

## CONCLUSION

For the reasons set forth above and in the NDG Defendants' opening brief, this Court should dismiss this action with prejudice.

Dated: May 25, 2016
New York, NY

DECHERT LLP

By: /s/ Jeffrey Brown
Jeffrey Brown
Steven A. Engel
May Chiang
Sarah Lyons
Tanner Kroeger

1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
jeff.brown@dechert.com

*Attorneys for Defendants NDG Financial Corp., Northway Financial Corp., Northway Broker Ltd., E-Care Contact Centers Ltd., Blizzard Interactive Corp., New World Consolidated Lending Corp., New World Lenders Corp., Payroll Loans First Lenders Corp., New World RRSP Lenders Corp., Kimberly DeThomas, Jeremy Sabourin, William Wrixon, Emerald Willow Holdings Ltd., Red River Holdings Company Ltd.,* and *Twillingate Holdings Ltd.*