**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>NDG Financial Corp., Northway Financial Corp., Ltd., Northway Broker, Ltd., E-Care Contact Centers, Ltd., Blizzard Interactive Corp., New World Consolidated Lending Corp., New World Lenders Corp., Payroll Loans First Lenders Corp., New World RRSP Lenders Corp., Peter Ash, Sagewood Holdings, Ltd., Kimberly DeThomas, Jeremy Sabourin, William Wrixon,<br><br>Defendants,<br><br>Peter Ash, Sagewood Holdings, Ltd., Paul Ash, Knightsbridge Holdings Ltd., Paul Grehan, 0562752 B.C., Ltd., Kimberly DeThomas, Emerald Willow Holdings, Ltd., Jeremy Sabourin, Red River Holdings Company Ltd., William Wrixon, Twillingate Holdings Ltd.,<br><br>Relief Defendants. | : | 15-cv-5211 (CM) |

**MEMORANDUM OF LAW OF SAGEWOOD HOLDINGS, LTD., KNIGHTSBRIDGE HOLDINGS, LTD., PETER ASH AND PAUL ASH IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)**

Benjamin S. Boyd
*admitted pro hac vice*
benjamin.boyd@dlapiper.com
DLA PIPER LLP (US)
500 8th Street, NW
Washington, DC 20004
Tel. (202) 799-4000
Fax (202) 799-5000

Richard F. Hans
richard.hans@dlapiper.com
Constance C. Tse
connie.tse@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel. (212) 335-4500
Fax (212) 335-4501

*Attorneys for Sagewood Holdings, Ltd., Knightsbridge Holdings Ltd., Peter Ash and Paul Ash*

# TABLE OF CONTENTS

Page

I. RECONSIDERATION ........................................ 1

A. The FAC's Allegations Relating to The Ash Defendants' Control of the New York Defendants Refer to Conduct Before July 2012 ............ 3

B. The Court's Assertion of Specific Jurisdiction Over The Ash Defendants Under An Agency Theory Is A Clear Error Because It Is Based On Factual Allegations That Cannot Form The Basis of Liability ........................................ 5

C. The CFPB Has Not Alleged A Plausible Factual Basis To Hold Peter Ash Individually Liable For The Alleged Unlawful Conduct of The New York Defendants ........................................ 7

II. CERTIFICATION FOR INTERLOCUTORY REVIEW ........................................ 9

A. The Court's Order Involves Controlling Questions of Law ........................................ 9

B. There is Substantial Ground for Difference of Opinion On The Questions Presented ........................................ 10

C. Immediate Appeal Will Materially Advance the Termination of Litigation ........................................ 11

CONCLUSION ........................................ 11

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ace Decade Holdings Ltd. v. UBS Ag*,
No. 653316/2015, 2016 WL 7158077 (Sup. Ct. N.Y. Dec. 7, 2016) ....................................5

*Barron Partners v. Lab123, Inc.*,
No. 07 Civ. 11125, 2008 WL 2902187 (S.D.N.Y. July 25, 2008) ........................................6

*Certain Underwriters at Lloyds of London v. Ill. Nat'l Ins. Co.*,
No. 09 Civ. 4418 (LAP), 2013 WL 310383 (S.D.N.Y. Jan. 25, 2013)................................10

*Fed. Hous. Fin. Agency v. UBS Ams.*, Inc.,
858 F. Supp. 2d 306 (S.D.N.Y. 2012)......................................................................................11

*FTC v. Tax Club*,
994 F. Supp. 2d at 471 ..............................................................................................................7

*Galleli v. Crown Imports, LLC*,
701 F. Supp. 2d 263 (S.D.N.Y. 2010)........................................................................................6

*Grove Press, Inc. v. Angleton*,
649 F. 2d 121 (2d Cir. 1981)......................................................................................................3

*Gurvey v. Cowan, Liebowitz & Latman, PC*,
No. 06 Civ. 1202, 2009 WL 691056 (S.D.N.Y. Mar. 17, 2009) ...........................................7

*In re Fosamax Prods. Liab. Litig.,*
No. 06 MD 1789 (JFK), 2011 WL 2566074 (S.D.N.Y. June 29, 2011)...........................10, 11

*In re Parmalat Sec. Litig.*,
376 F. Supp. 2d 449 (S.D.N.Y. 2005)........................................................................................2

*Kinetic Instruments v. Lares*,
802 F. Supp. 976 (S.D.N.Y. 1992) ............................................................................................6

