UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ X

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

-against-

NDG FINANCIAL CORP., NORTHWAY FINANCIAL CORP., LTD., NORTHWAY BROKER, LTD., E-CARE CONTACT CENTERS, LTD., BLIZZARD INTERACTIVE CORP., NEW WORLD CONSOLIDATED LENDING CORP., NEW WORLD LENDERS CORP., PAYROLL LOANS FIRST LENDERS CORP., NEW WORLD RRSP LENDERS CORP., PETER ASH, SAGEWOOD HOLDINGS, LTD., KIMBERLY DETHOMAS, JEREMY SABOURIN, and WILLIAM WRIXON,

Defendants,

PETER ASH, SAGEWOOD HOLDINGS, LTD., PAUL ASH, KNIGHTSBRIDGE HOLDINGS LTD., PAUL GREHAN, 0562752 B.C. LTD., KIMBERLY DETHOMAS, EMERALD WILLOW HOLDINGS, LTD., JEREMY SABOURIN, RED RIVER HOLDINGS COMPANY LTD., WILLIAM WRIXON, and TWILLINGATE HOLDINGS LTD.,

Relief Defendants.

------------------------------------------ X

15-cv-5211 (CM)

**MEMORANDUM OF LAW IN SUPPORT OF NDG DEFENDANTS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(B)**

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

# TABLE OF CONTENTS

**Page**

ARGUMENT ........ 1

I. THE COURT SHOULD RECONSIDER ITS DECEMBER 2, 2016 ORDER........ 1

A. The FAC's Allegations Relating to The Officers/Directors Group's Control of the Jurisdictional Defendants Refer Chiefly to Conduct Before July 2012. ........ 2

B. The CFBP Has Not Alleged a Plausible Factual Basis to Find the Funding Entities and the Holding Companies Controlled the Jurisdictional Entities. ........ 4

C. The Court's Personal Jurisdiction Analysis Did Not Address NDG Financial. ........ 6

II. ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL. ........ 6

A. The Jurisdictional Issues Are Controlling Questions of Law. ........ 7

B. Substantial Ground for Difference of Opinion Exists on the Jurisdictional Questions. ........ 8

C. Immediate Appeal Will Materially Advance the Termination of the Litigation. ........ 8

CONCLUSION ........ 9

The NDG Defendants submit this memorandum in support of their Motion for Reconsideration or, in the alternative, for certification pursuant to 28 U.S.C. § 1292(b).[1]

## ARGUMENT

### I. THE COURT SHOULD RECONSIDER ITS DECEMBER 2, 2016 ORDER.

The NDG Defendants respectfully request that the Court reconsider its Order dated December 2, 2016 ("Order") finding that the CFPB plausibly alleged personal jurisdiction over DeThomas, Sabourin, Wrixon, Emerald Willow, Red River, Twillingate, NDG Financial, NWCL, NWL, PLFL, and NWRRSP. The Court should grant reconsideration of its Order "to correct a clear error." *Tolin v. AMBAC Fin. Grp., Inc.*, No. 08 CIV. 11241, 2010 WL 431971, at *1 (S.D.N.Y. Feb. 5, 2010) (granting reconsideration) (quoting *Doe v. New York City Dept. of Soc. Servs*., 709 F.2d 782, 789 (2d Cir. 1983)). Here, the Court has committed error in finding personal jurisdiction over the Officers/Directors (DeThomas, Sabourin, and Wrixon) based on allegations of conduct that largely took place outside of the statute of limitations period. The Court has also committed error in finding that the Funding Entities (NWCL, NWL, PLFL, and NWRRSP) as well as the Holding Companies (Emerald Willow, Red River, Twillingate) are subject to jurisdiction here based on their control of Northway, Northway Broker, Blizzard, and E-Care ("the Jurisdictional Entities"). Finally, the Court's opinion completely omits any discussion of personal jurisdiction over NDG Financial. This Court should therefore reconsider its decision in accord with Federal Rule of Civil Procedure 54(b) and Local Rule 6.3.

---

[1] The NDG Defendants are NDG Financial Corporation ("NDG Financial"), Northway Financial Corp., Ltd. ("Northway"), Northway Broker, Ltd. ("Northway Broker"), E-Care Contact Centers, Ltd. ("E-Care"), Blizzard Interactive Corp. ("Blizzard"), New World Consolidated Lending Corp. ("NWCL"), New World Lenders Corp. ("NWL"), Payroll Loans First Lenders Corp. ("PLFL"), New World RRSP Lenders ("NWRRSP"), Kimberly DeThomas, Jeremy Sabourin, William Wrixon, Emerald Willow Holdings, Ltd. ("Emerald Willow"), Red River Holdings Company Ltd. ("Red River"), and Twillingate Holdings Ltd. ("Twillingate").

