UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------- X
CONSUMER FINANCIAL PROTECTION
BUREAU,
                Plaintiff,

  -against-                                                    15-cv-5211 (CM)

NDG FINANCIAL CORP., et al.,

                Defendants,
PETER ASH, et al.,

                Relief Defendants.
---------------------------------------------- X

# CANADIAN NDG DEFENDANTS'
# MEMORANDUM OF LAW IN OPPOSITION TO THE CFPB'S MOTIONS
# FOR VOLUNTARY DISMISSAL AND FOR SANCTIONS

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .............................................................................................................................. 4

ARGUMENT ................................................................................................................................... 6

    I.    The Court Should Deny the CFPB's Motion for Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(2). ........................................................................ 6

    II.    The Court Should Deny the CFPB's Motion for Sanctions. .................................. 8

CONCLUSION ................................................................................................................................ 9

## **TABLE OF AUTHORITIES**

**CASES**

*City of New York v. Mickalis Pawn Shop, LLC*,
 645 F.3d 114 (2d Cir. 2011)..................................................................................................9

*Integrity Elecs., Inc. v. Garden State Distributors, Inc.*,
 No. 09 CV 2367 ILG, 2010 WL 5490913 (E.D.N.Y. Dec. 8, 2010) .........................................7

*Kuruwa v. Meyers*,
 823 F. Supp. 2d 253 (S.D.N.Y. 2011).....................................................................................9

*SEC v. Lorin*,
 869 F. Supp. 1117 (S.D.N.Y. 1994).........................................................................................7

*Walpert v. Jaffrey*,
 127 F. Supp. 3d 105, 129 (S.D.N.Y. 2015).............................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(a)(2).................................................................................................................8

Fed. R. Civ. P. 41(a) ...................................................................................................................10

Rule 41(a)(2)..................................................................................................................................7

The Canadian NDG Defendants[1] respectfully oppose, object, and respond to the CFPB's motion for voluntary dismissal (Dkt. 155) and motion for sanctions (Dkt. 157).

## PRELIMINARY STATEMENT

The Consumer Financial Protection Bureau (the "CFPB" or the "Bureau") moves to dismiss with prejudice—in the apparent absent of any settlement agreement—all claims against the Sagewood Defendants,[2] and simultaneously moves for "severe" sanctions against the Canadian NDG Defendants. These motions, taken together, raise substantial questions about the fundamental fairness of the CFPB's divergent approach to each set of Defendants. If granted, the motions and resulting sanctions would place all consequence for the allegedly violative lending business on the people who owned it for only five months and voluntarily discontinued it, while it would place no consequence whatsoever on the people who owned and operated it for the prior eight years.

The only explanation—which cannot, ultimately, serve as a justification—for this asymmetry is that the Canadian NDG Defendants defaulted, and the Sagewood Defendants did not. However, the Canadian NDG Defendants' default cannot and should not be punished in this manner, both as a matter of proper procedure and of fundamental fairness. The Court should not condone this puzzling—and manifestly unjust—result, for the reasons set forth below.

First, the Canadian NDG Defendants' conduct in this matter has not been fairly described by the CFPB. The Canadian NDG Defendants' conduct has not been "willful" in any

---

[1] The Canadian NDG Defendants are: Defendants NDG Financial Corporation, E-Care Contact Centers, Ltd., Blizzard Interactive Corp., New World Consolidated Lending Corp., New World Lenders Corp., Payroll Loans First Lenders Corp., New World RRSP Lenders, Kimberly DeThomas, Jeremy Sabourin, and William Wrixon, and Relief Defendants Emerald Willow Holdings, Ltd., Red River Holdings Company Ltd., and Twillingate Holdings Ltd.

[2] The Sagewood Defendants are: Peter Ash, Paul Ash, Paul Grehan, Sagewood Holdings Ltd., Knightsbridge Holdings Ltd., and 0562752 B.C. Ltd.

meaningful sense, has certainly not been in bad faith, and nothing about their actions could fairly be construed as an offense to the CFPB or a rebuke to the Court's authority. The CFPB brought this action against the Canadian NDG Defendants at a time when their business operations were being wound down, more than a year and a half after the Canadian NDG Defendants *voluntarily* stopped making loans in the United States. At the time that U.S. lending was discontinued in January of 2014, the natural persons among the Canadian NDG Defendants—DeThomas, Sabourin and Wrixon—had owned the business for approximately five months, having purchased it in September of 2013 from Peter Ash, Paul Ash, and Paul Grehan, who owned and operated it for the previous eight years.

