UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff,

-against- 15-cv-5211 (CM)

NDG FINANCIAL CORP., et al.,

Defendants,

PETER ASH, et al.,

Relief Defendants.
------------------------------------------ X

**CANADIAN NDG DEFENDANTS'**
**SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO THE BUREAU'S**
**MOTIONS FOR VOLUNTARY DISMISSAL AND FOR SANCTIONS**

# TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................ 1

I. THE VOLUNTARILY DISMISSAL OF THE SAGEWOOD DEFENDANTS WOULD UNDULY PREJUDICE THE CANADIAN NDG DEFENDANTS................. 3

A. The Bureau's Dismissal Motion Concedes That The First Amended Complaint Lacks Merit With Respect to the Canadian NDG Defendants............. 3

B. This Court Should Not Ignore The Prejudice That Dismissal Of The Sagewood Defendants Would Have On The Canadian NDG Entities. ................. 5

II. ANY DEFAULT JUDGMENT AGAINST THE CANADIAN NDG DEFENDANTS BASED ON THE FIRST AMENDED COMPLAINT WOULD BE UNSEEMLY AND ABSURD........................................................ 8

CONCLUSION........................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajami v. Saab*,
No. 08-12088, 2012 WL 5906399 (E.D. Mich. Nov. 26, 2012)............................................10

*CFPB v. NDG Fin. Corp.*,
No. 15-CV-5211 (CM), 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016),
*reconsideration denied*, No. 15-CV-5211 (CM), 2016 WL 7742784 (S.D.N.Y.
Dec. 19, 2016).....................................................................................................4

*Cty. of Santa Fe, N.M. v. Pub. Serv. Co. of New Mexico*,
311 F.3d 1031 (10th Cir. 2002) ..........................................................................6

*Farberware, Inc. v. Groben*,
1991 WL 123964 .............................................................................................9, 10

*Frow v. De La Vega*,
82 U.S. 552 (1872).......................................................................................9, 10, 11

*Lan v. Time Warner, Inc.*,
No. 11 CIV 2870, 2016 WL 6778180 (S.D.N.Y. Oct. 18, 2016) .............................................6

*Milani v. OneWest Bank FSB*,
No. 11 cv 768, 2011 WL 13217839 (N.D. Ga. Oct. 12, 2011), *aff'd sub nom.*
*Milani v. One W. Bank FSB*, 491 F. App'x 977 (11th Cir. 2012)..........................................10

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986)....................................................................................3

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).......................10

*SEC v. Lorin*,
869 F. Supp. 1117 (S.D.N.Y. 1994).......................................................................6

*Small v. Nobel Biocare*,
No. 06 cv 683, 2012 WL 4017305 (S.D.N.Y. Sept. 7, 2012) ..................................................6

**Statutes**

12 U.S.C. § 5511...........................................................................................1

**Other Authorities**

Rule 41(a)(2) of the Federal Rules of Civil Procedure ........................................................3, 5, 6, 11

Given the uncertainty regarding whether the Court would grant the Canadian NDG Defendants'[1] request for an extension of time to respond to the Bureau's motions for voluntary dismissal and for sanctions,[2] the Canadian NDG Defendants made an initial submission to signal its opposition to the Bureau's unprecedented maneuver. *See* Dkts. 162-163, Declaration of Jeffrey Brown; Dkt. 164, Canadian NDG Defendants' Memorandum of Law ("NDG Mem."). After the initial filing deadline had passed, the Court subsequently granted the Canadian NDG Defendants another week to respond to the Bureau's motions, Dkt. 165, and in compliance with that order, the Canadian NDG Defendants respectfully submit this brief memorandum of law to supplement and clarify their November 28, 2017 opposition.

