```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CONSUMER FINANCIAL PROTECTION        :
BUREAU,                              :
                                     :
                    Plaintiff,       :       15 Civ. 5211 (CM) (RWL)
                                     :
         - against -                 :
                                     :       REPORT AND
                                     :       RECOMMENDATION
NDG FINANCIAL CORP. et al.,          :
                                     :
                    Defendants.      :
------------------------------------------------------------X
```

ROBERT W. LEHRBURGER, United States Magistrate Judge.

**TO THE HONORABLE COLLEEN MCMAHON, U.S.D.J.:**

Pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, Plaintiff Consumer Financial Protection Bureau ("CFPB") moves for sanctions against Defendants NDG Financial Corp., E-Care Contact Centers, Ltd., Blizzard Interactive Corp., New World Consolidated Lending Corp., New World Lenders Corp., Payroll Loans First Lenders Corp., New World RRSP Lenders Corp., Kimberly DeThomas, Emerald Willow Holdings, Ltd., Jeremy Sabourin, Red River Holdings Company, Ltd., William Wrixon, and Twillingate Holdings, Ltd. (the "Canadian NDG Defendants"), based on their failure to comply with discovery. For the reasons set forth below, I recommend that CFPB's motion be GRANTED in part and DENIED in part.

## Background

The alleged facts underlying this action have been set forth in previous decisions of the Court, including the Decision and Order Denying Defendants' Motion to Dismiss. *Consumer Financial Protection Bureau v. NDG Financial Corp.* (*NDG Financial*), No. 15 Civ. 5211, 2016 WL 7188792, at *1-5 (S.D.N.Y. Dec. 2, 2016), Dkt. 98. Most relevant to

1

this motion, however, are procedural facts. A brief summary of the factual and procedural background follows.

A. Factual Background

CFPB initiated this action against twenty-one interconnected corporations and individuals that allegedly operated a cross-border online payday lending scheme from 2005 to 2013. The scheme primarily involved making loans to U.S. consumers in violation of state usury laws and then using unfair, deceptive, and abusive practices to collect on the loans and profit from the revenues.[1] CFPB alleges that the corporations and individuals operated as a "seamless" enterprise dubbed the "NDG Enterprise."[2] The FAC alleges violations of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5536(a), as well as the Credit Practices Rule, 16 C.F.R. § 444.2(a)(3). CFPB seeks permanent injunctive relief, restitution, refund of monies paid, and disgorgement of ill-gotten gains. By alleging a common enterprise, CFPB seeks to hold each defendant jointly and severally liable for all the alleged acts.[3]

The various defendants comprise assorted groups within the NDG Enterprise. Two of these groups are based on geography. The "Canadian Corporate Group" is comprised of NDG Financial Corp. and several of its direct subsidiaries and sub-subsidiaries.[4] The "Maltese Group" includes Northway Financial Corp., Ltd., and Northway Broker, Ltd., both of which are corporations based in Malta.[5]

---

[1] First Amended Complaint ("FAC"), Dkt. 47 ¶ 6.
[2] FAC ¶ 7.
[3] FAC ¶ 107.
[4] See FAC ¶ 11.
[5] FAC ¶¶ 26, 30.

Two other groups are the "Original Owners" and the "Current Owners." According to the FAC, the NDG Enterprise was initially owned and controlled by three corporate entities, each of which was owned and controlled by one of the individual defendants; together these corporations and individuals are the Original Owners: Sagewood Holdings Ltd., owned and controlled by Peter Ash; Knightsbridge Holdings Ltd., owned and controlled by Paul Ash; and 0562752 B.C. Ltd., owned and controlled by Paul Grehan.[6]

In 2013, ownership and day-to-day management of the NDG Enterprise transferred from the Original Owners to the Current Owners.[7] Like the Original Owners, the Current Owners are three corporate entities owned and controlled by three individuals: Emerald Willow Holdings, Ltd., owned and controlled by defendant DeThomas; Red River Holdings Company, Ltd., owned and controlled by defendant Sabourin; and Twillingate Holdings, Ltd., owned and controlled by defendant Wrixon.[8] The Current Owners and the Canadian Corporate Defendants are referred to herein collectively as the "Canadian NDG Defendants." The FAC alleges that the Original Owners continued to exercise control at the board level over the NDG Enterprise even after the transfer of ownership.[9]

B. Procedural Background

CFPB filed its initial complaint against Defendants in July 2015 and the FAC on December 11, 2015. Defendants then filed motions to dismiss. The motions to dismiss

---

[6] The Original Owners are referred to as the "Sagewood Defendants" in the Parties' papers. See FAC ¶¶ 9-16, 62, 92, 97.