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Straordinaria*,
921 F.2d 21 (2d Cir. 1990)....................................................................................................9, 10

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Straordinaria*,
937 F.2d 44 (2d Cir. 1991)..........................................................................................................5

*Montefiore Med. Cntr. v. Teamster Local 272*,
No. 09 Civ. 3096 (HB), 2009 WL 3787209 (S.D.N.Y. Nov. 12, 2009) ................................10

*Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*,
319 F. Supp. 2d 352 (S.D.N.Y. 2004)......................................................................................11

*Northland Paper Co. v. Mohawk Tablet Co.*,
271 F. Supp. 763 (S.D.N.Y. 1967) ....................9

*NovelAire Tech., LLC v. Munters AB*,
No. 13 Civ. 472, 2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013) ....................5

*Ontel Prods., Inc. v. Project Strategies Corp.*,
899 F. Supp. 1144 (S.D.N.Y. 1995)....................6

*Padilla ex rel. Newman v. Rumsfeld*,
256 F. Supp. 2d 218 (S.D.N.Y. 2003)....................10, 11

*Primavera Familienstifung v. Askin*,
139 F. Supp. 2d 567 (S.D.N.Y. 2001)....................9

*Skidmore v. Led Zeppelin*,
106 F. Supp. 3d 581 (E.D. Pa. 2015) ....................5

*Topps Co., Inc. v. Verburg Co.*,
961 F. Supp. 88 (S.D.N.Y. 1997) ....................2

*United Rope Dist., Inc. v. Line*,
785 F. Supp. 446 (S.D.N.Y. 1992) ....................9

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)....................2

**STATUTES**

28 U.S.C. § 1292(b) ....................1, 8, 11

CPLR § 302....................2, 5, 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54(b) ....................2

S.D.N.Y. Local R. 6.3 ....................2

Defendants and Relief Defendants Sagewood Holdings, Ltd. ("Sagewood") and Peter Ash, and Relief Defendants Knightsbridge Holdings Ltd. ("Knightsbridge") and Paul Ash (collectively, the "Ash Defendants"), submit this memorandum in support of their Motion for Reconsideration or, in the Alternative, for Certification Pursuant to 28 U.S.C. § 1292(b).[1]

## I. RECONSIDERATION

The Ash Defendants respectfully request that the Court reconsider the portions of its Decision and Order dated December 2, 2016, Docket No. 98 (the "Order") finding that the First Amended Complaint ("FAC") plausibly alleges (1) personal jurisdiction over the Ash Defendants and (2) individual liability over Peter Ash. The Court based both rulings on its finding of an agency relationship between the Ash Defendants and the New York Defendants,[2] which required that the CFPB allege that the Ash Defendants "… controlled, the activities of the New York Defendants." *See* Order at 16. The Court set forth the factual allegations which supported its finding of control, but each and every factual allegation relied upon by the Court described activity that occurred prior to 2012. Because this Court has recognized that (1) any claim by the CFPB based on conduct that occurred prior to July 2012 is time-barred,[3] and (2) the

[1] Throughout this brief, "Ash Memorandum" or "Mem." Refers to the Ash Defendants' "Memorandum of Law in Support of Motion to Dismiss" (Docket No. 65), "Opposition" or "Opp'n" refers to Plaintiff's "Memorandum of Law in Opposition to Defendants' Motions to Dismiss" (Docket No. 90), and "Reply" refers to the Ash Defendants' "Reply Memorandum of Law in Further Support of Motion to Dismiss" (Docket No. 93). All capitalized terms have the definitions set forth in the Ash Memorandum.

[2] At page 15 of its Decision and Order Denying Defendants' Motions to Dismiss, the Court defined Northway, Northway Broker, E-Care and Blizzard as "the New York Defendants" based on their alleged direct activity in New York State.

[3] *See* Order at 38-41. The July 2012 cutoff applies to Sagewood, which is the only one of the Ash Defendants named in the original Complaint filed in July 2015. Peter and Paul Ash and Knightsbridge were not named as defendants until the FAC was filed in December 2015, so the actionable time frame for these defendants cuts off in December 2012.

facts forming the basis for personal jurisdiction must be the facts upon which liability is based,[4] it is clear error for this Court to base its finding of personal jurisdiction over the Ash Defendants' alleged conduct that the CFPB alleges occurred prior to July 2012. Reconsideration is appropriate where there exists "the need to correct a clear error." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *see also* Fed. R. Civ. P. 54(b) (orders adjudicating "fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); S.D.N.Y. Local R. 6.3 (permitting a party to move for reconsideration based on "matter or controlling decisions which counsel believes the Court has overlooked.").