### A. The FAC's Allegations Relating to The Officers/Directors Group's Control of the Jurisdictional Defendants Refer Chiefly to Conduct Before July 2012.

In determining whether the Court has personal jurisdiction over the Officers/Directors, the Court held that the CFPB's factual allegations "must establish that [the Jurisdictional Defendants] acted as either 'agent[s]' or 'mere departments' of the other Defendants." *See* Order at 12. In finding an agency relationship, the Court held that the CFPB must allege that the Jurisdictional Defendants "acted (1) for the benefit of, (2) with the knowledge of, (3) with the consent of, *and* (4) *under the control of*," the other Defendants. *Id.* at 16, (citing *Grove Press, Inc. v. Angleton*, 649 F. 2d 121, 122 (2d Cir. 1981)) (emphasis added).

In the Order, the Court held that any claim based on conduct that occurred prior to July 2012 is time-barred. Order at 38–42. Moreover, the facts forming the basis for personal jurisdiction must be the facts upon which liability is based. It is therefore clear error for this Court to base its finding of personal jurisdiction on conduct that occurred prior to July 2012. Yet, in determining that the FAC's allegations "clearly show that the Officers/Directors Group had knowledge of, consented to, and exercised control over, the scheme, and details their personal roles in recruiting employees, training staff, marketing the loans and managing the companies," (Order at 17), the Court relied on many factual allegations about the conduct of DeThomas, Sabourin, and Wrixon that predated July 2012. For example, the Court cited the following factual allegations in support of its finding of an agency relationship between the Jurisdictional Defendants and the Officers/Directors Group:

- "An August 2010 account review at the same institution revealed that money originating from Northway's deposit account for US consumer loan repayments was funneled to accounts belonging to Knightsbridge, 0562752 as well as to individuals with 'signing authority:' DeThomas, Sabourin, and Wrixon." FAC ¶ 227.

- DeThomas signed the 2009 NWL Offering Memorandum. FAC ¶ 231.
- DeThomas became a Director of Northway and of Northway Broker in 2009. FAC ¶¶ 232; 234.
- DeThomas, Sabourin, and Wrixon were listed as "controlling parties" in a 2010 bank review of the NDG enterprise accounts. FAC ¶ 235.
- "As of November 30, 2011, DeThomas, Sabourin, and Wrixon were authorized with signature authority for Blizzard bank accounts at a US ODFI." FAC ¶ 237.
- "On December 1, 2011, Wrixon signed a Certificate of Account Resolutions with the ODFI indicating that he was Secretary of Blizzard, with custody of its corporate records and confirming the list of individuals authorized to sign on behalf of the corporation." FAC ¶ 238.

All of these factual allegations refer to conduct that occurred before July 2012, the Court's acknowledged date limit for liability. It is therefore clear error to rely on these facts in holding that the FAC alleged a basis for specific personal jurisdiction over DeThomas, Sabourin, and Wrixon. The only specific allegations within the limitations period are the allegation that DeThomas, Sabourin, and Wrixon signed a September 30, 2013 Offering Memorandum (FAC ¶ 205–09) and that, as to Sabourin, "[o]n March 14, 2013, [he], in his capacity as Blizzard President, personally signed an agreement with a US lead generator for its services in locating potential Northway loan recipients" (FAC ¶ 241). The scarce specific allegations of post-2012 conduct, coupled with the conclusory allegations about each individuals' positions recited at FAC ¶ 72–88, are wholly insufficient to find that DeThomas, Sabourin, and Wrixon "had knowledge of, consented to, and exercised control over, the scheme . . . ." Order at 17. This

Court, therefore, should correct its error and find that it lacks personal jurisdiction over DeThomas, Sabourin, and Wrixon.

### B. The CFBP Has Not Alleged a Plausible Factual Basis to Find the Funding Entities and the Holding Companies Controlled the Jurisdictional Entities.