As a consequence of the limited ownership history and the voluntary elimination of a principal revenue stream, the corporate entities among the Canadian NDG Defendants lacked substantial assets or income at the time this case was filed. The Canadian NDG Defendants asserted what they continue to believe are meritorious jurisdictional defenses, which the Court rejected. Seeking to preserve those defenses, and lacking sufficient funds to defend the case through full-blown discovery, the Canadian NDG Defendants sought to settle the case, and to that end engaged in lengthy settlement negotiations with the CFPB. Importantly, during the course of those negotiations, the Canadian NDG Defendants voluntarily provided the CFPB with significant information on an informal basis, outside of the discovery process, about loan volume and other matters. The Canadian NDG Defendants consistently informed the CFPB that because of their financial condition and because of the need to preserve their jurisdictional defenses, at a certain point in the proceedings they would need to default if the case could not be settled.

Those settlement efforts were in good faith and were transparent, but they were not immediately fruitful. When the CFPB sought judicial intervention on discovery, the Canadian

NDG Defendants were forced to begin the default process, and counsel sought to withdraw to signal to the Court the Canadian NDG Defendants' intention to default, an intention which had already been made clear to the CFPB. Although the Court ultimately denied that withdrawal motion, we submit that it matters for present purposes that counsel's efforts to withdraw and to signal default came before—*not after*—the Court's order compelling compliance with the CFPB's discovery requests. The Canadian NDG Defendants have **never** sought to benefit from the discovery process without participating therein—they did not make a single document request or other discovery request to the CFPB. To the extent that Canadian NDG Defendants were copied on the CFPB's productions to other parties, those productions were not reviewed.

Simply put, the Canadian NDG Defendants have attempted to effectuate a principled default that preserves both their resources and their legal grounds for objecting to the Court's jurisdiction, while at all times respecting the Court and the CFPB to the greatest extent possible. The conduct of the Canadian NDG Defendants has not come remotely close to bad faith, as the CFPB alleges. Having signaled an intention to default, the Canadian NDG Defendants anticipated that absent settlement, a default judgment would be entered against them, but expected—and were entitled to expect—that the judgment would be fair.

Now that the CFPB has dismissed entirely the case against the entities and individuals that owned and operated the business for approximately eight years—as contrasted with the five months the Canadian NDG Defendants ran it—the only fair judgment against the Canadian NDG Defendants would be no judgment at all. There is no good, just or appropriate reason that these two sets of parties should be treated so entirely differently, and there is certainly no basis in the record, properly viewed through a dispassionate lens, to explain why, if the CFPB believes that it is in the interests of justice to dismiss the case against the Sagewood Defendants, that it is not in

the interests of justice to do the same for the Canadian NDG Defendants. Fairness demands that the Canadian NDG Defendants also have the claims dismissed against them with prejudice.

Should the Court disagree, procedural considerations demand that the CFPB's motion to dismiss the claims against the Sagewood Defendants pursuant to Rule 41(a)(2) be denied. Even if Rule 41(a)(2) were the appropriate mechanism for the dismissal of some defendants in a multi-defendant case (we submit that it is not), as the CFPB acknowledges, that Rule permits such dismissal only if it would not prejudice any defendant. It would manifestly prejudice the Canadian NDG Defendants to be left alone in this case to shoulder a judgment that by any analysis should be shared on a joint and several basis with the Sagewood Defendants.

The proper procedural mechanism to dismiss some, but not all, defendants, is to amend the Complaint pursuant to Rule 15(a)(2), a motion that the CFPB makes in the alternative. To the extent that the Court is inclined to grant the CFPB's motion to dismiss, and is not inclined to also dismiss the Canadian NDG Defendants, such dismissal should be pursuant to Rule 15(a), which dismissal will then mandate the denial of the CFPB's motion for sanctions, as upon amendment the Canadian NDG Defendants will not be in default. The Canadian NDG Defendants do not oppose amendment in this fashion.