**ARGUMENT**

There can be no other interpretation of the Bureau's actions than that the Bureau has abandoned the merits of this case. It has moved to voluntarily dismiss, with prejudice, the Sagewood Defendants, who are alleged to have owned, controlled, and profited from the relevant payday lending business for some eight years. In stark contrast, the Bureau has simultaneously moved for multiple, self-described "severe" sanctions against the Canadian NDG Defendants. The Bureau's motions make clear that the agency's unprecedented maneuver has nothing to do with its mandate to ensure that "consumers are protected from unfair, deceptive, or abusive acts and practices." 12 U.S.C. § 5511. While the Bureau is clearly seeking to inflict a maximum penalty on the Canadian NDG Defendants through its sanctions motion, its unexplained request

[1] All capitalized terms have the same definition as those used in the Canadian NDG Defendants' memorandum of law dated November 29, 2017, Dkt. 164.

[2] Because the Bureau filed its motions right before the Thanksgiving holiday, the Canadian NDG Defendants requested an extension of time to respond. *See* Dkt. 161. With their request still pending before the Court, the Canadian NDG Defendants made a filing so that if the Court declined the request, the Canadian NDG Defendants would not be deemed to have waived any opposition. *See* Dkts. 162-164.

to dismiss the Sagewood Defendants with prejudice makes clear that the sanctions sought have nothing to do with the underlying allegations in the First Amended Complaint. That pleading alleges that the Sagewood Defendants and the Canadian NDG Defendants participated in a "common enterprise" that subjected consumers to unfair, deceptive, or abusive acts. Because a dismissal of the Sagewood Defendants with prejudice would function as a favorable adjudication on the merits, the Bureau's motion effectively concedes that its allegations against all parties in the "common enterprise" have no merit.

Seeking "extreme" sanctions, as the Bureau does here, is undeniably improper and prejudicial to the sanctioned defendants if there is, in fact, a just reason for dismissing the unsanctioned defendants that would apply equally, but for their default, to the sanctioned defendants. On the current record, where no explanation has been provided by the Bureau, and one can only assume that the Sagewood Defendants have been dismissed for a just and good reason, justice and logical consistency require the corresponding dismissal, with prejudice, of the Canadian NDG Defendants. Instead, the Bureau asks this Court to levy multiple sanctions: subjecting the Canadian NDG Defendants to a default judgment of unknown magnitude, preventing them from introducing any evidence that might reduce such a judgment, and applying an adverse inference that any withheld evidence would corroborate the Bureau's allegations of consumer harm—even though the Bureau's own actions raise serious questions about whether any judgment at all is just and appropriate.

Even assuming, despite recent Bureau conduct to the contrary, that the case has merit and that *some* sanction is appropriate against the Canadian NDG Defendants, the sanctions the Bureau seeks lack all proper measure to the Canadian NDG Defendants' conduct, at least as

measured relative to the Sagewood Defendants.[3] The Canadian NDG Defendants stopped the company's lending operations in the United States only months after they assumed ownership from the Sagewood Defendants, who owned and operated the business for the prior eight years. To subject the Canadian NDG Defendants to substantive liability for the entirety of the conduct in the First Amended Complaint is a result that is unjustifiably divergent and wholly inconsistent with the interest of justice. Accordingly, if the Court is inclined to grant the Bureau's dismissal motion without a corresponding dismissal of the Canadian NDG Defendants, the Court should require the Bureau to substantively amend its pleading so that the revised pleading is narrowly tailored to the Canadian NDG Defendants and accounts for the agency's concession that all allegations in the First Amended Complaint as to the "NDG Enterprise" lack any merit.

## I. The Voluntarily Dismissal Of The Sagewood Defendants Would Unduly Prejudice The Canadian NDG Defendants.

### A. <u>The Bureau's Dismissal Motion Concedes That The First Amended Complaint Lacks Merit With Respect to the Canadian NDG Defendants.</u>

By seeking to dismiss the Sagewood Defendants with prejudice via Rule 41(a)(2) of the Federal Rules of Civil Procedure, the Bureau effectively concedes that the allegations of the First Amended Complaint ("FAC") have no merit with respect to the Canadian NDG Defendants. "A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant." *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986). What the Bureau's motion conveniently ignores, however, is the fact that the First Amended Complaint alleges that the

[3] To be clear, none of the arguments contained in these opposition papers should be construed to argue that some liability or sanction should apply to the defendants the Bureau proposes to dismiss. Their dismissal without sanction is appropriate, if effectuated through the proper procedural means; that is, a procedural means that removes from the First Amended Complaint allegations regarding their conduct. The argument is simply that the Bureau's motion to dismiss them has significance to the Court's analysis of whether sanctions should be imposed upon the remaining defendants. As discussed herein, it is clearly significant and undermines any request for sanctions.