[7] FAC ¶ 111.

[8] FAC ¶¶ 13, 22, 70, 83, 86, 100, 102, 111.

[9] FAC ¶¶ 239-40.

sought dismissal for lack of personal jurisdiction and failure to state a claim. The Court denied the motions to dismiss in their entirety. *NDG Financial* at *1; *see also Consumer Financial Protection Bureau v. NDG Financial Corp.*, No. 15 Civ. 5211, 2016 WL 7742784, at *1 (S.D.N.Y. Dec. 19, 2016), Dkt. 109.

On January 13, 2017, the Canadian NDG Defendants filed an Answer to the FAC. The Maltese Defendants did not. Instead, counsel for the Maltese Defendants filed a request to withdraw as counsel.[10] That request was accompanied by a declaration indicating that the Maltese Defendants asked their counsel to withdraw and that the Maltese Defendants did not "intend to defend the action in this forum."[11] The Court granted the motion to withdraw.[12] Several months later, CFPB moved for entry of default against the Maltese Defendants. The Clerk of the Court entered default on December 6, 2017.[13]

On March 16, 2017 the Parties, including the Canadian NDG Defendants but not the Maltese Defendants, filed a proposed Joint Discovery Plan in which the Defendants stated their intent to seek "discovery from both Plaintiff and Third-Parties," thus indicating their intent to participate in discovery.[14] On March 21, 2017, the Court rejected the Parties' proposed deadlines, ordering instead that all fact and expert discovery be

---

[10] Notice of Motion for Withdrawal of Appearance dated Jan. 13, 2017, Dkt. 116.
[11] Declaration of Jeffrey Brown dated Jan. 13, 2017, Dkt. 134 ¶¶ 1, 3.
[12] Order dated Feb. 16, 2017, Dkt. 117.
[13] Clerk's Certificate of Default dated Dec. 6, 2017, Dkt. 168.
[14] Proposed Joint Discovery Plan, Dkt. 118 at 3.

completed by December 29, 2017.[15] The Court warned, "There will be sanctions for *any* efforts to delay discovery."[16]

During the ensuing months, all of the Canadian NDG Defendants failed to respond to CFPB's written discovery requests. Those requests included document requests and interrogatories seeking relevant information, including "(1) the specific consumers harmed and (2) the total harm suffered by each consumer."[17] When CFPB followed up on the overdue responses, the Canadian NDG Defendants responded that they would not respond to any discovery but instead would "settle or default."[18] Accordingly, CFPB moved to compel the Canadian NDG Defendants to comply.[19] The day before a scheduled pre-motion conference call with the Court, counsel for the Canadian NDG Defendants sought to withdraw, explaining that the Canadian NDG Defendants "do not intend to continue defending the action in this forum."[20]

On July 20, 2017, the Court issued an Order denying counsel's motion to withdraw and granting CFPB's motion to compel. As to the motion to withdraw, the Court found significant that "[t]he Canadian NDG Defendants' counsel readily admit that their clients

---

[15] Order dated March 21, 2017 ("3/21/17 Order"), Dkt. 119.

[16] 3/21/17 Order.

[17] Plaintiff's Memorandum of Law in Support of Its Motion to Compel, Dkt. 138 at 7; *see also* Interrogatories attached as Exs. 1-13 to Declaration of Charles Gayle dated July 3, 2017 ("Gayle Decl."), Dkt. 139; Requests for Production attached as Exs. 14-19 to Gayle Decl.

[18] Gayle Decl. ¶¶ 3-4, 40-41; Email of Charlie Gayle dated June 14, 2017, attached as Ex. 20 to Gayle Decl.

[19] Motion to Compel dated July 3, 2017, Dkt. 137.

[20] Declaration of Jeffrey Brown dated June 27, 2017, Dkt. 134 ¶ 4; *see also* Declaration of Jeffrey Brown dated July 10, 2017, Dkt. 143 ¶ 3 (affidavit of counsel stating that his clients had raised the possibility that they "would rather default than bear the costs of discovery, if settlement could not be reached").