The Ash Defendants seek reconsideration out of a fundamental sense of fairness given that they are all foreign defendants with admittedly no direct contacts with the forum. *See* Order at 12. Due process requires that a defendant has sufficient U.S.-based contacts that "the exercise of personal jurisdiction [will] be fundamentally fair." *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 454 (S.D.N.Y. 2005) (internal citation and quotations omitted). Importantly, there is no dispute that general jurisdiction does not apply to the Ash Defendants. In exercising specific jurisdiction under the New York Long Arm Statute, this Court has counseled against overreach: a "court should be reluctant to exercise jurisdiction under the statute in a way that raises significant constitutional doubts by interpreting the term 'agent' in an overly broad manner, since § 302 does not extend personal jurisdiction to the full limits of the Constitution." *Topps Co., Inc. v. Verburg Co.*, 961 F. Supp. 88, 90-92 (S.D.N.Y. 1997).

[4] *See* Order at 15 ("Personal jurisdiction over the remaining entities and individuals . . . only exists if it can be imputed from the New York based activities of the New York Defendants.")

### A. The FAC's Allegations Relating to The Ash Defendants' Control of the New York Defendants Refer to Conduct Before July 2012.

In finding personal jurisdiction over all twenty-one defendants, this Court recognized that the CFPB's factual allegations "must establish that [the New York Defendants] acted as either 'agent[s]' or 'mere departments' of the other Defendants." *See* Order at 12. In finding an agency relationship, the Court held that the CFPB must allege that the New York Defendants "acted (1) for the benefit of, (2) with the knowledge of, (3) with the consent of, *and* (4) *under the control of*," the other Defendants. *Id.* at 16, citing *Grove Press, Inc. v. Angleton*, 649 F. 2d 121, 122 (2d Cir. 1981) (emphasis added). In applying the "control" requirement, this Court did not differentiate between the Ash Defendants, who are not alleged to have exercised any control over the New York Defendants since 2009, and the rest of the Defendants.

The FAC admits that the Ash Defendants transferred day-to-day control of the NDG entities to other defendants in 2009 and severed all ownership ties by September 2013. FAC ¶¶ 230-240. Thus, the FAC contained limited factual allegations regarding the activity of the Ash Defendants after 2009. The Court exclusively relied upon three allegations from the FAC in finding that the CFPB had "plausibly alleged" that the Ash Defendants controlled the New York Defendants:

- "The FAC includes specific details about specific actions that Peter Ash, Paul Ash, and Paul Grehan took to establish the payday lending operation and to direct profits to themselves. . . ." Order at 16, citing to FAC ¶¶ 118(g)-(q), which quotes an "NDG corporate fact sheet" dated no later than 2011, *see* FAC ¶¶ 119, and FAC ¶¶ 225-228, which cites to an August 2009 account review detailing earlier activity and a "bank record" describing activity from October 2010.

- "The FAC details how each individual in the Owners Group possessed signing authority over various bank accounts used by the other defendants to transfer proceeds from the payday loan scheme to other entities and to themselves for personal use" Order at 17, citing to FAC ¶¶ 219-29, which references bank records from 2007-2011.
- The Ash Defendants, even after ceding day-to-day control in 2009, "continued to collect dividends and provide strategic direction to the point that the companies continued to reflect their beliefs." Order at 17, citing to FAC ¶¶ 239-40, which references "notes from a bank relationship manager" based on "interviews . . . in 2011," that necessarily described conduct pre-dating the interview.

All of these factual allegations refer to conduct that occurred before 2012.

By contrast, the FAC affirmatively alleges that other Defendants exercised full control over the alleged enterprise after 2009, with the Ash Defendants only providing "strategic direction at the board level" no later than 2011. *See* FAC ¶ 239. The CFPB quotes a bank review of "NDG Enterprise accounts" that listed "DeThomas (CEO), Wrixon (CFO), and Sabourin (CSO) as '*controlling parties*'" in late 2011, *see* FAC ¶¶ 236-37 (emphasis added), and that Sabourin performed specific controlling acts in 2013. *See* FAC ¶ 241. That same "bank review" described the Ash Defendants as only "entity owners." *See* FAC ¶ 235. Thus, the specific activity in support of the New York Defendants that the CFPB has alleged from 2012 forward was exclusively performed by DeThomas, Wrixon and Sabourin, without any alleged input or assistance from the Ash Defendants. *See* FAC ¶¶ 236-238.