The FAC fails entirely to allege that either the Funding Entities or the Holding Companies controlled the Jurisdictional Entities.[2] This is not a case where a single controlling person or parent company was found to have exercised undue control over its subsidiaries. It is simply implausible to find that *all* of these companies actually exercised control over all of the Jurisdictional Entities. The Court's decision to exercise jurisdiction over these entities, therefore, was clear error. *See Gundlach v. Int'l Bus. Machines Corp.*, No. 11-CV-846, 2012 WL 1520919, at *9 (S.D.N.Y. May 1, 2012), *aff'd on other grounds sub nom. Gundlach v. Int'l Bus. Machines Inc.*, 594 F. App'x 8 (2d Cir. 2014) (warning against the use of an agency theory in which corporate affiliates engage in "a common activity" as "problematic because it would seem to apply to nearly every parent[-]subsidiary relationship").

To begin, the Court, calling this issue a "close question," cited no allegation in the FAC that suggests the Funding Entities exerted *any* control over the Jurisdictional Entities. Order at 18–19. Nevertheless, it determined that the former was the principal of the latter. The FAC contends only that the Funding Entities existed for the benefit of the Jurisdictional Entities—it contains no direct allegation about the control relationship between the two groups. Indeed, by the FAC's own terms, the Funding Entities "were established primarily as vehicles to provide

---

[2] The Order defines the Funding Entities as New World Lenders Corp. ("NWL"), New World Consolidated Lenders Corp. ("NWCL"), Payroll Loans First Lenders Corp. ("PLFL"), and New World RRSP Lenders ("NWRRSP"). Order at 5. The Jurisdictional Entities are the New York Defendants identified in the Order: Northway, Northway Broker, E-Care, and Blizzard. Order at 15. The Holding Company Entities are Emerald Willow, Red River, and Twillingate.

funding to . . . Northway." FAC ¶ 56. With respect to the control element in the agency analysis, the only reasonable inference from that statement is that Northway controlled the Funding Entities, not the other way around. In the absence of an allegation that the Funding Entities controlled the Jurisdictional Entities and in the face of a clear inference to the contrary, the Court clearly erred in finding an agency relationship where one simply does not exist.[3]

Similarly, there is no allegation in the FAC that the Holding Companies that own NDG Financial have exerted any control over the Jurisdictional Entities. Without such an allegation, to find that a mere investment holding company is the principal of the subsidiary is plainly counter to law. *See Bellomo v. Pennsylvania Life Co.*, 488 F. Supp. 744, 746 (S.D.N.Y. 1980) ("Where a holding company is nothing more than an investment mechanism[,] a device for diversifying risk through corporate acquisitions[,] the subsidiaries conduct business not as its agents but as its investments. The business of the parent is the business of investment, and that business is carried out entirely at the parent level."); *Gurvey v. Cowan, Liebowitz & Latman, PC*, No. 06 CIV.1202, 2009 WL 691056, at *4 (S.D.N.Y. Mar. 17, 2009) (same).

Indeed, a minority shareholder—which both Red River and Twillingate are—cannot be said to control a subsidiary. *See Galleli v. Crown Imports, LLC*, 701 F. Supp.2d 263, 275 (E.D.N.Y. 2010) ("The mere fact that [a nonresident defendant] is a minority shareholder . . . is not enough to establish the control necessary to show an agency relationship."). Along these lines, the Court erred to the extent it conflated the combined ownership interests, *see* Order at

[3] The cases that the Court cited in support of finding an agency relationships among corporate affiliates did not pivot on the issue of control, but rather, that of whether the corporate affiliates conferred a sufficient benefit. *See Palmieri v. Estefan*, 793 F. Supp. 1182, 1192 (S.D.N.Y. 1992); *Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 130–31 (S.D.N.Y. 1991); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988). To that end, they are not instructive on the issue of determining the issue of control.

16–17, in the control analysis. *See Gurvey*, 2009 WL 691056, at *4 ("Plaintiff has made very little effort to distinguish between the activities of the holding company and those of the subsidiaries . . . . Plaintiff's allegations, therefore, concerning business transactions within New York do not link the operative facts of this case to the holding companies themselves.").

### C. The Court's Personal Jurisdiction Analysis Did Not Address NDG Financial.

The Order did not explain why NDG Financial is subject to personal jurisdiction under the New York long-arm statute. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary does all the business which [the parent corporation] could do were it here by its own officials.") (internal quotations and punctuation omitted); *Gallelli*, 701 F. Supp. 2d at 272 ("Where the defendant over which jurisdiction is sought to be exercised is a holding company, the business of that company is the business of investment. Where a subsidiary is engaged in a completely different line of business, it cannot be said that the business of the parent is carried out by the subsidiary."). There are simply no allegations to suggest that NDG, which provided back-office services, could be deemed to be in control over the actual operating companies, such as Northway.