## BACKGROUND

Shortly before midnight on November 21, 2017, the CFPB filed motions to voluntarily dismiss Peter Ash, Paul Ash, Paul Grehan, and their affiliated holding companies, including Sagewood Holdings Ltd. Dkt. 155. Minutes later, the CFPB filed a motion for sanctions against the Canadian NDG Defendants including a default judgment. Dkt. 157. The CFPB filed those motions on the eve of the Thanksgiving holiday and days before the CFPB found itself in the midst of a political and legal firestorm surrounding the succession of its now-former director,

Richard Cordray. *See* Brown Decl., Ex. E. The political turmoil would appear to raise questions about not only the constitutionality of any action taken in the coming days by the CFPB, but also about whether any particular action actually represents the true will of the agency. *See id.* (explaining that the President's appointed director instructed the CFPB's staff to "[p]lease disregard" any instructions from the former director's appointed replacement).

The CFPB's motion for sanctions asks the Court to render a default judgment against the Canadian NDG Defendants and to preclude the Canadian NDG Defendants from offering evidence that would frame or contextualize the size and scope of any potential default judgment. Dkts. 157, 158. The basis of those sanctions, the CFPB contends, is the Canadian NDG Defendants' failure to comply with the Court's discovery order dated July 20, 2017. *Id.* Undeniably, the Canadian NDG Defendants have not responded to the CFPB's document requests, having signaled an intent to default and sought to withdraw from the case prior to the entry of that order. *See* Dkt. 138.

The CFPB can hardly claim that the Canadian NDG Defendants have singlehandedly prevented them from engaging in discovery in this case. Since moving to compel (Dkt. 146), the CFPB has not vigorously sought discovery from the Canadian NDG Defendants or, it appears, from third parties. For example, on October 24, 2017, the CFPB unilaterally and without explanation cancelled the scheduled depositions of various third parties. Brown Decl., Ex. B. The CFPB likewise cancelled scheduled depositions of the Canadian NDG Defendants one week later. Brown Decl., Ex. C. Most notably, the CFPB has never even noticed depositions of the Sagewood Defendants it now seeks to dismiss.

Throughout the pendency of this case, the Canadian NDG Defendants have tried seriously and in good faith to discuss settlement with the CFPB. *See e.g.*, Brown Decl., Ex. A.

On November 14, 2017, undersigned counsel emailed counsel for the CFPB and reiterated the Canadian NDG Defendants' willingness to settle the lawsuit.  Brown Decl., Ex. D.  Counsel responded that the CFPB had "no plans to re-enter settlement negotiations with the Canadian NDG Defendants."

The CFPB has provided no explanation – not to the Court, and certainly not to us—for why it is treating the Sagewood Defendants so differently from the Canadian NDG Defendants, and based on the allegations in the Amended Complaint, there is no justifiable reason to do so.  As the Amended Complaint alleges, the Sagewood Defendants owned and operated the relevant payday lending business for at least eight years—from 2005 until they sold the businesses to Emerald Willow Holdings, Ltd. ("Emerald Willow"), Red River Holdings Company ("Red River"), and Twillingate Holdings Ltd. ("Twillingate") on September 1, 2013.  Dkt. 47, ¶¶ 9-16.  In contrast, the Canadian NDG Defendants owned and operated the relevant payday lending businesses for approximately five months before those businesses ceased lending in the U.S. in January 2014.  *See e.g.*, Dkt. 47, ¶¶ 53, 76, 166, 184 (confirming that the payday lending businesses ceased operations in 2014).

## ARGUMENT

I.  **The Court Should Deny the CFPB's Motion for Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(2).**

The Canadian NDG Defendants object to the CFPB's motion for voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(2), and for the reasons stated below, respectfully submit that the Court should deny that motion, or, in the alternative, grant it only on condition that the Canadian NDG Defendants also be dismissed.  Rule 41(a) is not the proper vehicle for dismissal of some defendants in a multi-defendant case.  Rule 41(a) by its literal terms applies only to the dismissal of "*an action*" and the caselaw construing the Rule addresses circumstances in which dismissal

of all, not some, defendants, is sought. Fed. R. Civ. P. 41(a)(2) (emphasis added); *cf. Integrity Elecs., Inc. v. Garden State Distributors, Inc.*, No. 09 CV 2367 ILG, 2010 WL 5490913, at *2 (E.D.N.Y. Dec. 8, 2010).

Even if the Court is not satisfied that the Rule on its face bars the instant motion for partial dismissal, the motion should nonetheless be denied because dismissal of the Sagewood Defendants results in undue and unfair prejudice to the Canadian NDG Defendants. Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). A motion pursuant to Rule 41(a)(2) should be denied where "dismissal of the action will be unduly prejudicial to the defendants." *SEC v. Lorin*, 869 F. Supp. 1117, 1119 (S.D.N.Y. 1994) (citing *Wainwright Secs. Inc. v. Wall St. Transcript Corp.,* 80 F.R.D. 103, 105 (S.D.N.Y. 1978) (emphasis omitted).