Sagewood Defendants are liable for the *same exact conduct* as the Canadian NDG Defendants. For example:

- The Bureau alleges that Sagewood and Peter Ash "materially participated in the affairs of NDG Financial, New Northway, and the NDG Enterprise" such that they were also liable for the alleged unfair, deceptive, and abusive acts set forth in the First Amended Complaint. *See* Dkt. 47, FAC ¶ 68.

- The Bureau alleges that Sagewood, Peter Ash, Knightsbridge, Paul Ash, 0562752, and Grehan operated a "common enterprise" with the Canadian NDG Defendants (defined as "the NDG Enterprise"), and so were "jointly and severally liable" for all acts in the FAC. *Id.* ¶¶ 105, 107.

- The Bureau alleges that the NDG Enterprise, which includes both the Sagewood Defendants and the Canadian NDG Defendants, "work together as a seamless unit, all in support of the overall payday lending operation." *Id.* ¶ 121; *see also id.* ¶ 147 (alleging loan repayments were wired through Sagewood, Knightsbridge, and 0562752 accounts); *id.* ¶ 230 (alleging the original owners, Peter Ash, Paul Ash, and Paul Grehan, maintained control over the NDG Enterprise).

*See also* Dkt. 164, NDG Mem. at 7. Furthermore, individual defendants DeThomas, Wrixon, and Sabourin were added to the First Amended Complaint at the same time as Peter Ash, and Judge McMahon's opinion denying the various motions to dismiss found that the First Amended Complaint plausibly alleged personal liability by these four individuals. *See CFPB v. NDG Fin. Corp.*, No. 15-CV-5211 (CM), 2016 WL 7188792, at *18 (S.D.N.Y. Dec. 2, 2016), *reconsideration denied*, No. 15-CV-5211 (CM), 2016 WL 7742784 (S.D.N.Y. Dec. 19, 2016).

The Bureau's motion does not even pretend that its pleading distinguishes between the Sagewood Defendants and the Canadian NDG Defendants, or that information has come to light through discovery disproving its allegations with respect to the Sagewood Defendants. In fact, the only distinction the Bureau makes between the two groups of defendants concerns conduct *in this litigation*, not the underlying actions alleged in the First Amended Complaint. Thus,

regardless of whether Rule 41(a)(2) is the correct vehicle for the Bureau's requested relief,[4] by seeking to dismiss the Sagewood Defendants with prejudice, the Bureau concedes that its allegations of unfair, deceptive, and abusive acts by "the NDG Enterprise" have no merit.

Accordingly, because the First Amended Complaint makes no meaningful distinction between the actions of the Sagewood Defendants and the Canadian NDG Defendants, if the Court is inclined to grant the Bureau's motion to voluntarily dismiss the Sagewood Defendants with prejudice, and it should be so inclined, it should grant that same relief to that the Canadian NDG Defendants.

B. This Court Should Not Ignore The Prejudice That Dismissal Of The Sagewood Defendants Would Have On The Canadian NDG Entities.

The Bureau's motion presents an issue of first impression in this Circuit: whether the Bureau can pursue, under Rule 41(a)(2), the voluntary dismissal with prejudice of certain defendants alleged to have participated in a common enterprise with parties that would remain in the action and who would be left to bear the total liability of the alleged common enterprise. *See* Dkt. 164, NDG Mem. at 6-7. Indeed, the authority cited by the Bureau in its papers provides no meaningful insight. *See* Dkt. 166, Bureau Reply Mem. at 5. Neither case cited is analogous to the circumstances presented here. *Seidman v. Chobani* did not even involve a dismissal of one defendant at the expense of the other; there, the plaintiff only sought to dismiss certain claims that were asserted against both defendants. *See* No. 14 cv 4050, 2016 WL 1271066 (S.D.N.Y. Mar. 29, 2016). In *Small v. Nobel Biocare USA*, while the plaintiff sought to dismiss a patent infringement claim against two defendants in a multi-defendant action, the operative pleading did not allege any common undertaking or common enterprise among the many defendants. *See*

[4] *See* Dkt. 164, NDG Mem. at 6-7.