5

have no intention of complying with Plaintiff's discovery requests or locating replacement attorneys."[21] As for the motion to compel, the Court ordered the Canadian NDG Defendants "to respond or object to Plaintiff's discovery requests within 20 days of the date of this order."[22] The Court reiterated its warning about sanctions, admonishing that "[i]f any Defendant fails to [comply with the Court's Order], the Court will entertain a motion for sanctions, including default judgment per Fed. R. Civ. P. 37(b)(2)(A)(vi) against that Defendant."[23] Suffice to say, none of the Canadian NDG Defendants complied with the Court's Order.

In November 2017, CFPB filed two motions. One motion sought voluntary dismissal of the corporate and individual Original Owners: Peter Ash and Sagewood Holdings; Paul Ash and Knightsbridge Holdings; and Paul Grehan and 0562752 B.C.[24] As an alternative to dismissal, CFPB proposed amending the operative complaint to delete the Original Owners as parties.[25] The Canadian NDG Defendants opposed the motion. They claimed it would be unfair for the Original Owners to be dismissed, while the Current Owners – who allegedly were involved in the scheme for only five months while the Original Owners were involved for eight years – remained jointly and severally

---

[21] Memorandum Decision and Order dated July 20, 2017 ("7/20/17 Order"), Dkt. 146 at 2.
[22] 7/20/17 Order at 2.
[23] 7/20/17 Order at 2.
[24] Notice of Plaintiff's Motion for Voluntary Dismissal, Dkt. 155.
[25] Plaintiff's Memorandum of Law in Support of Its Motion for Voluntary Dismissal, Dkt. 156 at 4.

liable for the entire Enterprise.[26] The Canadian NDG Defendants contended that it would be fairer for CFPB to proceed with amending the complaint.[27]

On February 5, 2018, the Court granted CFPB's motion to voluntarily dismiss the Original Owners.[28] The Court declined the request to proceed by an amended complaint because "[t]his is simply another gambit to overcome the fact that these parties are in default."[29] As to the Canadian NDG Defendants' "unfair prejudice" argument, the Court said such arguments have no bearing on the motion to voluntarily dismiss but "are better saved for their opposition to Plaintiff's likely motion for default judgment."[30]

The second motion simultaneously filed by CFPB in November 2017 was the motion at bar for sanctions against the Canadian NDG Defendants. In support of its motion, CFPB points to the Canadian NDG Defendants' refusal to participate in discovery after initially indicating its intent to do so; their disregard of the Court's March 21, 2017 warning of sanctions for any discovery violation and of the Court's July 20, 2017 Order warning of sanctions including default judgment; and the fact that the Canadian NDG Defendants repeatedly stated their intent to default.[31] As sanctions for this conduct, CFPB asks the Court to (1) render a default judgment against the Canadian NDG Defendants, (2) preclude those Defendants from offering withheld evidence in connection

---

[26] Canadian NDG Defendants' Memorandum of Law in Opposition to the CFPB's Motions for Voluntary Dismissal and for Sanctions ("Def. Memo."), Dkt. 164 at 1, 3, 6-7.

[27] Def. Memo. at 7-8.

[28] Order dated Feb. 5, 2018 ("2/5/18 Order"), Dkt. 172.

[29] 2/5/18 Order at 3.

[30] 2/5/18 Order at 3.

[31] Plaintiff's Memorandum in Support of Its Motion for Sanctions Against the Canadian NDG Defendants ("Pl. Memo."), Dkt. 158 at 4-6.

with the calculation of consumer harm, and (3) impose an adverse inference that the withheld evidence would corroborate any evidence that CFPB submits in order to establish the amount of a default judgment.[32]

In opposition to the sanctions motion, the Canadian NDG Defendants essentially make the same argument they did in opposition to the motion to voluntarily dismiss the Original Owners: that the sanctions sought would unfairly expose the Current Owners to liability for the entire NDG Enterprise, even though, according to them, they were involved only for the last five months of the eight-year-plus scheme.[33] After the Canadian NDG Defendants filed their supplemental memorandum, CFPB moved to strike it as procedurally improper.[34] The undersigned denied the motion to strike in part, stating that the Court would consider the authorities cited in the supplemental memorandum insofar as they addressed the sanctions issue, but would allow CFPB to submit a response.[35] CFPB filed its response on February 22, 2018.[36]