### B. The Court's Assertion of Specific Jurisdiction Over The Ash Defendants Under An Agency Theory Is A Clear Error Because It Is Based On Factual Allegations That Cannot Form The Basis of Liability.

To assert specific jurisdiction under N.Y. CPLR § 302, the alleged conduct that forms the basis of the alleged liability must also form the basis for jurisdiction.[5] As set forth in detail above, the FAC contains no well-pleaded allegation demonstrating that any of the Ash Defendants exercised any control over the alleged New York Defendants from 2012 to the present. Without facts demonstrating control from July 2012 (for Sagewood) or December 2012 (for Peter and Paul Ash and Knightsbridge), there is no basis to assert personal jurisdiction over any of the Ash Defendants.

The Court appears to have relied upon the FAC's allegation that the New York Defendants were wholly-owned subsidiaries of NDG entities in which one of the Ash Defendants, Sagewood, held a 50.1% ownership interest until September 2013, and that Peter Ash owned 100% of Sagewood. *See* Order at 5. However, passive ownership, while perhaps satisfying the "benefit" prong under an agency theory, is insufficient to establish the "control" prong. As the Ash Defendants set forth previously, New York law is clear that mere allegations of passive ownership, even by a majority shareholder, are insufficient to establish the "control" necessary to find an agency relationship. Control cannot be established "based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the

---

[5] *See* Reply at 5 (citing *NovelAire Tech., LLC v. Munters AB*, No. 13 Civ. 472, 2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013) (N.Y. CPLR § 302 requires that "the claims arise out of the facts that form the basis of personal jurisdiction"); *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 587-88 (E.D. Pa. 2015) (alleged contacts outside the limitations period cannot form the basis for personal jurisdiction) (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)); *see also Ace Decade Holdings Ltd. v. UBS Ag*, No. 653316/2015, 2016 WL 7158077, at *6-7 (Sup. Ct. N.Y. Dec. 7, 2016) (rejecting the exercise of long-arm jurisdiction because the alleged conduct occurred, and the parties' relationship began, before any contact with the forum.)

defendant controls the corporation." *See* Reply at 9 (citing *Barron Partners v. Lab123, Inc.*, No. 07 Civ. 11125, 2008 WL 2902187, at *10 (S.D.N.Y. July 25, 2008) (prima facie showing of control requires detailed allegations of conduct in the "*specific matter in question*")) (emphasis added); Mem. at 8-9 (citing, *inter alia*, *Kinetic Instruments v. Lares*, 802 F. Supp. 976, 984-85 (S.D.N.Y. 1992) ("[t]he fact that [the defendant] is the President and majority shareholder of [the corporation] does not necessarily mean that the corporation will be considered his agent"); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) (plaintiff "must show that [defendant] personally took part in the activities giving rise to the action at issue").) This Court's Order did not hold otherwise. Here, the FAC fails to allege any activity by the Ash Defendants as the majority shareholder of the NDG entities that would demonstrate any control over the New York Defendants from 2012 forward. The Ash Defendants were admittedly not officers, directors, employees or agents of the New York Defendants during the 2012–2015 time frame—the individuals were simply shareholders in corporations and one of those corporations was a shareholder in a third corporation that owned the New York Defendants.

Notably, even if simply holding the status of majority shareholder equated to exercising control over an entity for agency purposes, and it does not, that factual allegation does not apply to two of the Ash Defendants—Paul Ash or Knightsbridge. The FAC admits that Paul Ash and Knightsbridge held only a minority interest in the NDG entities that own the New York Defendants. *See* Order at 5. A minority interest by definition does not control a corporation. *See Galleli v. Crown Imports, LLC*, 701 F. Supp. 2d 263 (S.D.N.Y. 2010) ("The mere fact that [a nonresident defendant] is a minority shareholder . . . is not enough to establish the control necessary to show an agency relationship.") Similarly, to the extent the Court relies on the

combined ownership interests of all of the Owner Group Defendants to evaluate control, *see* Order at 16-17 (citing to the Owners Group Defendants' joint ownership), that conflating of interests is not permitted to establish control under the agency test. *See Gurvey v. Cowan, Liebowitz & Latman, PC*, No. 06 Civ. 1202, 2009 WL 691056, at *4 (S.D.N.Y. Mar. 17, 2009) (declining to assert specific jurisdiction where plaintiff has made "very little effort to distinguish between the activities of the holding company and those of the subsidiaries and has failed to demonstrate agency or other justification for ignoring the corporate forms between entities").