## II. ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL.

In the event the Court declines to reconsider its ruling, the NDG Defendants respectfully request that the Court certify its Order for interlocutory appeal. Here, certification is appropriate because the Order's findings on personal jurisdiction involve (1) "controlling question[s] of law" (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Here, there are at least two controlling questions of law that should be certified for interlocutory review: first, whether an individual defendant may be subject to specific personal jurisdiction on the basis of conduct that is time-barred by the statute of limitations; and second, whether allegations of funding and investment can establish control for the purposes of asserting specific jurisdiction under an agency theory.

### A. The Jurisdictional Issues Are Controlling Questions of Law.

Each of the identified jurisdictional issues presents a controlling question of law. "A controlling question of law exists if: (1) reversal of the district court's opinion could result in dismissal of the action, (2) reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or (3) the certified issue has precedential value for a large number of cases." *Flo & Eddie, Inc v. Sirius XM Radio Inc.*, No. 13 CIV. 5784, 2015 WL 585641, at *1 (S.D.N.Y. Feb. 10, 2015) (certifying order for interlocutory appeal). Here, if the Second Circuit reversed the district court's findings as to DeThomas, Sabourin, Wrixon, Emerald Willow, Red River, Twillingate, NDG Financial, NWCL, NWL, PLFL, and NWRRSP, those defendants would be dismissed from the action, thereby altering the scope and significantly affecting the conduct of the action. *See Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012) (finding controlling question of law presented where "there can be no question that such a ruling would 'importantly affect the conduct of [the] action'") (citation omitted).

**B. Substantial Ground for Difference of Opinion Exists on the Jurisdictional Questions.**

The second element also favors this Court's certification of the jurisdictional issues. To find a "substantial ground for a difference of opinion," there must be "genuine doubt as to whether the district court applied the correct legal standard in its order." *In re Citigroup Pension Plan ERISA Litig.*, No. 05 CIV. 5296, 2007 WL 1074912, at *2 (S.D.N.Y. Apr. 4, 2007). Indeed, courts find a substantial ground for difference of opinion "when the authority on a point of law is in conflict, or when there is a relative lack of authority on the precise question." *In re Fosmax Prods. Liab. Litig.*, No. 06 MD 1789, 2011 2566074 (S.D.N.Y. Jun. 29, 2011).

Here, there is genuine doubt as to whether the Court applied the correct legal standard in its Order and there has not been guidance from the Second Circuit on whether jurisdiction over individuals can be premised largely on time-barred conduct, or whether control can be imputed from a funding or investment relationship.

**C. Immediate Appeal Will Materially Advance the Termination of the Litigation.**

The last and "most important" factor also favors certification. *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, No. 11 CIV. 5968, 2012 WL 2952929, at *8 (S.D.N.Y. July 18, 2012) (citing *In re MBTE Products Liability Litig.*, No. MDL 1358, 2005 WL 39918, at *3 (S.D.N.Y. Jan. 6, 2005)); *see also In re Citigroup Pension Plan ERISA Litig.*, 2007 WL 1074912, at *3 (noting courts place "particular emphasis" on this factor). Here, an immediate appeal will materially advance the ultimate termination of this litigation because a finding that this Court lack personal jurisdiction over DeThomas, Sabourin, Wrixon, Emerald Willow, Red River, Twillingate, NDG Financial, NWCL, NWL, PLFL, and NWRRSP will compel their dismissal from this action. *See Fed. Hous. Fin. Agency*, 858 F. Supp. 2d at 338

(noting that a finding from the Circuit that the district court erred "has the potential to end or at a minimum significantly restrict the scope of this litigation.").

## CONCLUSION

For the reasons set forth above, the NDG Defendants respectfully request that the Court reconsider its denial of their motion to dismiss, or alternatively certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: New York, New York
December 16, 2016

DECHERT LLP

By: */s/ Jeffrey Brown*

Jeffrey Brown
Steven A. Engel
jeff.brown@dechert.com

1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Attorneys for Defendants NDG Financial Corp., Northway Financial Corp., Northway Broker Ltd., E-Care Contact Centers Ltd., Blizzard Interactive Corp., New World Consolidated Lending Corp., New World Lenders Corp., Payroll Loans First Lenders Corp., New World RRSP Lenders Corp., Kimberly DeThomas, Jeremy Sabourin, William Wrixon, Emerald Willow Holdings Ltd., Red River Holdings Company Ltd.,* and *Twillingate Holdings Ltd.*