The terms of dismissal proposed here are both improper and prejudicial, and should be rejected. The CFPB has always alleged that the Sagewood Defendants and the Canadian NDG Defendants constituted, and operated, a common enterprise, and sought to impose joint and several liability between and among them for the alleged conduct on that basis. *See* Dkt. 47 ¶ 107. Dismissal of the Sagewood Defendants—who by the Amended Complaint's plain terms were responsible for the vast majority of the allegedly unlawful conduct—would necessarily and substantially prejudice the Canadian NDG Defendants, who would be left to absorb alone a judgment that punishes them unfairly for the alleged wrongdoing of parties who were dismissed without explanation or justification.

To the extent the Court is inclined to permit the CFPB to dismiss only the Sagewood Defendants and to continue the litigation against the Canadian NDG Defendants, the Court should not effectuate that dismissal pursuant to Rule 41 but rather should grant the CFPB's

motion, made in the alternative, to amend its Amended Complaint only to name the Canadian NDG Defendants. Such amendment, pursuant to Fed. R. Civ. P. 15(a)(2), is the better method to accomplish the CFPB's goal.

## II.   The Court Should Deny the CFPB's Motion for Sanctions.

For all of the reasons previously stated, the harsh sanctions sought by the CFPB against the Canadian NDG Defendants cannot be explained in light of the complete absence of any sanction against the Sagewood Defendants. The CFPB's motion should be denied, therefore, on the basis of fairness alone. At the very least, the CFPB should be called upon to explain its actions.

Even if, however, the disparate and unfair treatment of the Canadian NDG Defendants is not in the Court's view reason enough to deny the motion, there is a separate and elemental reason why it must be denied: After amendment of the complaint, the conditions of default that form the basis for the sanctions motion will no longer exist. A new complaint, the Second Amended Complaint, naming only the Canadian NDG Defendants, will be filed, and pursuant to Rule 15(a)(3) the Canadian NDG Defendants will have 14 days to respond.

Further, if the Court determines that the "extreme sanction" of a default judgment at this stage is warranted, the Court should not further punish the Canadian NDG Defendants by precluding them from confronting the CFPB's factual and legal arguments in advance of a Rule 55 determination. *See Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 129 (S.D.N.Y. 2015) ("[O]nce the court determines that [Defendants'] noncompliance warrants an entry of default judgment pursuant to Rule 37, the Court must follow the procedure for entry of a default judgment as set forth in [Rule 55].") (internal quotations

omitted).  In light of all the foregoing concerns expressed regarding the unfair and disparate treatment of the two sets of defendants, the Court should deny the CFPB's request to preclude the Canadian NDG Defendants from offering arguments in connection with the calculation of consumer harm.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (explaining that prior to entering a default judgment, a court must determine whether the plaintiff's allegations establish the defendant's liability as a matter of law); *Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011) (explaining a court must ensure that there is a basis for the damages specified in the default judgment).

## CONCLUSION

For the foregoing reasons, the Canadian NDG Defendants respectfully request that the Court (i) deny the CFPB's motion for sanctions pursuant to Rule 41(a)(2); (ii) permit the CFPB, if the Court determines dismissal of the entire Amended Complaint is not warranted, to amend the Amended Complaint pursuant to Rule 15(a)(2); (iii) deny the CFPB's motion for sanctions; and (iv) in the event the Court determines a default judgment is warranted at this stage, permit the Canadian NDG Defendants to make respond and make submissions in advance of a Rule 55 determination.

Dated: New York, New York
November 28, 2017

    /s/ *Jeffrey Brown*
Jeffrey Brown
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Email: jeffrey.brown@dechert.com

*Attorneys for Defendants NDG Financial Corp., E-Care Contact Centers Ltd., Blizzard Interactive Corp., New World Consolidated Lending Corp., New World Lenders Corp., Payroll Loans First Lenders Corp., New World RRSP Lenders Corp., Kimberly DeThomas, Jeremy Sabourin, William Wrixon, Emerald Willow Holdings Ltd., Red River Holdings Company Ltd.,* and *Twillingate Holdings Ltd.*