No. 06 cv 683, 2012 WL 4017305 (S.D.N.Y. Sept. 7, 2012); *see also* Second Amended Complaint, *Small v. Nobel Biocare*, 2012 WL 4017305 (S.D.N.Y. Sept. 7, 2012) (No. 06 cv 683).

As noted in both the Bureau's dismissal motion and in the Canadian NDG Defendants' prior memorandum, the operative inquiry for the Court is whether "dismissal of the action will be unduly prejudicial to defendants." *SEC v. Lorin*, 869 F. Supp. 1117, 1119 (S.D.N.Y. 1994).[5] And by arguing that the Canadian NDG Defendants will not be unduly prejudiced by dismissal of the Sagewood Defendants, the Bureau acknowledges that prejudice to the Canadian NDG Defendants is relevant to the Court's analysis. While the Second Circuit has not outlined factors to guide the analysis of prejudice in this context, the Tenth Circuit has stated that "among the factors to be considered by the district court in making this evaluation are: 'the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; *insufficient explanation of the need for a dismissal*; and the present stage of litigation.'" *Cty. of Santa Fe, N.M. v. Pub. Serv. Co. of New Mexico*, 311 F.3d 1031, 1048 (10th Cir. 2002) (emphasis added). This Court cannot ignore the impact that a dismissal with prejudice would have on the Canadian NDG Defendants, and the Bureau's failure to explain why the Sagewood Defendants should be dismissed should be a critical factor in that analysis. *See id*. (reversing district court's voluntary dismissal of action with prejudice because the dismissal

[5] In seeking a dismissal with prejudice, rather than a dismissal without prejudice, the Bureau conveniently seeks to bypass any inquiry into the *Zagano* factors – one of which analyzes whether a plaintiff's motion to voluntarily dismiss involves "undue vexatiousness" by the movant. *Lan v. Time Warner, Inc.*, No. 11 CIV 2870, 2016 WL 6778180, at *5 (S.D.N.Y. Oct. 18, 2016), *report and recommendation adopted*, 2016 WL 6779526 (S.D.N.Y. Nov. 15, 2016) (considering whether the *Zagano* factors apply to a Rule 41(a)(2) motion to voluntarily dismiss claims with prejudice).

"would adversely impact another party to the litigation") (citing *SEC v. Lorin*, 869 F. Supp. 1117 (S.D.N.Y. 1994)).

The Bureau errs in arguing that, by defaulting earlier this year, the Canadian NDG Defendants somehow consented to entry of a default judgment reflecting responsibility for every act alleged in the First Amended Complaint. The Canadian NDG Defendants chose to default due to their limited resources and anticipated that, following a resolution of the case against the Sagewood Defendants, any default judgment against the Canadian NDG Defendants would be fair and properly cabined by appropriate considerations, including (but not limited to) whether the Sagewood Defendants were liable at all, each defendant's culpability, and the operation of the statute of limitations. *See* Dkt. 164, NDG Mem. at 3. Now, however, the Bureau seeks to voluntarily dismiss, with prejudice, parties it alleged to be in a common enterprise with the Canadian NDG Defendants so that the Bureau can pursue an outsized default judgment against the Canadian NDG Defendants. In its corresponding motion for sanctions, the Bureau argues that the Canadian NDG Defendants should be precluded from introducing any evidence that could potentially reduce that judgment—giving the Bureau wide latitude to penalize the Canadian NDG Defendants not for the conduct alleged in the First Amended Complaint but for their conduct in this litigation.[6] In view of the Bureau's actions, under no circumstances can the Court view the Sagewood Defendants' dismissal as posing no prejudice to the Canadian NDG Defendants.

As an alternative, the Bureau requests leave to amend the First Amended Complaint to remove the Sagewood Defendants "from any claims that are specific to them." Dkt. 166, Bureau

[6] The Bureau cites no authority whatsoever for the proposition that it is entitled to multiple sanctions against the Canadian NDG Defendants.