---

[32] Pl. Memo. at 1. On March 8, 2018, while the present motion was pending, CFPB filed a Request for Entry Of Default. (Dkt. 175.) Because this decision grants default judgment as to liability, Plaintiff's request is moot

[33] See Def. Memo. at 1; NDG Defendants' Supplemental Memorandum of Law in Opposition to the Bureau's Motions for Voluntary Dismissal and for Sanctions ("Def. Supp. Memo."), Dkt. 167 at 10-11.

[34] Plaintiff's Motion to Strike Canadian NDG Defendants' Supplemental Memorandum of Law, Dkt. 169.

[35] Order dated Feb. 8, 2018, Dkt. 173.

[36] Plaintiff's Memorandum of law in Response to the Canadian NDG Defendants' Supplemental Memorandum (ECF 167) and in Further Support of Plaintiff's Motion for Sanctions (ECF 157), Dkt. 174.

Legal Standards

When a party "fails to obey an order to provide or permit discovery" a district court may issue "further just orders," including, among others, an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A); *accord Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 450 (2d Cir. 2013). "A district court has wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)." *Funnekotter v. Agricultural Development Bank of Zimbabwe*, No. 13 Civ. 1917, 2015 WL 3526661, at *4 (S.D.N.Y. June 3, 2015) (quoting *Daval Steel Prods., a Division of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991)); *accord Guggenheim*, 722 F.3d at 450-51.

Courts typically consider the following factors when considering whether and to what extent to impose Rule 37 sanctions: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned that noncompliance would be sanctioned." *Guggenheim*, 722 F.3d at 451 (internal quotation marks omitted) (quoting *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (per curiam)). "Because the text of the rule requires only that [a] district court's orders be just . . . and because [a] district court has wide discretion in imposing sanctions under Rule 37, these factors are not exclusive, and they need not each be resolved against the party . . . ." *S.E.C. v. Razmilovic*, 738 F.3d 14, 25 (2d Cir. 2013)

(citation omitted) (internal quotation marks omitted) (quoting *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)).

Sanctions pursuant to Rule 37(b) serve multiple purposes: "First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigations, provided that the party against whom they are imposed was in some sense at fault." *Southern New England Telephone*, 624 F.3d at 149 (internal quotations marks omitted) (quoting *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)); *see also Grammar v. Sharinn & Lipshie*, No. 14 Civ. 6774, 2016 WL 525478, at *2-3 (S.D.N.Y. Feb. 8, 2016).

"Although '[s]trong sanctions should be imposed only for serious violations of discovery orders' their imposition is 'justified . . . when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable.'" *Funnekotter*, 2015 WL 3526661, at *4 (quoting *Daval Steel*, 951 F.2d at 1367); *accord Guggenheim*, 722 F.3d at 450-51. "The most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Razmilovic*, 738 F.3d at 25 (quoting *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir. 1989) (citing Supreme Court precedent and entering default against defendants who "elected to defy" two court orders to attend their depositions)). In short, "a court should not shrink from imposing harsh sanctions where they are clearly warranted." *Funnekotter*, 2015 WL 3526661, at *4

(quoting *Lopez v. City of New York*, No. 05 CV 3624, 2007 WL 2743733, at *7 (E.D.N.Y. Sept. 18, 2007)); *accord Jones v. Niagara Frontier Transportation Authority*, 836 F.2d 731, 735 (2d Cir. 1987).

## Discussion

### A. Default Judgment

Sanctions unequivocally are appropriate in this case. All four of the primary factors considered on a sanctions motion militate toward imposition of sanctions. To begin, the Canadian NDG Defendants willfully disregarded the Court's orders compelling discovery. "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party [to be sanctioned] has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Grammar*, 2016 WL 525478, at *3 (alteration in original) (quoting *Baba v. Japan Travel Bureau International, Inc.*, 165 F.R.D. 398, 402-03 (S.D.N.Y. 1996), *aff'd* 111 F.3d 2 (2d Cir. 1997)); *accord Thompson v. Jamaica Hospital Medical Center*, No. 13 Civ. 1896, 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015). "Willful non-compliance is routinely found, for instance, where a party has 'repeatedly failed to . . . produce documents . . . in violation of the district court's orders.'" *Farmer v. Hyde Your Eyes Optical, Inc.*, No. 13 Civ. 6653, 2015 WL 2250592, at *7 (S.D.N.Y. May 13, 2015) (alterations in original) (quoting *Doe v. Delta Airlines, Inc.*, No. 13 Civ. 6287, 2015 WL 798031, at *8 (S.D.N.Y. Feb. 25, 2015)).