### C. The CFPB Has Not Alleged A Plausible Factual Basis To Hold Peter Ash Individually Liable For The Alleged Unlawful Conduct of The New York Defendants.

The Court's conclusion that Peter Ash is subject to individual liability is based on the same time-barred factual allegations that were relied upon for the exercise of personal jurisdiction and are set forth above. *See* Order at 34-37. This Court held that to find an individual liable for wrongful corporate acts, that individual must have (1) "participated directly in the wrongful acts or practices" or had the authority to control the corporate defendant who did, and (2) "had some knowledge of the acts or practices." *Id.* at 34, citing *FTC v. Tax Club*, 994 F. Supp. 2d at 471.

The Court stated that the factual basis for asserting that the CFPB had "plausibly alleged" the personal liability of Peter Ash was as follows:

> Peter Ash also meets the standard for individual liability based on the FAC's allegations. Until 2013, he was the sole controlling shareholder of all of the entities that originated the loans and made the representations at issue. He established the corporations, set up their bank accounts, and personally hired their first employees, including some of the Officers/Directors. *Id*. ¶¶ 118, 210, 213-15, 218-23. He, along with Paul Ash and Paul Grehan, continued to provide strategic direction as owners to the companies after they handed over day-to-day control." *Id.* ¶ 239. He was a personal signatory to multiple offering memoranda that described Northway's lending practices, including how the loans were secured by potentially unenforceable wage assignment clauses and were potentially void due to their violation of state usury laws. *Id.*, ¶ 186-89.

Order at 35-36. As set forth in detail in Section I(A) above, the factual allegations upon which the Court relies in the above paragraph refer exclusively to allegations that describe conduct that occurred before 2012. Because claims based on that conduct are time-barred and cannot form the basis for liability or personal jurisdiction, the Court has made a "clear error" in finding that the FAC states a claim against Peter Ash individually.

The Court's statement that Peter Ash was the "sole controlling shareholder" of all of the lending entities until 2013 is mistaken because no such allegation is set forth in the FAC. Instead, it is alleged that Peter Ash owns 100% of Sagewood, which in turn owns an indirect interest in those entities by virtue of its 50.1% ownership interest in NDG and New Northway. (*See* FAC ¶¶ 59-64.) He is not alleged to have had any direct shareholding interest in any entity below Sagewood. And, any inference of authority to control that might arise from Peter Ash's alleged ownership interest is completely undercut by the FAC's admission that Peter Ash has had no directorship or officer positions with any of the New York Defendants since the transfer of management and ceded day-to-day control in September 2009. (FAC ¶¶ 230-33.)

Because the FAC fails to allege a single factual allegation that after December 2012 Peter Ash had the authority to control the New York Defendants, the FAC should be dismissed for failure to state a claim against Peter Ash.

## II. CERTIFICATION FOR INTERLOCUTORY REVIEW

In the event the Court does not wish to reconsider its ruling regarding personal jurisdiction, the Ash Defendants respectfully request that the Court certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Certification of an order for interlocutory review is appropriate where the "order (1) involves a controlling question of law (2) as to which there is substantial ground for difference of opinion, and (3) where an immediate appeal from the order may materially advance the ultimate

termination of the litigation." *United Rope Dist., Inc. v. Line*, 785 F. Supp. 446, 453 (S.D.N.Y. 1992).

Courts routinely grant certification to address issues of personal jurisdiction. *See, e.g., id.* ("personam jurisdiction is properly certifiable pursuant to the statute."); *Northland Paper Co. v. Mohawk Tablet Co.*, 271 F. Supp. 763, 770 (S.D.N.Y. 1967) (finding issue of personal jurisdiction "involves a controlling question of law as to which there is substantial ground for difference of opinion"). Here, there are at least three controlling questions of law decided by the Court, each of which presents threshold issues of law whose resolution would terminate the instant litigation. They are: (1) whether a defendant may be subject to specific personal jurisdiction on the basis of conduct that is time-barred by the statute of limitations; (2) whether mere allegations of ownership can establish control in an agency relationship for the purposes of asserting specific jurisdiction under N.Y. CPLR § 302; and (3) whether a defendant may be subject to specific personal jurisdiction under an agency theory solely on the basis of his status as a minority shareholder.

**A. The Court's Order Involves Controlling Questions of Law.**

Courts look to three factors when considering whether an order involves a controlling question of law: whether "reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001). "[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990).