Reply Mem. at 5-6. However, none of the claims in the First Amended Complaint is "specific" to the Sagewood Defendants. The First Amended Complaint instead speaks broadly of "Defendants' actions" and only distinguishes certain parties in Count VI (representations regarding consequences of non-payment) and Count IX (the count naming relief defendants). If the Bureau is granted leave to amend the First Amended Complaint, this Court should require it do more than simply delete the Sagewood Defendants from the caption. The Bureau should be forced to submit a new pleading that is narrowly tailored to the actions of the Canadian NDG entities, revises all allegations concerning the "common enterprise," and accounts for the Bureau's concession that its prior pleading had no merit.

## II. Any Default Judgment Against The Canadian NDG Defendants Based On The First Amended Complaint Would Be Unseemly And Absurd.

Despite the Bureau's unequivocal signal that its claims against the "the NDG enterprise" are meritless, the Bureau has nevertheless asked this Court to enter a default judgment of unknown magnitude against the Canadian NDG Defendants, which include individuals who are alleged to have owned and controlled the relevant business for only five months before the business stopped lending in the United States. *See* Dkt. 164, NDG Mem. at 5. The Bureau argues that its motion for sanctions is justified because the current posture "is a problem entirely of [the Canadian NDG Defendants'] own making," Dkt. 166, Bureau Reply Mem. at 1, and the sanction is necessary to "restore the Bureau to the position it would have occupied absent" the Canadian NDG Defendants' default, Dkt. 158, Bureau Sanctions Mem. at 1. But the truth is much more complicated than the Bureau presents. The Bureau unilaterally cancelled depositions of the Canadian NDG Defendants and of third parties one week before their scheduled dates. Dkt. 162-2, Dkt. 162-3. Further, after pursuing letters rogatory in Canada in support of its discovery efforts for the better part of this year, the Bureau suddenly withdrew from that

proceeding after running into difficulties there. Thus, while the Bureau presents its difficulties in prosecuting this case as a result of the Canadian NDG Defendants' failure to respond to document requests, the truth is that its own difficulties and mis-steps in litigating abroad appear to have played as great a role as any other factor.

To subject the Canadian NDG Defendants to the entire burden of the conduct alleged in the First Amended Complaint, when the Bureau has acknowledged the meritlessness of those allegations, would be "unseemly and absurd, as well as unauthorized by law." *Frow v. De La Vega*, 82 U.S. 552, 554 (1872). In *Frow*, a plaintiff accused 14 defendants of engaging in a fraud involving real property. One of those defendants defaulted early in the litigation. *Id.* However, the case proceeded against the remaining 13 defendants, and the trial court ultimately dismissed the claims against those defendants, finding them meritless. *Id.* The trial court nevertheless entered a default judgment against the lone defaulting defendant, who appealed. *Id.* The Supreme Court reversed the default judgment, explaining:

> If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. ***Such a state of things is unseemly and absurd, as well as unauthorized by law.***

*Id.* (emphasis added).

*Frow* remains good law and applies whether the defendants are jointly liable or are similarly situated in the complaint. *See Farberware, Inc. v. Groben*, 1991 WL 123964, at fn. 4 (S.D.N.Y. July 3, 1991). In *Hudson v. Universal Pictures Corp.*, for example, a plaintiff sued for copyright infringement against multiple defendants, one of which defaulted. 2004 U.S. Dist. LEXIS 11508 (E.D.N.Y. Apr. 29, 2004). The non-defaulting defendants moved for summary

judgment, and at the same time, the plaintiff sought a default judgment against the defaulting defendant. Magistrate Judge Block found the plaintiff's claims to be meritless and granted the motion for summary judgment. *Id.* at *14-15. Citing *Frow*, the magistrate judge explained he could not grant a default judgment against a defaulting defendant "when claims against similarly situated co-defendants have been found to be meritless . . . ." *Id.* The magistrate judge, instead, granted the defaulting defendant summary judgment *sua sponte*. *Id.*