All the hallmarks of willfulness are present here. The Order compelling discovery could not have been clearer: "The Canadian NDG Defendants are ordered to respond or object to Plaintiff's discovery requests within 20 days of the date of this order. If any Defendant fails to do so, the Court will entertain a motion for sanctions, including default

11

judgment . . . ."[37] The Canadian NDG Defendants do not argue that they did not understand the requirement to respond or object to discovery. Nor have they argued that failure to comply was beyond their control. To the contrary, they expressly informed CFPB and the Court that their strategy was to either settle or default.[38] Even in opposing this motion and the motion to voluntarily dismiss the Original Owners, the Canadian NDG Defendants admit that they "chose to default due to their limited resources"[39] and "[h]aving signaled an intention to default, the Canadian NDG Defendants anticipated that absent settlement, a default judgment would be entered against them."[40] Now that the Original Owners have been dismissed from the case, the Current Owners are second-guessing their decision. But that does not excuse non-compliance with discovery and disregard of the Court's orders. *See Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995) ("A party who flouts [discovery] orders does so at his peril") (quoting *Update Art*, 843 F.2d at 73).

No sanction less than entry of default judgment would be effective. Orders to compel have failed to achieve compliance, and monetary sanctions (of an appropriate amount) would not bring about any different result. That is because the Canadian NDG Defendants are not merely being slow to comply or in need of monetary incentive; rather, as noted, they have "limited resources" to litigate and made a choice to default in the absence of settlement.

---

[37] 7/20/17 Order, Dkt. 146 at 2.

[38] *See* 7/20/17 Order at 2 ("The Canadian NDG Defendants' counsel readily admit that their clients have no intention of complying with Plaintiff's discovery requests or locating replacement attorneys.").

[39] Def. Supp. Memo. at 7.

[40] Def. Memo. at 3.

As to length of non-compliance, more than seven months have passed since the Court issued its Order compelling the Canadian NDG Defendants to comply with discovery and warning that the Court would entertain a motion for sanctions, including default judgment, if any Defendant failed to comply.[41] That is long enough. See *Urbont v. Sony Music Entertainment*, No. 11 Civ. 4516, 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014) (stating courts "have found noncompliance for a period of several months sufficient to warrant dismissal or default" and citing durations of three months and seven months as examples). Moreover, the Canadian NDG Defendants have made it clear that no passage of time would lead to compliance. This is not a case where a defendant complied belatedly, in part, or sought additional time to comply; rather, it is one of outright refusal to participate in discovery.

Finally, the Canadian NDG Defendants received fair warning more than once that their failure to comply could result in a default judgment. At the outset of discovery, the Court put them on notice that sanctions would be imposed "for *any* effort to delay discovery."[42] Four months later, the Court issued its Order to compel stating that it would entertain a motion for sanctions, including default judgment, for failure to comply.[43] The Canadian NDG Defendants thus had clear warning.

---

[41] The scheduling order for this case set an end-date for discovery and warned of sanctions for efforts to delay discovery, but it did not set a specific date for complying with the specific discovery requests at issue. (3/21/17 Order.) Accordingly, for purposes of this motion, the due date for compliance with the Court's Order to compel is the operative starting point to determine the period of non-compliance.

[42] 3/21/17 Order, Dkt. 119.

[43] 7/20/17 Order, Dkt. 146.