Each of the three questions identified above regarding personal jurisdiction qualifies as "controlling" under this Court's precedent. Because appellate reversal of the Court's rulings on personal jurisdiction would compel dismissal of the action, it is "clear" that these questions are controlling. *See Klinghoffer*, 921 F.2d at 24.

### B. There is Substantial Ground for Difference of Opinion On The Questions Presented.

A controlling question of law presents substantial ground for difference of opinion "when the authority on a point of law is in conflict, or when there is a relative lack of authority on the *precise* question." *In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789 (JFK), 2011 WL 2566074, at *5 (S.D.N.Y. June 29, 2011) (internal quotation marks and citation omitted) (emphasis added); *see also Certain Underwriters at Lloyds of London v. Ill. Nat'l Ins. Co.*, No. 09 Civ. 4418 (LAP), 2013 WL 310383, at *1 (S.D.N.Y. Jan. 25, 2013) ("Substantial ground for difference of opinion may arise where an issue is difficult and of first impression."). Applying this standard, courts have deemed an absence of direct appellate-court precedent central to their determinations that a question presented substantial ground for difference of opinion. *See, e.g.*, *id.* at *7; *Montefiore Med. Cntr. v. Teamster Local 272*, No. 09 Civ. 3096 (HB), 2009 WL 3787209, at *6 (S.D.N.Y. Nov. 12, 2009); *Padilla ex rel. Newman v. Rumsfeld*, 256 F. Supp.2d 218, 223 (S.D.N.Y. 2003). Even if higher courts have offered some guidance, a question can nevertheless give rise to substantial ground for difference of opinion when a higher court has not ruled on the "*precise* point of law." *In re Fosamax*, 2011 WL 2566074, at *7 (emphasis added). In the context of personal jurisdiction, where courts must generally apply settled principles to new facts, substantial ground for difference of opinion can exist where the law of the circuit has not been applied to the facts presented in a particular case. *Padilla*, 256 F. Supp.2d at 223.

The lack of controlling precedent on the jurisdictional questions identified above supports finding substantial ground for difference of opinion. Each question implicates a novel issue, "where there is a relative lack of authority on the precise question," *In re Fosamax*, 2011 WL 2566074, at *5 (internal quotation marks and citation omitted). Neither the CFPB nor the Court cited authority finding jurisdiction in the circumstances alleged here, *i.e.*, where jurisdiction over foreign defendants is premised solely on time-barred conduct, or where an agency relationship is found on mere allegations of indirect ownership (and in the case of Paul Ash and Knightsbridge, alleged *minority* ownership) over an entirely separate entity removed by several corporate layers, without piercing of the corporate veil.[6]

**C. Immediate Appeal Will Materially Advance the Termination of Litigation.**

An immediate appeal will materially advance the ultimate termination of this litigation. An appellate determination that the Court lacks personal jurisdiction over the Ash Defendants will compel dismissal, thus plainly having "the potential to end or at the minimum significantly restrict the scope of this litigation," *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012).

**<u>CONCLUSION</u>**

For the foregoing reasons, the Ash Defendants respectfully request that the Court reconsider its denial of their motion to dismiss, or alternatively, that it certify an order to make an interlocutory appeal to the Second Circuit pursuant to 28 U.S.C. § 1292(b).

---

[6] Although the Court cited to the district court case of *Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352 (S.D.N.Y. 2004) in support of its exercise of jurisdiction over the Ash Defendants, *see* Order at 16-17, the Ash Defendants respectfully submit that that case is readily distinguishable from the circumstances alleged here, *see* Reply at 9. In any event, the Order does not reference any Second Circuit decisions applying the agency test to facts analogous to those alleged here. This is sufficient to deem the jurisdictional issue a question with substantial ground for difference of opinion. *See Padilla*, 256 F. Supp.2d at 223.

Dated: New York, New York
December 16, 2016

DLA PIPER LLP (US)

By: /s/ Richard F. Hans

Richard F. Hans
richard.hans@dlapiper.com
Constance C. Tse
connie.tse@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel. (212) 335-4500
Fax (212) 335-4501

Benjamin S. Boyd, *admitted pro hac vice*
benjamin.boyd@dlapiper.com
DLA PIPER LLP (US)
500 8th Street, NW
Washington, DC 20004
Tel. (202) 799-4000
Fax (202) 799-5000

*Attorneys for Sagewood Holdings, Ltd., Knightsbridge Holdings, Ltd., Peter Ash and Paul Ash*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of December 2016, a copy of the foregoing memorandum of law was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Richard F. Hans
Richard F. Hans