Courts extend the *Frow* doctrine to cases in which they dismissed all defendants except for a defendant against whom a default judgment was sought. *See e.g., RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 415 (S.D.N.Y. 2009), *aff'd,* 387 F. App'x 72 (2d Cir. 2010) (denying motion for default judgment against defaulting defendant after dismissing claims against all appearing defendants); *Milani v. OneWest Bank FSB*, No. 11 cv 768, 2011 WL 13217839, at *4 (N.D. Ga. Oct. 12, 2011), *aff'd sub nom. Milani v. One W. Bank FSB,* 491 F. App'x 977 (11th Cir. 2012) (same); *Ajami v. Saab,* No. 08-12088, 2012 WL 5906399, at *1 (E.D. Mich. Nov. 26, 2012) (denying motion for default judgment after plaintiff voluntarily dismissed the lone-appearing defendant).

As already discussed above and in the Canadian NDG Defendants' prior submission, the First Amended Complaint offers no meaningful difference between the conduct of the Sagewood Defendants and the conduct of the Canadian NDG Defendants. Indeed, the First Amended Complaint alleged that "[b]ecause [the Sagewood Defendants and Canadian NDG Defendants] have operated as a common enterprise, each of the [defendants] is jointly and severally liable for the acts and practices alleged . . . ." Dkt. 47, FAC ¶ 107. The Bureau now asks the Court, without any explanation, to sign one order dismissing the entities and individuals who owned and operated the "common enterprise" for eight years and another order of judgment against the

entities and individuals who owned and operated the "common enterprise" for just five months. Such a course would be an "absurdity," and the Court should not allow it. *Frow*, 82 U.S. at 554.

Indeed, one of the clearest indications that the Bureau's motions are entirely divorced from reality and the interests of justice is the Bureau's own request for an adverse inference that any evidence the Canadian NDG Defendants "withheld" would corroborate the Bureau's allegations of consumer harm. Dkt. 158, Bureau Sanctions Mem. at 11. The Bureau's unexplained request to voluntarily dismiss the Sagewood Defendants with prejudice belies the existence of inculpatory evidence that proves the Bureau's allegations of consumer harm. If such material existed, then the Bureau would not agree to voluntarily dismiss, with prejudice, the Canadian NDG Defendants' counterparts in the "NDG enterprise." The better inference from all of the facts and circumstances is ultimately the opposite of the inference argued by the Bureau.

If the Court is inclined to sanction the Canadian NDG Defendants through a default judgment—and we submit under *Frow* that the Court should not be so inclined—the only fair means of doing so would be through the substantive amendment of the First Amended Complaint. An amended pleading directed only at the Canadian NDG Defendants would limit the prejudice of partial dismissal by preventing the Bureau from extracting an outsize judgment based on allegations of a common enterprise acknowledged by the Bureau to have no merit. Such a result would be the only way—and, we respectfully submit, not a complete way—to avoid the absurdity counseled against in *Frow*.

## CONCLUSION

For the foregoing reasons, the Canadian NDG Defendants respectfully request that the Court (i) either grant the Canadian NDG Defendants the same relief under Rule 41(a)(2) as the Sagewood Defendants or deny the Bureau's Rule 41(a)(2) dismissal motion and order that the dismissal be effectuated through a substantive Rule 15 amendment to the First Amended

Complaint; (ii) reject any motion for a default judgment against the Canadian NDG Defendants as premised on the allegations of the First Amended Complaint; (iii) require the Bureau to amend its pleading so that any allegations of liability are narrowly tailored to the Canadian NDG Defendants so that any default judgment is fair and transparent, and (iv) reject the Bureau's remaining requests for sanctions.

Dated: New York, New York
December 5, 2017

*/s/ Jeffrey Brown*
Jeffrey Brown
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Email: jeffrey.brown@dechert.com

*Attorneys for Defendants NDG Financial Corp., E-Care Contact Centers Ltd., Blizzard Interactive Corp., New World Consolidated Lending Corp., New World Lenders Corp., Payroll Loans First Lenders Corp., New World RRSP Lenders Corp., Kimberly DeThomas, Jeremy Sabourin, William Wrixon, Emerald Willow Holdings Ltd., Red River Holdings Company Ltd.,* and *Twillingate Holdings Ltd.*