The Canadian NDG Defendants argue that the sanctions sought by CFPB should not be imposed because of the prejudice and "absurd[ity]" of a result in which the Canadian NDG Defendants are found liable for the entirety of the NDG Enterprise while all the other Defendants (the Original Owners) were dismissed "on the merits."[44] In support of this argument, the Canadian NDG Defendants cite a line of cases beginning with an 1872 Supreme Court case, *Frow v. De La Vega*, 82 U.S. 552 (1872). *Frow* held that it is improper to issue a default judgment against one or more defendants while other defendants remain in the case for a determination on the merits and corresponding relief. The Court reasoned that in such a situation there could be inconsistent findings on the merits; specifically, that the defaulting defendant is held liable, while the defendants remaining in the case ultimately are found not liable. Such a result, the Court observed would be "unseemly and absurd." *Frow*, 82 U.S. at 554.

The Second Circuit Court of Appeals has cast doubt on the vitality of *Frow* in light of the subsequent enactment of Federal Rule of Civil Procedure 54(b), which authorizes entry of default judgment against fewer than all parties as long as there is no just reason for delay. *International Controls Corp. v. Vesco*, 535 F.2d 742, 746 n.4 (2d Cir. 1976) ("We think it most unlikely that *Frow* retains any force . . . ."). "[A]t most, *Frow* controls in situations where the liability of one defendant necessarily depends on the liability of the others." *Id.* Some district courts have applied *Frow* in that context. *See, e.g., RSM Production Corp. v. Fridman*, 643 F. Supp. 2d 382, 414 (S.D.N.Y. 2009) (citing *Vesco* and applying *Frow*).

---

[44] Def. Supp. Memo. at 5-11.

Even if *Frow* endures, the Canadian NDG Defendants cannot invoke it. The very premise of their argument – that voluntary dismissal of the Original Owners was a determination on the merits – is incorrect. The voluntary dismissal was "with prejudice," but that does not mean that the claims were determined to have no merit. The Court "rejected out of hand" this very argument when the Canadian NDG Defendants asserted it in opposition to CFPB's motion for voluntary dismissal.[45] There thus is no potential for inconsistent outcomes, and all of the cases cited by the Canadian NDG Defendants applying the *Frow* principle are inapt.[46]

*Frow* and its progeny also do not apply for a second reason: the liability of the Canadian NDG Defendants does not "necessarily depend" on the liability of the dismissed parties. *Vesco*, 535 F.2d at 746 n.4. The Canadian NDG Defendants argue otherwise, seizing on the fact that the operative complaint alleges their involvement in a "common enterprise," specifically the NDG Enterprise.[47] This Court already has found that the FAC sets forth sufficiently well-plead allegations of enterprise liability, but in doing so also found that the Canadian Corporate Defendants, or a subset of them, shared common

---

[45] 2/5/18 Order, Dkt. 172 at 2.

[46] *See, e.g., Farberware, Inc. v. Groben*, No. 89 Civ. 6240, 1991 WL 123964, at *2 (S.D.N.Y. July 3, 1991) (invoking *Frow* where plaintiff's claims were still pending against defendants other than the defaulted defendants). Several of the cases also are distinguishable because the courts in those cases found no legal basis to hold the defendants liable. *See RSM*, 643 F. Supp. 2d at 414 (finding the plaintiff's factual allegations "do not support any legally cognizable claim"); *Hudson v. Universal Pictures Corp.*, No. 03 CV 1008, 2004 WL 1205762, at *4-5 (E.D.N.Y. April 29, 2004) (finding claims to be meritless on motion for summary judgment); *Milani v. OneWest Bank, FSB*, No. 11 CV 768, 2011 WL 13217839, at *4 (N.D. Ga. Oct. 12, 2011) (allegations against defaulting defendant were "tangential and underspecified" and provided "no legal basis for concluding that [defaulting defendant] engaged in any wrongful conduct. This deficiency will prevent the Court from entering default judgment.").

[47] Def. Supp. Memo. at 10-11.

enterprise elements among themselves. *Consumer Financial Protection Bureau,* 2016 WL 7188792, at *17. At the same time, the Court also ruled that the common enterprise theory does not apply to individual defendants (which include DeThomas, Sabourin, and Wrixon), although individual liability could attach under other theories. *Id.* at 17-18. In short, the Canadian NDG Defendants may be found liable without a judgment of liability against the Initial Owners.

Although entry of default judgment is warranted, sanctions precluding the Canadian NDG Defendants from contesting the extent of consumer harm and the amount of an award at judgment are not. It is a well-established principle that while a defendant's default entitles a plaintiff to judgment on liability, the defendant is allowed the opportunity to contest the amount of damages. *See, e.g., Bambu Sales,* 58 F.3d at 852 (after granting default as discovery sanction, district court referred matter for inquest on damages); *Vera v. Donaldo Law Firm,* No. 17 Civ. 3123, 2017 WL 6873928, *3 (S.D.N.Y. Dec. 21, 2017) (following default, "Defendant should be given a reasonable opportunity to contest the amount of damages that Plaintiff is seeking"); *Local Union No. 40 of the International Association of Bridge, Structural and Ornamental Iron Workers v. Car-Win Construction,* 88 F. Supp. 3d 250, 274 (S.D.N.Y. 2015) (although a default judgment establishes liability, "it does not reach the issue of damages"); *Norcia v. Dieber's Castle Tavern,* 980 F. Supp. 2d 492, 500 (S.D.N.Y. 2013) (upon entry of default judgment, the court "accept[s] as true all of the factual allegations of the complaint, except those relating to damages" (quoting *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981)).

"Unless damages are certain, they must be proven in a post-default inquest . . . ." *Norcia,* 980 F. Supp. 2d at 500; *see also Local Union No. 40,* 88 F. Supp. 3d at 274-75

(recommending entry of default judgment as sanction, followed by inquest). The Court does not have before it any information about the extent of damages or any other monetary relief, such as restitution or disgorgement. An inquest is needed to make that determination, and the Canadian NDG Defendants should be given an opportunity to contest the amount claimed.

The Court has identified at least one case where the district court imposed sanctions that included not only default judgment but also precluded the defendant from "offering at the inquest any evidence on any of the subjects with respect to which plaintiff requested documents." *Lumberman's Mutual Casualty Co. v. Holiday Vehicle Leasing, Inc.*, 212 F.R.D. 139, 143-44 (S.D.N.Y. 2002). While there is no doubt that the Court has discretion to sanction an uncooperative defendant with both default and preclusion at inquest, I do not consider such a sanction to be appropriate here. Although the Canadian NDG Defendants have acted willfully, that does not mean they acted in bad faith. To the contrary, they have been candid about their intent to default if the case did not settle. Moreover, had the Canadian NDG Defendants defaulted by not even answering the complaint, they would have had full opportunity to contest the amount of damages in an inquest. I do not find their conduct so egregious that they should be put in a worse position for entering the litigation but then deciding to default. Accordingly, I recommend not imposing the additional sanctions of evidence preclusion and adverse inference.

B. <u>Payment of Expenses</u>

Rule 37 requires that the noncompliant party pay expenses as follows: "Instead of or in addition to the orders above, the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees,

caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added); *accord Joint Stock Company Channel One Russia Worldwide v. Informir LLC*, No. 16 Civ. 1318, 2017 WL 3671036, at *19, 27 (S.D.N.Y. July 18, 2017) (quoting provision and awarding expenses), *report and recommendation adopted*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017).  In short, an award of expenses caused by noncompliance with a court order is mandatory unless the failure was justified or such an award would otherwise be unjust.

In this instance, CFPB has neither requested nor provided evidence of any expenses caused by the Canadian NDG Defendants' failure to comply with the Court's orders.  Any cost associated with the earlier motion to compel could and should have been addressed in connection with that motion.  The question here is whether there are any expenses caused by failure to comply with the Court's July 20, 2017 Order compelling compliance with discovery.  The expense incurred in connection with making the present motion for sanctions would qualify.  That said, even if the Canadian NDG Defendants had defaulted at the outset of the case before answering, CFPB still would have incurred the expense of making a motion for default judgment.  As a result, CFPB may not have any additional expenses caused by the Canadian NDG Defendants' noncompliance.  To the extent CFPB believes there are compensable expenses, however, it may apply to the Court by submitting appropriate proof and authority for the award no later than thirty days from decision on this Report and Recommendation.

## Conclusion

For the foregoing reasons, I recommend that CFPB's motion for sanctions be GRANTED to the extent of entering default judgment of liability against the Canadian NDG Defendants, along with an award of costs (including attorneys' fees), if any, caused by noncompliance with the Court's July 20, 2017 Order, and DENIED to the extent that the motion requests additional or other sanctions. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Colleen McMahon, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:    March 12, 2018
         New York, New York

Copies transmitted this date to all counsel of record.